UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-MJ-6469-HUNT

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JONATHAN MARKOVICH

    Defendant.

    _____/

### MOTION FOR RECONSIDERATION AND TO DISCHARGE DEFENDANT JONATHAN MARKOVICH AND INCORPORATED MEMORANDUM OF LAW

Defendant Jonathan Markovich ("J. Markovich") through undersigned counsel hereby moves this Court to reconsider its finding of probable cause in this matter [ECF 81] and pursuant to Fed.R.Crim.P. 5.1(f) to dismiss the complaint against him, and for discharge. In support, J. Markovich states as follows:

## I. Introduction

The Government case agent admitted at the preliminary hearing that the Government has no direct evidence that Jonathan Markovich committed any crime. Instead, the Government case seeks to rely on circumstantial evidence and the broad reach of conspiracy principles. Even then, proof must rise above assumptions and innuendo. And while hearsay may be considered, that hearsay needs to be reliable.

The Government prosecutor in her rebuttal closing spoke of conduct at Compass and War being open and notorious. Perhaps to some people. But there was no testimony presented that any crime was open and notorious to Jonathan Markovich. It is this fundamental flaw that compels that this Court grant the instant motion for reconsideration.

## II. Procedural Posture

The Complaint herein was filed on September 25, 2020. J. Markovich was arrested and appeared to answer the Complaint on September 30, 2020. On October 28 and 29, 2020, the Court conducted a preliminary hearing in this matter.

## III. Legal Standard

A probable cause standard controls at a preliminary hearing. Fed R. Crim. P. 5.1(e). Probable cause exists when law enforcement has facts and circumstances sufficient to warrant a reasonable belief that the accused committed the crimes charged. *Beck v. Ohio,* 379 U.S. 89 (1964); *United States v. Floyd,* 281 F 3d 1346 (11th Cir 2002). Probable cause issues are decided on an objective basis by courts without regard to the subjective beliefs of law enforcement officers. *Craig v. Singletary,* 127 F 3d 1030 (11th Cir 1997). When an agent relies on informant information, factors to be considered in assessing probable cause include corroboration, personal knowledge, reliability and what independent steps the agent took to investigate the information. See e.g., *Ortega v. Christian,* 85 F 3d 1521 (11th Cir 1996).

## IV. Evidence at the Preliminary Hearing

### A. The Complaint Affidavit Charges

J. Markovich is charged with the following offenses:

1.     18 U.S.C. 1349 (Healthcare and Wire Fraud).  Specific allegations for this offense are set out at the Affidavit pp 28-51.

2.     18 U.S.C. 371 (Kickback Conspiracy).  Specific allegation for this offense are set out at the Affidavit pp 21-28.

3.     18 U.S.C. 1956(h) (Money-Laundering Conspiracy).  Specific allegations for this offense are set out at the Affidavit pp 51-55.

4.     18 U.S.C. 1014 and 1344(2) (False Statements to Bank Fraud).  Specific allegations for this offense are set out at the Affidavit pp 55-60.

### B.     Evidence Relating to J. Markovich

#### 1.     18 U.S.C. 1349

Allegations relating to the 18-1349 charge minimally mention J. Markovich.  The so-called expert consultant's findings (pp 29-32) do not say anything about J. Markovich.  The so-called evidence of fraud (pp 32-51) has several sections.  There is a section regarding medical decisions (pp 33-34). Most witnesses cited do not mention J. Markovich.  Two things are said about J. Markovich.  One is that he allegedly approved doctor practices.  The other is that he tried to find ways to increase the amount of treatment days that insurance would pay for.  Neither of these statements establishes in and of itself any illegal act by J. Markovich.

There is a section regarding therapy billing (pp 34-36).  Numerous patients and employees are cited.  None mention J. Markovich.  There is a section regarding alleged over-medication (pp 32-41).  One claim here regarding J. Markovich is that patients would complain to him about not getting their medications and that J. Markovich supported the doctor instructions over nurse complaints.  None of this describes any illegality by J. Markovich.  J. Markovich is also alleged to have been told about Bakhshi and others selling drugs.  J. Markovich's response was that this

should not happen anymore (p 40).  In the twenty-five plus subparagraphs in this section, the only other reference to J. Markovich is a patient claim that he saw J. Markovich give someone $25.  (p 40)  Whatever this means, this is no evidence of healthcare fraud.

There is a section regarding so-called patient recycling (pp 41-43).  There are ten subparagraphs.  Only one mentions J. Markovich and merely says J. Markovich endorsed taking relapsed WAR patients back to Compass (p 42).  There is nothing illegal about this in and of itself.

There is a section regarding alleged fraudulent urinalysis (pp 43-45).  A person charged with state crimes, who has every incentive to exaggerate or lie, claims J. Markovich said something about getting paid for samples (pp 43-44).  Later this person said he never paid anything.  There is no other mention of J. Markovich in this section.

There is a section regarding alleged fraudulent chiropractic trends (pp 45-46).  These allegations relate to cooperating defendant Jeffrey Draesel who has confirmed that nothing was paid to Compass or J. Markovich and that J. Markovich did not participate in Draesel's fraudulent billings.

There is a section on patient treatment (pp 46-48).  This does not mention J. Markovich. There are also sections alleging "Additional Evidence" and "Improper Compounding" (pp 48-50). These do not mention J. Markovich either.

Lastly, there is a section regarding representations to DCF (pp 50-51).  It is true J. Markovich wrote letters to DCP certifying Compass Detox was complying with the law (p 51). There is no evidence J. Markovich did not believe these letters were true.

**2.   18 U.S.C. 371**

Allegations relating to the alleged Kickback Conspiracy divide into four sections (pp 21-28).  One section describes witness interviews.  Ten patients are identified.  None mention J.

123971901.1

Markovich. Five employee interviews are also identified. One says that J. Markovich was involved with setting up a call center (p 23). Call centers are not in and of themselves illegal. Another witness, the state court defendant, repeated his claim about labs offering to pay for samples (p 24). There is no allegation that evidence exists that this in fact occurred.

There is a section describing "additional evidence" (pp 25-26). Patient flights saw money advanced, but there is no evidence that J. Markovich thought this practice was illegal. There is reference to thousands of texts and calls (p 25) but no evidence any of this shows improper conduct by J. Markovich. Likewise there are 8 subparagraphs regarding Facebook chats and none are authored or received by J. Markovich.

There is a section labeled specific examples of kickbacks (pp 27-28). The only mention of J. Markovich is that J. Markovich is a signatory on Compass Detox Accounts (p 27).

Lastly, there is a section regarding Lab Pros payments (p 28). While J. Markovich allegedly received monies from Lab Pros, there is no evidence these monies were for an improper purpose.

### 3. 18 U.S.C. 1956(h)

Allegations relating to the money laundering charges appear at pages 51-55. They merely describe routine bank deposits and bank transfers, all clearly described and easy to trace. There is no evidence that J. Markovich knowingly or intentionally did anything to conceal or disguise the monies identified in this section. *See e.g. United States v. Blankenship*, 282 F.3d 1110 (11th Cir. 2004)

### 4. 18 U.S.C. 1014 and 1344(2)

The last set of charges relates to PPP loans awarded to Compass Detox and WAR (pp 55-58). J. Markovich executed the loan documents. There is no allegation monies were used for any

improper purpose. There is also no evidence that when J. Markovich certified that the applicants were not engaged in illegal activity, he did so believing this certification to be untrue.

### 5. Additional Testimony

At the preliminary hearing, Agent Bhoge testified regarding interviews post-Complaint, including recent interviews of Elan Bakhshi, Jeffrey Draesel and CW2. Bakhshi apparently claims J. Markovich asked him to encourage other addicts to come to Compass. Bakhshi does not allege that J. Markovich offered or paid him any money for this. Jeffrey Draesel apparently admitted to fraudulent billings for chiropractic services to Compass patients. These billings, however, did not involve J. Markovich and there is no evidence J. Markovich received any monies or did anything improper with Mr. Draesel.

There are two FBI 302 reports produced regarding CW2 and interviews of CW2 pre-Complaint. Apparently CW2 was recently interviewed for a third time. CW2 says he expressed concerns to J. Markovich and others about patients. CW2 never says J. Markovich asked him to do anything illegal. CW2 also does not say J. Markovich ever told him that he, J. Markovich, thought he was doing anything improper.

## V. Conclusion

There are very few specific fact allegations against J. Markovich in the Complaint Affidavit or in testimony about interviews post Complaint. None of the fact allegations demonstrate knowing misconduct or participation by J. Markovich in any criminal schemes. Much of what the government relies upon in the Complaint are unsubstantiated claims by drug addicts and most of these claims are hearsay and not based on firsthand knowledge. These uncorroborated and vague allegations fail to rise to the level of probable cause that J. Markovich was involved with the crimes alleged. If the Government develops more and better evidence later, such evidence can certainly

be presented to a federal grand jury. Based on the state of the evidence now, however, this matter should be dismissed and J. Markovich discharged.

                                                  Respectfully submitted,

                                                  *s/ Michael Pasano*
                                                  Michael S. Pasano (FBN 475947)
                                                  E-mail: mpasano@carltonfields.com
                                                  CARLTON FIELDS
                                                  100 S.E. Second Street, Suite 4200
                                                  Miami, Florida 33131-2114
                                                  Telephone: (305) 530-0050
                                                  *Attorney for Defendant Jonathan Markovich*

123971901.1