UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 20-mj-06469-HUNT

UNITED STATES OF AMERICA,

vs.

JONATHAN MARKOVICH,

      Defendant.

_____/

## OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

The United States of America hereby opposes Defendant Jonathan Markovich's Motion

for Reconsideration.  [D.E. 82] ("Motion").  MARKOVICH asks this Court to reconsider its ruling

that probable cause existed to proceed against him in this case. [11/03/2020 Order, D.E. 81].  This

Court—after a marathon preliminary hearing during which the defense collectively cross-

examined the agent for roughly 6 hours—properly found that probable cause existed to proceed

on all charges alleged in the criminal complaint against MARKOVICH, and indeed against all

seven Defendants.  The Government presented both direct and circumstantial evidence to establish

probable cause that MARKOVICH committed five distinct crimes.  MARKOVICH continues to

rehash the same arguments the Court rejected at the preliminary hearing—namely, the strength of

circumstantial evidence and the use of substance abuse patients as witnesses.  These are, simply

put, stock defense *trial* arguments.  MARKOVICH's continued insistence, after the Court ruled

and even after the Court stated that no further briefing was necessary, that these trial defenses

somehow negate the probable cause contained in the 60-page affidavit is befuddling.

And crucially, Defendant presents no new arguments in his Motion that he did not make in

the preliminary hearing, which this Court already rejected.  In any event, none of MARKOVICH's

arguments refute this Court's finding under Fed. R. Crim P. 5(e) that probable cause existed to believe he committed the charged offenses.  MARKOVICH's Motion should be denied.

## FACTUAL BACKGROUND

MARKOVICH was charged by criminal complaint on September 25, 2020 [D.E. 1], and had his initial appearance on September 30, 2020.  As outlined in the complaint, MARKOVICH was charged with: conspiracy to commit health care fraud and wire fraud; conspiracy to pay/receive kickbacks in violation of EKRA; conspiracy to commit money laundering; false statements to a financial institution, and bank fraud.  He was charged based on his role as an owner and CEO of Second Chance Detox, LLC ("Compass Detox"), and War Network, LLC ("WAR").  His criminal conduct is alleged to have begun in 2017, and lasted until September 2020.

## LEGAL STANDARD

The purpose of the preliminary hearing conducted on October 28 and 29, 2020, was to determine whether there was probable cause to believe that MARKOVICH committed the charged offense(s). See Fed. R. Crim. P. 5.1(e).[1]  Probable cause is not a high bar and requires merely a "fair probability that the defendant committed the alleged offense." United States v. Perez,  17 F. Supp. 3d 586, 593 (S.D. Tex. 2014); see also Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010) (stating with regard to an arrest warrant, "'[p]robable cause' means 'facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed ... an offense.'" (quoting Gerstein v. Pugh, 420 U.S. 103, 111 (1975)).  In addition, reasonable inferences by law enforcement officers can support a probable cause finding.  See, e.g., United States v. $242,484.00, 389 F.3d 1149, 1160 (11th Cir. 2004) (en banc) (stating that probable cause

---

[1] "[T]he sole objective of a preliminary hearing is to determine whether there is probable cause to believe that the accused has committed an offense[.]" Coleman v. Burnett, 477 F.2d 1187, 1198 (D.C. Cir. 1973). Discovery and cross-examination are limited because the purpose of the hearing is limited. Id.

"is a "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion," and stressing that "[a]lthough we must decide the legal issue of whether probable cause exists ourselves, we do give weight to the inferences that law enforcement agents draw from the facts").  Importantly, in deciding whether probable cause exists, this Court was to operate from the assumption that, "all reasonable inferences are to be drawn in favor of the government." Perez, 17 F. Supp. 3d at 594.[2]  Indeed, analogous law in this Circuit states that when a defendant moves to dismiss an indictment, the grand jury's allegations "are viewed in the light most favorable to the government." United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987).

At bottom, the Court's role at the preliminary hearing was not to determine the defendant's guilt or innocence, parse the credibility of witnesses, or even to weigh competing versions of events presented by the Government and the defense.  See Perez, 17 F. Supp. 3d at 594.[3]  The Court's role was simply to decide if the Government met its burden of establishing probable cause, and that's exactly what the Court did when it ruled for the Government.

---

[2] See also 1 Charles Alan Wright, et al., Federal Practice & Procedure § 92 (4th ed. 2020) (same); United States v. Spencer, 2013 WL 2417976, at *1 (S.D. Ohio June 3, 2013) (same) (quoting United States v. Fuentes, 2012 WL 379589, at *2 (S.D. Tex. Jan. 19, 2012)); Matter of Extradition of Ricardo Alberto Martinelli Berrocal, 2017 WL 3776953, at *35 (S.D.F.L. Aug. 31, 2017) (Torres, J.) (in extradition proceeding, rejecting the "weighing of evidence and a selection of one version over another version," because "this type of evaluation is precisely what this Court cannot do") (quotation and citation omitted); In re Extradition of Nunez-Garrido, 829 F. Supp. 2d 1277, 1294 (S.D.F.L. 2011) (Goodman, J.) (in extradition proceeding, court should not "credit [defense] testimony over inconsistent evidence in the record (such as the autopsy)"). As the Eleventh Circuit has recognized, "[e]xtradition hearings … are in the nature of a preliminary hearing." Kasternova v. United States, 365 F.3d 980, 987 (11th Cir. 2004) (quotation and citation omitted).

[3] "[I]t is generally inappropriate for the magistrate judge to make credibility determinations, which fall within the province of the jury as the trier of fact.  Nonetheless, the magistrate judge may still make a finding of no probable cause by relying on clear-cut proof of limited scope that negates the government's evidence." Id.  See also Wright, supra, § 92 (noting the court's role in a preliminary hearing is not to determine guilt).

## ARGUMENT

### I.   Evidence of MARKOVICH's Culpability Met the Government's Burden.

The Government presented both direct and circumstantial evidence about MARKOVICH's criminal conduct, beyond what was necessary to establish probable cause.  MARKOVICH claims that, even though he was a hands-on CEO of Compass Detox, even though he was directly told about some of the criminal conduct, even though he directly participated in some of the it, even though he made millions of dollars from the schemes (much of which he laundered, including through a fake charity), and even though he falsely disclaimed any criminal conduct on two PPP loan applications, that the evidence does not even suffice for probable cause.  For several reasons, MARKOVICH is wrong.

*First*, MARKOVICH does not dispute—nor did any other defendant at the preliminary hearing—two fundamental points established by the evidence: (i) that the Government submitted probable cause of widespread kickback, fraud, and money laundering conspiracies, and, (ii) that much of this criminal conduct was open and notorious.  For example, no one disputed the misused and wrongful provision of the "comfort drink" to addicts (which defies basic common sense), nor the overmedication of patients.  Indeed, nearly every witness (including the two cooperating defendants) characterized these practices as resulting in the obvious sedation of patients.  The Government's basic contention is that MARKOVICH and the other Defendants surely knew this; anyone who spent any time at these facilities would have known. MARKOVICH argues that such circumstantial evidence is not enough.  Since circumstantial evidence is enough to convict a defendant at trial, much less to show probable cause exists to proceed against him at a preliminary hearing, his argument utterly fails.

It is beyond dispute that "circumstantial evidence, including inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme," may prove the existence of a conspiracy, and that the defendant knowingly chose to join it.  United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005).[4]  Indeed, a criminal conspiracy can be proven entirely by circumstantial evidence.  Because conspiracies are secretive by nature, "the existence of an agreement and [a defendant's] participation in the conspiracy may be proven entirely from circumstantial evidence."  United States v. White, 663 F.3d 1207, 1214-15 (11th Cir. 2011) (emphasis added); United States v. Mateos, 623 F.3d 1350, 1362 (11th Cir. 2010) (deeming circumstantial evidence that defendant was privy to the plan sufficient to support conviction for conspiracy to commit health care fraud because "[t]he very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." (quoting United States v. Molina, 443 F.3d 824, 828 (11th Cir. 2006)). This applies to each conspiracy MARKOVICH was charged with in the criminal complaint.[5]

---

[4] Two recent Eleventh Circuit decisions make this clear.  "The test for sufficiency of evidence is identical regardless of whether the evidence is direct or circumstantial, and no distinction is to be made between the weight given to either direct or circumstantial evidence." United States v. Grow, 2020 WL 6153389 at * 7 (11th Cir. Oct. 21, 2020) (quoting United States v. Guevara, 894 F.3d 1301, 1307 (11th Cir. 2018)); "Because the crime of conspiracy is predominantly mental in composition, the government may prove these elements by circumstantial evidence. … Indeed, the 'nature of conspiracy requires proof by such inferences and circumstantial evidence." United States v. Chalker, 966 F.3d 1177 (11th Cir. 2020) (emphasis added) (quoting United States v. Moran, 778 F.3d 942, 960 (11th Cir. 2015)). See also, United States v. Orr, 825 F.2d 1537, 1543 (11th Cir. 1987) ("It is well-settled that the government need not produce direct evidence to prove participation in a conspiracy. Conspiracy can be proved by the accused's actions or by inferences from circumstantial evidence of a scheme. Also, each conspirator need not know all the details of the conspiracy, or be aware of the other conspirators, or participate in every phase of the scheme") (citing United States v. Carter, 760 F.2d 1568, 1582 (11th Cir. 1985).

[5] For example, the Eleventh Circuit ruled that a money laundering conspiracy can be proven entirely through circumstantial evidence.  See United States v. Tobin, 676 F.3d 1264, 1291 (11th Cir. 2012) (existence of an agreement with "persons unknown" is sufficient to support a conviction under Section 1956(h), and can be shown by circumstantial evidence such as repeated, unexplained transfers of substantial amounts of money which can show that that the defendant was not acting alone).

*Second*, MARKOVICH's arguments about the Government's evidence do not negate the Government's probable cause.  In sum, the Government showed that MARKOVICH, who was the CEO of Compass Detox, knew about and approved patient recruiters' practices of providing drugs to patients so they could relapse, and in fact provided money to a patient to buy drugs in order to do this.  This conduct is central to both the kickback and health care fraud conspiracies because drugs were used to incentivize patients to attend Compass Detox/WAR and to induce relapses so that patients would appear qualified for detox, the highest (and most expensive) level of care. MARKOVICH knew and approved of "scholar-shipping," which, as discussed at the hearing, is not a form of mere charity but rather an inducement to ensure referrals of other patients who had insurance that could be billed.  And MARKOVICH knew and approved of patient recycling, and along with others made sure patients were shuttled between Compass Detox and WAR. MARKOVICH encouraged staff to bill for patients not physically present, and tried to develop ways to keep and bill patients for longer periods.

MARKOVICH also signed key documents, including a pharmacy contract, medical director contract, and representations to Florida's Department of Children and Families that made the fraud possible, and in which he pledged to be involved in the "utilization review process" to ensure that Compass Detox services were "necessary."  Indeed, CW6, who did the billing for Compass Detox and WAR, relied on materials assembled by MARKOVICH and others to ensure that she was billing accurately for services rendered at Compass Detox and WAR.[6] MARKOVICH not only knew of patient recruitment, he requested kickbacks from a lab for UA referrals, and stopped doing business with that lab when they refused to pay.  And he accepted kickbacks from the lab managed by Defendant Christopher GARNTO.  Having committed these crimes,

---

[6] This fact (along with some of the money laundering allegations described below) is tellingly absent from MARKOVICH's motion for reconsideration.

MARKOVICH laundered over $11.2 million out of Compass Detox through shell companies and

a fake charity.  Finally, MARKOVICH sought two PPP loans, and despite all this criminal activity,

he certified when he did so that Compass Detox's conduct was lawful.

*Third*, in his motion, MARKOVICH attempts to isolate the evidence against him into silos,

encouraging the Court to view that evidence in a vacuum and independent of other evidence of the

conspiracies.  Contrary to MARKOVICH's desire, evidence of the broader conspiracies, including

other co-conspirators' conduct, is squarely relevant to both establishing the existence of the

conspiracies and assessing MARKOVICH's participation in each of them.  Thus, for example, the

notion that MARKOVICH need be as directly involved as his patient recruiter co-conspirators of

paying and receiving kickbacks, or as the doctors in the prescription and administration of the

comfort drink or other controlled substances, is flatly wrong.  The involvement of other co-

conspirators does not refute probable cause against MARKOVICH; it only confirms the existence

of the conspiracy, and the different roles that each conspirator played.

In any event, the Government's proof need not demonstrate that MARKOVICH knew all

of the details or participated in every aspect of the kickbacks conspiracy (or of any other conspiracy

he was charged with); a defendant may be convicted of conspiracy even if his or her participation

is less than his co-conspirators.  United States v. Guerra, 293 F.3d 1279, 1285 (11th Cir. 2002).[7]

Rather, the evidence need only show "that the defendant[ ] knew the essential nature of the

conspiracy." Guerra, 293 F.3d at 1269–70 (quotations and citation omitted).  MARKOVICH knew

---

[7] United States v. Orr, 825 F.2d 1537, 1543 (11th Cir. 1987) ("It is well-settled that the government need not produce direct evidence to prove participation in a conspiracy. Conspiracy can be proved by the accused's actions or by inferences from circumstantial evidence of a scheme. Also, each conspirator need not know all the details of the conspiracy, or be aware of the other conspirators, or participate in every phase of the scheme") (citing United States v. Carter, 760 F.2d 1568, 1582 (11th Cir. 1985)); United States v. Brazel, 102 F.3d 1120, 1131–32 (11th Cir. 1997) ("A defendant may be culpable even if he or she played a minor role in the conspiracy, since a conspirator need not know the details of each act making up the conspiracy.").

what patient recruiters were doing, solicited kickbacks from a lab himself, and was in a close

relationship with GARNTO, who owned a lab and was the main patient recruiter at Compass Detox

and WAR.   Moreover, MARKOVICH regularly dealt with the patient recruiters in this case.

Likewise, MARKOVICH approved of doctors giving out additional doses of medication in

response to patient demands.[8]

*Fourth*, with respect to the money laundering conspiracy, MARKOVICH attacks the

Government's evidence of one object of the alleged conspiracy (concealment), but is completely

silent on the other object (transactions over $10,000).   That's because MARKOVICH cannot

credibly dispute the fact that, as detailed in the Complaint, he transacted in health care and wire

fraud proceeds in sums far greater than $10,000.[9]   Indeed, MARKOVICH shoots himself in the

foot on that object of the conspiracy, by expressly claiming that this money was "easy to trace"

back to Compass Detox and WAR.   [D.E. 82, at 3.]   With respect to concealment money

laundering, the Government's primary contention is that the way in which the money was

laundered—through multiple shell company accounts, through a fake charity, and through lines of

credit, among other ways—concealed the ***nature*** of the funds, not who ***owned*** the funds. See

United States v. Majors, 196 F.3d 1206, 1214 (11th Cir. 1999) ("Moving money through a large

---

[8] While mere association is not enough, "[a] conspiracy conviction will be upheld . . . when the circumstances surrounding a person's presence at the scene of conspiratorial activity are so obvious that knowledge of its character can fairly be attributed to [him or her]." Alternatively, even if circumstantial evidence pointing to actual knowledge is shown, as here, a jury can still be instructed of the possibility of conviction on a theory of deliberate avoidance if the Government can also present evidence that the defendant was aware of a high probability of wrongdoing, but deliberately avoided confirming the truth so that he could deny knowledge of it for a possible legal defense. United States v Stone, 9 F.3d 934, 937-42 (11th Cir. 2003)(collecting cases).

[9] As argued at the hearing, which MARKOVICH does not dispute, for the money laundering charges, the Government need only prove that MARKOVICH (or any other defendant similarly charged) knew that the money came from "some kind of unlawful activity."   See, e.g., 11th Cir. Crim. Pattern Jury Instructions, O74.2 & O74.6; see also United States v. Townsend, 720 F. App'x 976, 980 (11th Cir. 2017) (per curiam) ("To convict Defendant, the Government had to prove that he knew the involved funds were the proceeds of some form of unlawful activity.  Circumstantial evidence is sufficient to establish that a defendant knew the proceeds were the result of an unlawful activity.  In addition, the government need not prove that the funds came from a specific illegal action.") (quotations and citations omitted).

number of accounts has, in light of other evidence, also been found to support the design [i.e., concealment] element of money laundering, even when all the accounts to which the defendant transferred the money and from which he withdrew were in his own name."). Yet MARKOVICH continues to assert that he cannot be charged with concealment money laundering because he put his name on the bank accounts and therefore did not conceal his ownership of the money.[10]

Most shocking about MARKOVICH's money laundering argument is his contention—devoid of any acknowledgement of the factual allegations or substantial discussion of this point at the hearing—that all the transactions by MARKOVICH in question were "routine bank deposits and bank transfers." [D.E. 82, at 5.] Perhaps establishing a fake charity, calling fraud proceeds a charitable contribution, and locking that charity's money up as collateral for a massive line of credit for a co-conspirator's real estate business is "routine" for MARKOVICH (indeed, he did it twice), but that is the epitome of concealment money laundering.[11]

MARKOVICH contends that all of this evidence is not enough, or could be "better." This is an argument he can make to a jury at trial. At this stage of the case, such evidence is more than ample to meet the probable cause standard. The Court's ruling was therefore correct.

**II.   Government's Evidence Was Corroborated & Defendants Other Arguments Fail.**

MARKOVICH argues that the hearsay information necessarily relied upon by the Government was somehow unreliable as the patients were "addicts" or were cooperating. But all of the factual testimony by these witnesses was corroborated by other witnesses, the Government's

---

[10] Naturally, if MARKOVICH had not put his name on the accounts, he would not simply concede that the Government proved money laundering. He would be arguing that someone else moved the money. Thus, the name on the accounts, while potentially relevant, is by no means dispositive with respect to money laundering charges.

[11] See Majors, 196 F.3d at 1213, n.18 (noting that concealment can be proved through, among other evidence, "statements by a defendant probative of intent to conceal," "highly irregular features of the transaction," and "a series of unusual financial moves cumulating in the transaction").

medical expert, the documents in this case, the billing records, and a consultant who conducted file review.[12]  Thus, MARKOVICH's argument fails, and resoundingly so.

This was a preliminary hearing to determine probable cause for the charges, not a trial to assess guilt.  MARKOVICH's strained and repeated arguments do not change this.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Reconsideration should be denied.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

DANIEL KAHN, ACTING CHIEF
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION

By:     /s/ *James V. Hayes*
          JAMES V. HAYES
          Senior Litigation Counsel
          FL Special Bar No. A5501717
          JAMIE DE BOER
          Trial Attorney
          FL Special Bar No. A5502601
          United States Department of Justice
          Criminal Division, Fraud Section
          1400 New York Avenue, N.W.
          Washington, D.C.  20005
          Phone:  (202) 774-4276
          Email: James.Hayes@usdoj.gov
          Email: Jamie.deBoer@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ James V. Hayes*

---

[12] Indeed, even evidence presented by other Defendants corroborated Government witnesses.  Dr. Santeiro submitted others used his login credentials to approve UA tests; CW 2 stated to agents that he thought Dr. Santeiro gave his log in credentials to his son, [D.E. 1, at 43 & fn. 8].  It is thus reasonable to infer that if Dr. Santeiro himself admits others accessed medical records using his credentials, his son did as well.