UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CR-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JONATHAN MARKOVICH, et. al.,

      Defendant.

_____/

### DEFENDANT JONATHAN MARKOVICH'S OMNIBUS MOTION TO DISMISS AND/OR STRIKE AND INCORPORATED MEMORANDUM OF LAW

Defendant Jonathan Markovich, ("J. Markovich or Mr. Markovich") through undersigned counsel hereby moves this Court to dismiss the Indictment and/or to strike aspects of the Indictment, and as grounds, states as follows.

## **INTRODUCTION**

The Government has been investigating Second Chance Detox LLC ("Compass Detox") and WAR Network LLC ("WAR") and its principals for years. On September 27, 2020, the Government filed a Criminal Complaint in thus matter. The instant Indictment was filed on January 20, 2021. This indictment, however, instead of being a precise and clear statement of charges, meanders through forty plus pages of mostly immaterial, inflammatory, inconsistent and contradictory verbiage in plain contradiction to the requirements of Fed.R.Crim.P. 7(c). When closely examined, the Indictment actually says very little about Jonathan Markovich and even less, about what acts he alleged he committed to warrant the charges brought.

Strict compliance with Rule 7(c) is even more important in this case given the nature of the businesses of Compass Detox and WAR, and J. Markovich's role in those businesses. Compass

Detox and WAR are substance abuse treatment facilities.  Staffing is large and includes doctors and nurses, behavioral technicians, a utilization review department, therapists, clinical directors, clinicians and interns, as well as an administrative staff.  Mr. Markovich helped create these businesses but as time went on was not involved much in the day-today operations or interactions with patients.  Furthermore, decisions on how to treat substance abuse, and protocols used in treatment, are largely subjective rather that objective determinations.  The patients are recovering addicts who are less than reliable and the choices in how to best treat these patients and help them deal better with their addiction are complex at best.

This is the milieu about which the Government has brought its charges, an ever-changing and difficult milieu.  To assert something bad happened and to assume J. Markovich had to know about it is just not enough to satisfy Rule 7(c).  To rely upon innuendo and hearsay is unfair to Mr. Markovich.  Even the testimony at the preliminary hearing in this case was unable to identify specific actions by J. Markovich that violated the law.  Mr. Markovich deserves to know exactly what he is accused of doing wrong.  This indictment fails to do that.

I.      **THE INDICTMENT SHOULD BE DISMISSED ON GROUNDS OF VAGUENESS**

    **A.      Legal Standard**

When the legality of a person's conduct is challenged under the dictates of a criminal statute, the Supreme Court has declared that "[n]o one may be required at peril of life, liberty or property to speculate as to [the statute's] meaning…All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939).  Because of the serious consequences of vagueness in criminal cases, courts must examine the charging language and underlying statutes "rigorously in order to protect unsuspecting citizens from being ensnared by ambiguous statutory language." *United States v. Insco*, 496 F.2d 204, 206 (5th Cir. 1974).  *See*

*also Kropp Forge Co. v. Secretary of Labor*, 657 F.2d 119, 122 (7th Cir. 1981) (approving the "traditional rule that the applicability of penal sanctions in regulations is to be narrowly construed by the judiciary").

Due process requires that statutes and criminal charging instruments give fair warning to persons of ordinary intelligence of the proscribed conduct and the persons covered.  *See Owens v. Wainwrigh*t, 698 F.2d 1111, 1115 (11th Cir. 1983).   Fed. R. Crim. P. 7(c) requires that an Indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged."  This rule is grounded in the Fifth Amendment guarantee of indictment by grand jury and the Sixth Amendment right to be informed of the nature of the charges.  *See United States v. Dorfman*, 532 F. Supp. 1118, 1124 (N.D. Ill. 1981).  The Indictment must adequately inform the defendant of the charge against him so that he can prepare his defense; and it must establish a record for the purpose of ruling on a defense of double jeopardy should defendant be prosecuted again.  *See Russell v. United States*, 369 U.S. 749 (1962).

### B.  Argument

In the instant case, the Indictment is impermissibly vague as to Mr. Markovich and fails to fully apprise Mr. Markovich of the charge against him with requisite particularity.  Defendant submits the following:

1.   The general allegations in no way apprise Jonathan Markovich of the conduct alleged against him.

2.   Count I is a broad 18 U.S.C. §1349 conspiracy count alleging conduct over a three and a half year span.  It alleges for example that Mr. Markovich and others conspired with a Dr. Jeffrey Draesel, a chiropractor who evidently falsely billed insurance plans and others in connection with procedures he performed on Compass Detox residents, even through there is no

allegation that Compass Detox or Jonathan Markovich benefitted from Draesel's scheme or received monies from Dr. Draesel.  What Jonathan Markovich knew about Dr. Draesel or how Mr. Markovich did anything whatsoever to assist Dr. Draesel is left unexplained.  Count I alleges kickbacks were paid, but says nothing about what Jonathan Markovich purportedly did in this regard.  The Count frequently uses language like "billed or caused to be billed" (paragraph 7 and 8), "prescribed and caused to be prescribed" (paragraph 9), "created or cause to be created" (paragraph 13), "purchased and caused the purchase" (paragraph 16), "recycled and caused to be recycled" (paragraph 17) "referred and caused to be referred" (paragraph 19) and "submitted and caused others to submit" (paragraphs 20, 22, 24 and 26), but never explains what "caused" means or anything that Jonathan Markovich did in this regard to "cause" whatever is described.  There is an allegation that Jonathan Markovich was paid in return for urine testing referrals (paragraph 15). Even this allegation is silent as to how this was effectuated or whether the Government is assuming that a check received could only be for a bad purpose.  Simply put, Count I amounts to "sound and fury signifying nothing" and certainly not telling Jonathan Markovich enough to allow him to properly defend himself.

3.       Counts 2-9 charge substantive 18 U.S.C. §1347 violations but fare no better.  Mr. Markovich is named as one of several defendants in chart form where eight claims ranging from §1850 to §5550 are in issue.  Who submitted the claim, what was involved, what Jonathan Markovich had to do with any submission or even what Mr. Markovich knew are not apparent or described.

4.       Count 10 alleges an 18 U.S.C. §371 conspiracy to pay and receive kickbacks. Jonathan Markovich is one of several defendants, but what Mr. Markovich is purported to have done or known is a mystery.  The Government repeats its urine testing claim, again without

sufficient detail.  Most of the overt acts talk about other people.  Overt Act 12 names Jonathan Markovich and uses the "purchased or caused to purchased" language and identifies a company credit card on which Mr. Markovich is a signatory.  What is unclear is whether Mr. Markovich is charged because he did something or because someone else used a company credit card to charge $442.  How Jonathan Markovich is expected to know that this occurred is unknown and not stated

5.      Count 18 charges a substantive 18 U.S.C. §220(a) violation for this $442 credit card expense.  Count 22 charges Mr. Markovich's receipt of a check from Laboratory Pros that purports to relate to urine testing as another §220(a) violation.  Again, there is no specificity to these charges, which merely repeat the earlier vague accusations.

6.      Counts 24-33 charge money laundering conspiracy and substantive 18 U.S.C. §1956 and §1957 violations.  All these Counts do is describe routine bank deposits and bank transfers, all clearly identified and easy to trace.  These Counts give Jonathan Markovich no real explanation of what he supposedly did to conceal or disguise illicit monies.  Like the case of *United States v. Blankenship*, 282 F.3d 110 (11th Cir. 2004), all that appears here are ordinary banking transactions.

7.      Counts 34-35 allege bank fraud.  What is unclear is whether Jonathan Markovich is accused of merely marking a box that the Government is calling a false representation or doing anything more.

## II.      THE DUPLICITY PROBLEM

### A.      Legal Standard

The charging of more than one offense in one count of an indictment is contrary to Rule 8(a) of the Federal Rules of Criminal Procedure, which provides that an indictment contain "a separate count for each offense."  Duplicity is the "joining in a single count of two or more separate

offenses." *United States v. Chrane*, 529 F.2d 1236, 1237 n.3 (5th Cir. 1976); *United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975). In *United States v. UCO Oil Co.*, 546 F.2d 833 (9th Cir. 1976), cert. denied, 430 U.S. 966 (1977), the court addressed why duplicity in an indictment is disfavored:

> [O]ne vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense. This may conflict with a defendant's Sixth Amendment rights and may also prejudice a subsequent double jeopardy defense. Duplicity may also give rise to problems regarding the admissibility of evidence including its admissibility against one or more co-defendants.

Id. at 835. In reviewing an indictment for duplicity, the indictment must be carefully read to determine whether it charges more than one crime in each count. *See United States v. Morse*, 785 F.2d 771, 774 (9th Cir.), *cert. denied*, 476 U.S. 1186 (1986); *United States v. Mastelotto*, 717 F.2d 1238, 1244 (9th Cir. 1983). In *United States v. Shorter*, 608 F. Supp. 871 (D.D.C. 1985), *aff'd*, 809 F.2d 54 (D.C. Cir.), *cert. denied*, 108 S. Ct. 71 (1987), the court emphasized the importance of fairness to a particular defendant in determining whether an indictment should be dismissed as impermissibly duplicitous:

> An indictment should be dismissed as impermissibly duplicitous . . . if trial on a single count would be unfair to the defendant . . . In order to determine whether fairness requires dismissal of an indictment which includes in one count what could be several independent charges, the Court must measure that indictment against the purposes of the prohibition against duplicity. These purposes are generally held to be: (1) the prevention of double jeopardy, (2) an assurance of adequate notice to the defendant, (3) the provision of a basis for appropriate sentencing, (4) the danger that a conviction was produced by a verdict that may not have been unanimous as to anyone of the crimes charged. (citations omitted).

Id. at 879. *See also United States v. Whitesel*, 543 F.2d 1176, 1180 (6th Cir. 1976); *United States v. Starks*, 515 F.2d at 116.

**B.     Argument**

Too often in its Indictment, the Government uses language in the conjunctive.   For example, in Count I, manner and means paragraph 5, the Indictment describes an array of conduct as constituting kickbacks and bribes.   Was money paid, or was it gift cards, or drugs, or medications, or transportation, or so-called "piggybacking," or "scholarships"?  Some of these acts may in fact be legal business activities permitted under State regulation.   Lumping all these activities together risks juror confusion and lack of true unanimity on a verdict.

Another example is Count I, manner and means paragraphs 7 and 8.   Defendants are accused of billing for services not provided, or not provided as billed, or provided but substandard, or provided but medically unnecessary.   Again, which is it?

Count I described a myriad of alleged bad conduct, much of which in and of itself may not be criminal or at least not related.   Alleged payments for lab testing are different than alleged false billing for treatment.   And different from alleged improper admissions and admissions policies.   And different from purported "recycling" of patients, whatever that actually means.

Count I also includes within its allegations references to a chiropractor, Jeffrey Draesel.   Draesel is purportedly a co-conspirator.   Yet Draesel apparently was falsely billing for his own chiropractic work and there is no clear allegations that J. Markovich or others at Compass knowingly participated in Draesel's separate and unique criminal activity or how they benefited.

Counts 2-9 suffer this problem where they describe the purported false claim as either medically unnecessary or not actually provided.   The Count 10 conspiracy charge on its face appears overbroad.   An indictment may not combine multiple conspiracies into a single conspiracy charge.   *Kotteakos v. United States*, 328 U.S. 750, 773 (1946) (reversing conspiracy convictions where evidence demonstrated eight separate conspiracies with a single common actor).   To

determine whether an indictment impermissibly charges multiple conspiracies in a single count, the court must examine "the nature, design, implementation, and logistics of the logistics of the illegal activity; the participants' *modus operandi*; the relevant geography; and the scope of coconspirator involvement." *United States v. Boylan*, 898 F.2d 230, 241 (1st Cir. 1990).

Here, Count 10 combines very different activities into one purported global conspiracy. One allegation is offering kickbacks to induce patient referrals. Another is paying to refer patients. There is even the totally unconnected allegation that a laboratory paid to get urine testing referrals. Simply put, Count 10 is a "kitchen sink" that is duplicitous and mischarged.

## III.   MUCH OF THE INDICTMENT CONTAINS PREJUDICIAL SURPLUSAGE THAT SHOULD BE STRICKEN

### A.   Legal Standard

Rule 7(d) of the Federal Rules of Criminal Procedure provides: "The court on motion of the defendant may strike surplusage from the indictment or information." Language in an indictment beyond that which is relevant to the elements of the statute charged is mere surplusage. *United States v. Noveck*, 271 U.S. 201, 203 (1926); *United States v. Goodman*, 605 F.2d 870, 886 (5th Cir. 1979); *United States v. Greene*, 497 F.2d 1068, 1086 (7th Cir. 1974), cert. denied, 420 U.S. 909 (1975). As the former Fifth Circuit Court of Appeals has recognized:

> The inclusion of clearly unnecessary language in an indictment that could serve only to inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts involved surely can be prejudicial.

*United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971). A motion to strike surplusage is addressed to the discretion of the District Court, and should be granted where it is clear that the allegations contained therein are not germane to the charges made or contain inflammatory and

prejudicial matter. *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962). *See also United States v. Gambale*, 610 F. Supp. 1515, 1543 (D. Mass 1985).

**B.     Argument**

1.     The general allegations section of the Indictment is replete with statements which are immaterial and prejudicial and should be stricken from the Indictment.

Paragraphs 5-7 talk about State laws.  Paragraphs 8-9 talk about "guidelines" for addiction treatment.  Paragraphs 10-14 talk about controlled substances.  None of these statements relate to any charged conduct.  Worse, since violations of civil or regulatory codes are not in and of themselves criminal violations, keeping this language may create jury confusion and certainly is unfairly prejudicial.

2.     Paragraphs 20-27 of Count One refer to alleged amount of loss, which is highly prejudicial and should be stricken.  Loss is not an element of the offense of conspiracy to commit health care and wire fraud.  *See*, *e.g.*, *Brandon v. United States*, 382 F.2d 607 (10th Cir. 1967) (holding that financial loss and gain to defendants unnecessary for conviction for conspiracy to commit wire fraud); *see also United States v. Condolon*, 600 F.2d 7 (4th Cir. 1979) (the gravamen of the offense of wire fraud is simply the misuse of interstate communications facilities to execute any scheme or artifice to defraud, and concerns itself with neither the victim's loss nor the defendant's gain); *Untied States v. Loney*, 959 F.2d 1332 (5th Cir. 1992) (showing loss not necessary); *United States v. Oren*, 893 F.2d 1057 (9th Cir. 1990) (federal wire fraud statute does not require showing of actual loss of money or property).

Courts have generally recognized limits to the relevance of loss evidence in fraud cases. *See e.g. United States v. Kenrick*, 221 F.3d 19, 26 (1st Cir. 2000) (citing *United States v. Blasini-Lluberas*, 169 F.3d 57, 65 (1st Cir. 1999)); *United States v. Jacobs*, 117 F.3d 82, 92 (2d Cir. 1997);

*United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir. 1987). While some courts have ruled that evidence of loss may be admissible if it tends to prove a defendant's criminal intent, *see*, *e.g.*, *United States v. Foshee*, 606 F.2d 111, 113 (6th Cir. 1979) (mail fraud); the case

law reveals little analysis of why loss tends to prove intent. In fact, the First Circuit has recognized that having the purpose to cause loss to another or gain to oneself "is not the essence of fraudulent intent." *Kenrick*, 221 F.3d at 29. See also *United States v. Morris*, 827 F.2d 1348, 1351 (9th Cir. 1987) (recognizing the "logical irrelevancy of the scope of [the bank's] losses to the issue of whether [the defendant] through fraudulent use of credit cards, had caused any of these losses.")

In *United States v. Copple*, 24 F.3d 535, 546 (3d Cir. 1994), the Court noted that "Even if there had been some marginal relevance to the testimony about the particular personal or professional impact the losses had...its principal effect, by far, was to highlight the personal tragedy...suffered [by] victims." Admission of this evidence was deemed error, albeit harmless on the facts of the case. *See also Untied States v. Stoecker*, 920 F. Supp. 867, 875–76 (N.D. Ill. 1996) (excluding evidence of "the general financial condition of certain banks after the transactions charged in the indictment, evidence relating to financial problems of certain banks,

or the failure or receivership of any lending institution, including those mentioned in the complaint"); *United States v. Farrell*, 321 F.2d 409, 419 (9th Cir. 1963) (criticizing admission of evidence of losses that occurred after the appointment of a receiver when defendant was no longer in control of the funds). The Government simply included the loss allegation here to inflame the jury. Accordingly, this language should be stricken from the Indictment.

## IV.     CONCLUSION

For the reasons stated above, Defendant Jonathan Markovich urges this Court to dismiss this Indictment on Vagueness and Duplicity grounds, or in the alternative, strike prejudicial surplusage.

### RULE 88.9 CERTIFICATION

Undersigned understands that Government counsel opposes this motion.

Dated: March 10, 2021                    Respectfully submitted,

                                                  *s/ Michael Pasano*
Michael S. Pasano (FBN 475947)
E-mail: mpasano@carltonfields.com
CARLTON FIELDS
2 MiamiCentral
700 N.W. 1st Avenue, Suite 1200
Miami, Florida 33136
Telephone: (305) 530-0050
*Attorney for Defendant Jonathan Markovich*

124886123.1