UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-60020-CR-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

vs.

JONATHAN MARKOVICH, et al.

Defendants.

_____/

## GOVERNMENT'S OPPOSITION TO JONATHAN MARKOVICH'S OMNIBUS MOTION TO DISMISS AND/OR STRIKE THE INDICTMENT

The United States of America, through counsel, hereby opposes defendant Jonathan Markovich's ("J. Markovich") Omnibus Motion to Dismiss and/or Strike the Indictment [D.E. 157] ("Motion"). The Indictment tracks the statutory language, clearly and concisely explains the crimes charged to put the defendant on notice, and sufficiently alleges all elements of the charged offenses, as well as facts and circumstances pertaining to them. This is all the law requires.

J. Markovich does not dispute that the charges in the Indictment track the statutory language or allege all legal elements. He instead argues that he has many questions about the Government's theory of his involvement in the alleged addiction treatment fraud and kickback schemes. His questions were answered in the 60-page criminal complaint previously filed in this case, the six hours of testimony from the case agent at the preliminary hearing, and the voluminous discovery produced by the Government to date. In any event, such questions do not render the Indictment invalid. An Indictment is not meant to replace voluminous discovery or a full trial on factual issues, which in this case will take weeks. Defendant's Motion demands specifics that simply are not required in a valid Indictment. And to the extent that J. Markovich argues the

1

allegations against him are incorrect, this will be determined at trial.  There is no summary judgment in criminal law.

J. Markovich's arguments that certain counts are duplicitous, and that some of the allegations should be stricken as surplusage, are similarly unfounded.  The Indictment alleges vast conspiracies that were carried out through varied and complicated means, which is expressly permitted by the Federal Rules of Criminal Procedure and cases applying them.   And the allegations in the Indictment are consistent with what the evidence will show the Defendants, including J. Markovich, did.  In other words, the conspiracies alleged in the Indictment are only as broad and complex as the defendants' own conduct.  Finally, the Indictment's allegations about guidelines for addiction treatment are relevant, as are allegations about the total amount that private insurers were billed for services that Compass Detox, WAR, and related providers allegedly provided.  J. Markovich does not come close to meeting the strict standard for striking facts from the Indictment.  His Motion should therefore be denied in its entirety.

## FACTUAL BACKGROUND

### A.  Procedural Background

On September 25, 2020, Judge Hunt signed a criminal complaint (the "Complaint") charging J. Markovich with (1) conspiracy to commit health care and wire fraud (18 U.S.C. § 1349); (2) conspiracy to violate the Eliminating Kickbacks in Recovery Act ("EKRA") (18 U.S.C. § 371); (3) conspiracy to commit money laundering (18 U.S.C. § 1956(h)); (4) false statements to a financial institution (18 U.S.C. § 1014); and (5) bank fraud (18 U.S.C. § 1344(2)).  [D.E. 1.]  The Complaint contained 60 pages of allegations concerning the alleged addiction treatment fraud, kickbacks, money laundering, and bank fraud.  *Id.*  The allegations in the Complaint were tested in a preliminary hearing before Judge Valle that spanned two days, including over six hours of testimony from a case agent about the underlying allegations.  J. Markovich was the first defendant

who cross-examined the case agent and his attorney questioned the agent for over an hour (Judge

Valle imposed a time limit on later cross-examinations).  Each Defendant, including J. Markovich,

had an opportunity to argue about why the allegations in the Complaint failed to support the

charges.  After these extensive proceedings, Judge Valle found probable cause existed to hold the

Defendants over for further proceedings.  [D.E. 81.]

But that ruling did not satisfy J. Markovich.  He promptly moved for reconsideration of

Judge Valle's probable cause determination, arguing, much as he does in his present Motion, that

the allegations against him were too "vague" and therefore "fail to rise to the level of probable

cause that J. Markovich was involved with the crimes" charged.  [D.E. 82, at 6.]  Judge Valle

denied that motion.  [D.E. 95.]

In December 2020, roughly a month before J. Markovich was indicted, the Government

produced several hundred thousand pages of discovery, including financial records, flight records,

patient files, insurance claims data, regulatory records, and other materials.  (The government had

previously produced certain redacted 302s as <u>Jencks</u> material before the preliminary hearing.)  On

January 19, 2021, the grand jury returned an indictment against J. Markovich and seven others.[1]

[D.E. 110.]

Now, after (1) Judge Hunt signed the Complaint setting out 60 pages of detail about the

alleged crimes; (2) Judge Valle ruled twice that probable cause existed for the charges against J.

Markovich; (3) J. Markovich received an incredible amount of discovery substantiating those

allegations; and (4) a federal grand jury found probable cause to indict him, J. Markovich filed the

present Motion primarily asserting that the charges against him are too vague.

---

[1]     In March 2021, the Government made a subsequent discovery production which included
additional financial records, a cell phone extract, and redacted 302s.

### B. The Indictment's Allegations Against J. Markovich

J. Markovich is charged in the following counts:  Count 1 (conspiracy to commit health care and wire fraud); Counts 2-9 (health care fraud); Count 10 (conspiracy to violate three subsections of EKRA); Counts 18 and 22 (substantive EKRA violations); Count 24 (money laundering conspiracy); Counts 25-26 (concealment money laundering); Counts 27-28 and 30-33 (money laundering through transactions over $10,000); and Counts 34-35 (bank fraud in connection with Paycheck Protection Program loans).  The allegations in these counts track the underlying statutory language for each alleged violation, and allege all elements of each charge.

In addition, the Indictment alleges that J. Markovich was "a CEO of Compass Detox, a co-owner of Compass Detox and WAR, the sole manager of Asakim 18 and Yeladim 18, a co-manager of Waterstone Healthcare Management, Right Direction Recovery, and Jade Holdings, and a co-director of the Ness Group Foundation." *Id.*, General Allegations, ¶ 46.  Count 1 of the Indictment alleges a health care fraud and wire fraud conspiracy involving J. Markovich and four other defendants.  J. Markovich is alleged to have participated in many aspects of this conspiracy, though, as with many conspiracies, he is not alleged to have been directly involved in every single aspect of the conspiracy.

The Indictment alleges that J. Markovich and his co-conspirators[2] sought to carry out this underlying health care fraud and wire fraud conspiracy through varied means, which are specifically alleged in the Manner and Means section of Count 1.  The Manner and Means allegations include specific allegations of J. Markovich's involvement in the health care and wire fraud conspiracy as an owner and operator of Compass Detox and WAR, including that he:  paid and offered to pay kickbacks to prospective patients to attend treatment at Compass Detox and

---

[2]      Five of the eight defendants are charged in Count 1.

WAR (Count 1, ¶ 5); billed and caused to be billed various forms of treatment that were not in fact provided, not provided as billed, so substandard that they failed to serve a treatment purpose, and/or were not medically necessary (*id.* ¶¶ 7-8, 13); hired Dr. Jose Santeiro as Medical Director who, in return, ordered medically unnecessary urine testing (*id.* ¶ 14); participated in the provision of controlled substances and illegal drugs to patients so that they would appear eligible for detox services when in fact such services were not medically necessary (*id.* ¶ 16); recycled and caused the recycling of patients through Compass Detox and WAR multiple times to maximize billings (*id.* ¶ 17); referred and caused the referral of patients for chiropractic services that were not provided, not provided as billed, and/or medically unnecessary (*id.* ¶ 19); submitted and caused the submission of nearly $112 million of claims to private insurers (*id.* ¶¶ 20-27); established and operated shell companies to distribute and conceal proceeds of the fraud (*id.* ¶ 28); and used fraud proceeds for his personal benefit and to further the fraud.[3]   Evidence of J. Markovich's involvement in these practices, as well as his approval of other practices (such as the over-medication of patients to the point of sedation) was presented at the preliminary hearing and is available in the discovery produced by the Government.

The substantive health care fraud, kickback, and money laundering counts that follow Count 1 provide additional details about how the scheme operated but, as described in the Manner and Means section of Count 1, the payment of kickbacks and the laundering of fraud proceeds were part and parcel of the underlying addiction treatment fraud.

---

[3]     The Manner and Means of Count 10 (EKRA conspiracy) are more limited to focus solely on the different types of kickbacks paid and received by co-conspirators.  Because kickback payments are incorporated as part of the Manner and Means of Count 1, the specific allegations in Count 10 against J. Markovich are not repeated here, nor are the specific health care fraud or kickback substantive counts, which merely recount examples of the unlawful activity described in the conspiracy counts.

Finally, the Indictment alleges in Counts 34-35 that J. Markovich committed bank fraud when he falsely certified on Paycheck Protection Program ("PPP") loans that Compass Detox and WAR were not engaged in violations of law.

## LEGAL STANDARDS

### A. Sufficiency of Indictment

"A court must apply a common sense construction when examining the validity of an indictment, testing not whether the indictment could have been drafted with more clarity, but whether it conforms to minimal constitutional standards." *United States v. Northcutt*, 2008 WL 162753, at *2 (S.D. Fla. Jan. 3, 2008) (Hurley, J.) (citing *United States v. Poirier*, 321 F.3d 1024, 1029 (11th Cir. 2003)).  The indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c).  "An indictment that tracks the language of the relevant statute is sufficient, as long as it also provides a statement of facts and circumstances that give notice of the offense to the accused." *Northcutt*, 2008 WL 162753, at *2 (citing *United States v. Walker*, 490 F.3d 1282, 1296 (11th Cir. 2007)); *see also United States v. Dabbs*, 134 F.3d 1071, 1079 (11th Cir. 1998) ("[A]n indictment [is] sufficient if it (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.").

### B. Duplicity

A count is duplicitous if it charges two or more "separate and distinct" offenses. *United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir. 1989); *see also United States v. Ramos*, 666 F.2d 469, 473 (11th Cir. 1982) ("The error of duplicity is present where more than a single crime is charged in one count of an indictment.").  "'The allegation in a single count of a conspiracy to

commit several crimes is not duplicitous, for the conspiracy is the crime, and that is one, however

diverse its objects.'"  *Id.* (quoting *Braverman v. United States*, 317 U.S. 49, 54 (1942)).

### C. Surplusage

"Upon the defendant's motion, the court may strike surplusage from the indictment."  Fed.

R. Crim. P. 7(d).  "Rule 7(d) is strictly construed against striking surplusage." *United States v.*

*Williams*, 2008 WL 4867748, at \*3 (S.D. Fla. Nov. 10, 2008).  "A motion to strike surplusage from

an indictment should not be granted unless it is clear that the allegations are not relevant to the

charge and are inflammatory and prejudicial. . . . [T]his is a most exacting standard." *United States*

*v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992) (citation and quotations omitted).  "Moreover, even

where prejudice is shown, language in the indictment may not be stricken so long as it bears some

relevance to the offense charged."  *United States v. Pavlenko*, 2012 WL 222928, at \*3 (S.D. Fla.

Jan. 25, 2012) (Scola, J.).

## ARGUMENT

### I.     THE INDICTMENT SATISFIES RULE 7(c) AND DUE PROCESS REQUIREMENTS.

J. Markovich does not argue that the Indictment fails to allege the elements of each offense,

nor could he.  In this case, the Indictment "tracks the language of the relevant statute[s]," and

contains allegations concerning the "facts and circumstances" of the charged offenses. *Northcutt*,

2008 WL 162753, at \*2; *see also Dabbs*, 134 F.3d at 1079.  As described in the Factual

Background section above, the Manner and Means section of Count 1 provides J. Markovich with

detailed notice of the alleged offense conduct, which is all that is required under the law.

The Government need not allege all details of the crimes with which J. Markovich is

charged.  Yet that is exactly what his Motion—which is, in essence, a veiled motion for a bill of

particulars—requests.  *See United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980) ("We

also disagree with appellants' argument that 'any of several acts conceivably underlay the Grand Jury's indictment,' because that argument 'confuses the Defendants' constitutional right to know what offense is charged with his need to know the evidentiary details establishing the facts of such offense' that can be provided through a motion for bill of particulars.") (citation omitted).   J. Markovich's primary grievance is that he is "in no way apprise[d]" of the "conduct alleged against him." Mot. at 3.  Defendant's Motion is full of bald assertions like this, but repeating this argument does not make it true.  The Motion ignores the fact that, beyond the facially sufficient allegations in the Indictment, J. Markovich also (1) received a 60-page Complaint setting forth specific allegations about his and his co-conspirators' alleged conduct (including analyses conducted by a medical expert and an outside consultant); (2) questioned a case agent about those allegations for over an hour; (3) re-litigated the sufficiency of those allegations through a motion to reconsider Judge Valle's probable cause determination; and (4) received heaps of discovery, including weeks before he was indicted.

Specifically, J. Markovich seeks dismissal of the Indictment because he has the following questions about the allegations against him:

- "[w]hat Jonathan Markovich knew about [chiropractor] Dr. Draesel or how Mr. Markovich" assisted Dr. Draesel;

- what precise steps J. Markovich took to "cause" false billings;

- "how" payments "in return for urine testing referrals" were "effectuated";

- "who submitted the claim[s]" charged in Counts 2-9 (substantive health care fraud violations);

- "what was involved" in the claims charged in Counts 2-9;

- "what Jonathan Markovich had to do with any submission" of the claims in Counts 2-9;

- precisely "what Mr. Markovich knew" about the claims submitted in Counts 2-9;

- "what Mr. Markovich is purported to have done or known" with respect to Count 10 (EKRA conspiracy);

- who used the credit card for which J. Markovich was a signatory in one of the overt acts charged in Count 10; and

- for Counts 34-35 (PPP fraud), "whether Jonathan Markovich is accused of merely marking a box that the Government is calling a false representation or doing anything more."

These questions demand specifics that are simply not required in a valid Indictment. None of these questions identifies a legitimate insufficiency in the Indictment, and all of these questions are answered in the Indictment itself, the Complaint, testimony of the agent at the preliminary hearing, or the discovery that the Government is in the process of producing. Likewise, J. Markovich's complaints about the breadth of the allegations are equally unfounded. *See* Mot. at 3. The Indictment alleges a massive and varied conspiracy because that is the nature of the conspiracy the defendants designed. In other words, the Indictment not only tracks the statutory language and alleges all elements of each offense, but also provides notice of the facts and circumstances surrounding the offenses. *Northcutt*, 2008 WL 162753, at *2.

Finally, J. Markovich makes factual assertions in his Motion that have no place in a motion to dismiss. He argues that the Indictment should be dismissed because the accusations in it do not comport with his view of his role at Compass Detox and WAR. According to him, Compass Detox and WAR employed many "doctors and nurses, behavioral technicians, a utilization review department, therapists, clinical directors, clinicians and interns, as well as administrative staff." Mot. at 2. Further, he submits that his role was limited to "help[ing] create these businesses," but that, "as time went on," he "was not involved much in the day-today [sic] operations or interactions

9

with patients." *Id.* And, according to J. Markovich, substance abuse treatment decisions are "complex" and "subjective." *Id.*

These arguments are misplaced and unavailing at this stage of the case. J. Markovich is free to present evidence indicating that (1) his employees, not himself, are to blame for the fraud; (2) he was uninvolved in the fraud; and (3) the medical decisions were too complex to be fraudulent. But he must do so at trial. *See, e.g.*, *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) ("[A] court may not dismiss an indictment … on a determination of facts that should have been developed at trial."); *United States v. Brantley*, 461 F. App'x 849, 851 (11th Cir. 2012) ("'There is no summary judgment procedure in criminal cases . . . .'") (quoting *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)).

## II.      THE INDICTMENT IS NOT DUPLICITOUS.

The Government's investigation uncovered a multi-year, $112 million scheme involving two treatment centers, multiple laboratories, a chiropractor, and a web of patient recruiters. The allegations about this scheme are necessarily broad and encompass varied types of conduct, because that is precisely the type of scheme the conspirators devised. This makes the Indictment accurate and comprehensive, not duplicitous.

To get around this, the Defendant first takes issue with conjunctive language in the Indictment, such as language indicating that conspirators submitted and caused to be submitted false claims to private insurers. J. Markovich then makes a similar, but slightly different argument that Count 10 (EKRA conspiracy) is so broad as to charge multiple conspiracies because (1) Count 10 charges subsections of EKRA as distinct objects of the conspiracy; and (2) Count 10 incorporates payments for urinalysis referrals as part of the conspiracy. None of these arguments render any of the Counts duplicitous.

J. Markovich's arguments run contrary to Federal Rule of Criminal Procedure 7(c)(1), which expressly permits a single count to allege that an offense was committed by "one or more specified means." *See also United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir. 1989) ("Where a penal statute … prescribes several alternative ways in which the statute may be violated and each is subject to the same punishment, however, the indictment may charge any or all of the acts conjunctively, in a single count, as constituting the same offense."). "The conjunctive allegations do not render the indictment duplicitous." *Id.*; *see also United States v. Cornillie*, 92 F.3d 1108, 1110 (11th Cir. 1996) ("Where the language of a statute proscribes several means by which the defendant might have committed a violation, the government may plead the offense conjunctively and satisfy its burden of proof by any one of the means.").[4]

Furthermore, it is well-settled that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime, and that is one, however diverse its objects." *Braverman*, 317 U.S. at 57 (quotation and citation omitted). "Where one broad conspiracy exits, charging multiple purposes is not improper." *Northcutt*, 2008 WL 162753, *5. With respect to Count 10 in particular, J. Markovich and other Defendants, including Christopher Garnto, are alleged to have been co-conspirators personally involved in paying kickbacks to patients to attend treatment at Compass Detox and WAR, as well as referring urine samples to Garnto's lab. The evidence at trial will show that it was well-known that patients' urine samples were sent to Garnto's lab, and that Garnto was the key patient recruiter for Compass Detox

---

[4]      Even if conjunctive pleading rendered the Indictment duplicitous, which it does not, the remedy is not dismissal. Instead, any danger from such duplicity is "cured by a jury instruction explaining unanimous agreement must be reached that the government proved, beyond a reasonable doubt, at least one or the other." *United States v. Lefebre*, 189 F. App'x 767, 772-73 (10th Cir. 2006).

and WAR.  The overlap of conspirators, patients, and goals will demonstrate that there was one overarching kickback conspiracy with multiple objects, which was accomplished through multiple means.  *See United States v. Richardson*, 532 F.3d 1279, 1284 (11th Cir. 2008) (whether single or multiple conspiracies exist depends on "whether a common goal existed," "nature of the underlying scheme," and "overlap of participants").  That does not render the Indictment duplicitous.  In any event, "[w]hether a single conspiracy or multiple conspiracies existed is a question of fact for the jury . . . ."  *United States v. Elam*, 678 F.2d 1234, 1245 (5th Cir. 1982).

## III.    NOTHING SHOULD BE STRICKEN FROM THE INDICTMENT.

J. Markovich argues that the General Allegations section of the Indictment discussing addiction treatment guidelines and controlled substances, as well as allegations about the amounts billed to and paid by private insurers, should be stricken as surplusage.  A motion to strike surplusage must show that the allegations are both irrelevant and prejudicial.  J. Markovich's Motion fails to satisfy this "most exacting standard."  *Awan*, 966 F.2d at 1426.

First, allegations in an Indictment that aid the jury in explaining the context, motive, and set-up of a crime are properly included, and need not be struck before submission to the jury, except in exceedingly rare circumstances not met here.  The background information on addiction treatment and controlled substances is relevant to the charges, will aid the jury, and will be discussed in the testimony of the Government's medical expert.[5]

Likewise, evidence of extensive billing of the scope alleged in this case is highly relevant to show that the defendants understood that Compass Detox's and WAR's fraudulent services were billed to private insurers.  *See United States v. De Los Rios*, 2011 WL 346087, at *5 (S.D. Fla.

---

[5]     The Government's medical expert, Dr. Kelly Clark, was identified in the Complaint, as were some of her conclusions.

Feb. 1, 2011) (Lenard, J.) ("Evidence that Defendants billed Medicare with high frequency for [treatment] that should rarely be given … would assist the trier of fact [to] determine the issue of whether [the defendants] possessed the requisite *mens rea*."); *United States v. Boesen*, 541 F.3d 838, 848 (8th Cir. 2008) ("government charts summarizing the clinic's billings" were "relevant, summarizing background information on the clinic's revenue stream, a central issue at trial.").

In addition, actual loss may not be an essential element of fraud, but the Eleventh Circuit pattern jury instructions make clear that "intent to deceive alone, without the intent to cause loss or injury, is not sufficient to prove intent to defraud" for purposes of a health care fraud violation. Eleventh Circuit Crim. Pattern Jury Instructions, O53 (Feb. 2020).  The amount of loss—both actual and intended—is therefore squarely relevant to the health care fraud charges.  It is likewise relevant to the kickback and money laundering charges.  The extent of fraudulent billings demonstrates conspirators' intent in carrying out the health care and wire fraud conspiracy; the fact that money was obtained from private insurers as a result of a kickback is probative of the conspirators' intent in paying and receiving kickbacks; and the Government will have to demonstrate that the money transacted in the money laundering charges was in fact fraud proceeds. That cannot be accomplished without analyzing how much of the inflows into Compass Detox and WAR's bank accounts were fraud proceeds and what happened to that money.  *See United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) ("[I]f the evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken.") (citation omitted)).

Accordingly, courts routinely decline to strike as surplusage the amount of loss or fraudulently derived proceeds from indictments. *See, e.g.*, *United States v. Isley*, 2006 WL 8428807, *11 (N.D. Ga. Oct. 24, 2006), *adopted by* 2006 WL 8428810 (N.D. Ga. Nov. 14, 2006)

13

(declining to strike alleged loss); *United States v. O'Connor*, 656 F.3d 630, 646 (7th Cir. 2011) (total loss caused by fraudulent scheme was not prejudicial surplusage because the amount of the fraud was relevant and had been placed in evidence during trial); *United States v. Gotti*, 2004 WL 2389755, *5 (S.D.N.Y. Oct. 26, 2004) (proof that the conspiracy involved loss of over $5 million was relevant and otherwise admissible, therefore not surplusage to be struck); *United States v. Stein*, 1994 WL 285020, *3 (E.D. La. June 23, 1994) ("the Government need not prove that any losses were suffered as a result of the defendant's actions, but "evidence of losses is precisely the type of evidence the appellate court envisioned as being admissible in" *United States v. Foshee*, 606 F.2d 111 (5th Cir. 1979)).[6]

J. Markovich cites a dozen cases supposedly supporting his argument that the billed and paid amounts should be stricken from the Indictment. Upon even a cursory review of these cases, it is readily apparent that not a single one supports the relief he requests. None of these twelve cases struck loss allegations from an indictment as surplusage. Four of the cases cited by J. Markovich are simply irrelevant.[7] The remaining eight of twelve cases on which he relies (*Farrell*,

---

[6]     J. Markovich's reliance on *Foshee* therefore undercuts his argument. In *Foshee*, the Fifth Circuit expressly disagreed with the defendants' argument that evidence of losses stemming from defendants' unpaid loans was irrelevant. *Id.* at 112. "We hold that evidence of failure to repay loans obtained in order to cover kited checks is admissible to show the defendants' intent to defraud at the time the checks are kited." *Id.* at 113 (emphasis added).

[7]     In *United States v. Condolon*, 600 F.2d 7, 8-9 (4th Cir. 1979), the court found that a scheme to use a telephone to operate a "bogus talent agency" intended solely to "meet and seduce young women" "was a scheme to defraud within the meaning of the wire fraud statute." The case had nothing to do with the admissibility of pecuniary loss figures or how to treat such allegations in an indictment. In *United States v. Loney*, 959 F.2d 1332, 1337 (5th Cir. 1992), the court simply rejected the defendant's argument that the Government failed to satisfy its burden of proof because it did not show financial loss. This says nothing about whether the Government may introduce evidence of loss for some relevant purpose or allege billed/paid amounts in a health care fraud indictment. In *United States v. Oren*, 893 F.2d 1057 (9th Cir. 1990), it was the defendant who challenged the district court's decision not to admit evidence of the property's value in a fraud case stemming from the defendant's false statements in connection with the sale of certain land.

*Foshee*, *Copple*, *Morris*, *Stoecker*, *Kenrick*, *Brandon*, and *Goldblatt*), either found evidence of loss

relevant or took no issue with the evidence of loss presented.  These cases therefore weigh in favor

of denying his Motion.

For example, in *United States v. Farrell*, 321 F.2d 409 (9th Cir. 1963), the court expressly

recognized that proof of loss—*i.e.*, "proof that the scheme was effective"—"should <u>not</u> be

excluded as irrelevant."  *Id.* at 419 (emphasis added; quotations and citations omitted).  That is

precisely why, contrary to J. Markovich's selective presentation of the case, the Ninth Circuit

upheld the district court's admission of loss "prior to the receivership" as "relevant and material."

*Id.*  The only thing that was excluded was evidence of loss that post-dated the receivership since

that was not caused by the defendants.  *Id.*  Likewise, in *United States v. Copple*, 24 F.3d 535 (3d

Cir. 1994), the court clarified that, while the Government need not prove loss as an element of the

offense, that "does not mean that evidence of loss was irrelevant."  *Id.* at 545.  To the contrary, the

Government may "introduce evidence that even peripherally bears on the question of intent.  Proof

that someone was victimized by the fraud is thus treated as some evidence of the schemer's intent."

*Id.* (citations omitted).  J. Markovich cannot credibly argue that the Government may not allege in

the Indictment facts that the Government may properly present at trial.[8]

---

Because proof of the actual value of the property would not have negated the evidence of the
defendant's intent to defraud, there was no error in its exclusion.  The issue in *United States v.
Jacobs*, 117 F.3d 82, 92 (2d Cir. 1997) was whether, for purposes of the bank fraud statute, the
defendant intended to cause a bank, as opposed to a debtor, a loss.  In any event, the discussion in
*Jacobs* that is cited by J. Markovich was abrogated by a subsequent Supreme Court decision, so it
is unclear why *Jacobs* bears any relevance to the matters J. Markovich asks this Court to decide.
*See Loughrin v. United States*, 573 U.S. 351, 356 & n.3 (2014) (bank fraud statute does not require
specific intent to deceive a bank).

[8]   *Morris*, *Stoecker*, *Kenrick*, *Brandon*, and *Goldblatt* likewise cut against J. Markovich's
position.  In *United States v. Morris*, 827 F.2d 1348 (9th Cir. 1987), the issue was whether the
Government could ask a witness about a bank's total reported losses from credit card fraud
generally, or whether the question should have been limited to the amount of loss attributable to

In sum, there is nothing in the Indictment that should be stricken as surplusage, and J.

Markovich cites no authority to the contrary.

_____

the defendant.  The Ninth Circuit upheld the narrower questioning, noting that "there is no doubt that the question as rephrased [to be narrower] was relevant." *Id.* at 1350-51.  Here, the Indictment does not allege the total amount of loss that private insurers face from health care fraud schemes generally.  The allegations are properly limited to the co-conspirators' own conduct.  In *United States v. Stoecker*, 920 F. Supp. 867 (N.D. Ill. 1996), J. Markovich cites an opinion that was later amended to clarify that the "government <u>may</u> introduce evidence of any actual loss suffered by a victim bank." *Id.* at 876.  The only thing the Government was precluded from admitting in that case was evidence of the "financial condition of any of the banks after the transactions charged in the indictment, evidence relating to financial problems of the banks, or the failure" of any lending institution. *Id.*  Here, the Indictment does not allege that fraudulent claims submitted to private insurers caused any of those insurers to fail or suffer substantial financial problems.  In *United States v. Kenrick*, 221 F.3d 19, 29 (1st Cir. 2000), the court concluded that only intent to deceive, not intent to harm, was required under the bank fraud statute.  In upholding the sufficiency of evidence supporting the bank fraud convictions, the court commented on evidence pertaining to the loan amounts extended by the bank, which "put the bank at significant risk of loss." *Id.* at 32. Indeed, in light of the "size of the loan," among other factors, the jury could have concluded that the bank would not have extended the loan without the misrepresentations. *Id.* at 30.  This opinion was later abrogated by *Loughrin*, 573 U.S. 351.  In *Brandon v. United States*, 382 F.2d 607, 610 (10th Cir. 1967), the defendants sought to overturn their wire fraud convictions in part because they argued there was no monetary loss.  The court rejected that argument because loss is not an element of the crime but, in any event, noted that the victim did in fact suffer financial loss.  In *United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir. 1987), the court recognized that bank fraud does not require the Government to prove loss, but took no issue with the fact that the Government had in fact proved loss.

## CONCLUSION

For the foregoing reasons, J. Markovich's Motion should be denied.

Dated: March 23, 2021                          Respectfully submitted,

                                               ARIANA FAJARDO ORSHAN
                                               UNITED STATES ATTORNEY
                                               SOUTHERN DISTRICT OF FLORIDA

                                               DANIEL KAHN, ACTING CHIEF
                                               CRIMINAL DIVISION, FRAUD SECTION
                                               U.S. DEPARTMENT OF JUSTICE

                                   By:    /s/ James V. Hayes
                                          JAMES V. HAYES (FL Bar #A5501717)
                                          Senior Litigation Counsel
                                          JAMIE DE BOER (FL Bar #A5502601)
                                          Trial Attorney
                                          United States Department of Justice,
                                          Criminal Division, Fraud Section
                                          1400 New York Avenue, N.W.
                                          Washington, D.C. 20005
                                          Telephone: (202) 774-4276
                                          James.Hayes@usdoj.gov
                                          Jamie.deBoer@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 23, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ James V. Hayes