UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-60020-CR-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

vs.

JONATHAN MARKOVICH, et al.

Defendants.

_____/

### GOVERNMENT'S OPPOSITION TO JONATHAN MARKOVICH'S MOTION TO SEVER BANK FRAUD COUNTS (COUNTS 34-35)

The United States of America, through counsel, hereby opposes defendant Jonathan Markovich's ("J. Markovich") Motion to Sever Bank Fraud Counts (Counts 34 and 35) [D.E. 158] ("Motion").  J. Markovich faces numerous charges pertaining to:  (1) health care and wire fraud; (2) kickbacks; (3) money laundering; and (4) bank fraud.  These charges all stem from his role as an owner and operator of two addiction treatment facilities—Compass Detox and WAR.

The bank fraud charges in Counts 34-35, which J. Markovich seeks to sever from the remaining counts, are based on J. Markovich's false representation in Paycheck Protection Program ("PPP") loan applications that Compass Detox and WAR were not engaged in violations of the law.  In reality, as the Indictment alleges in Counts 1-33, these entities were involved in massive addiction treatment fraud, kickback, and money laundering schemes.  The Government's theory at trial will be that this misrepresentation was essential to (1) ensure that Compass Detox and WAR were approved for the PPP loans, which further funded the ongoing addiction treatment fraud, kickbacks, and money laundering schemes; and (2) conceal the existence of these underlying

schemes from the Government.  On these allegations, the PPP-related charges in Counts 34-35 are properly joined to the remaining counts against J. Markovich.

In addition, a separate trial of Counts 34-35 would require the Government to present the same proof of the underlying fraud, kickback, and money laundering schemes.  Since the evidence presented would be identical in both trials, J. Markovich is not prejudiced by trying all counts at once.  And, despite J. Markovich's suggestion to the contrary, it is impracticable—especially after a year of no trials in this district—to try this enormous, complex case twice against the lead defendant.  The Court should therefore deny J. Markovich's Motion.

## **FACTUAL BACKGROUND**

The Government incorporates by reference the Factual Background in its Opposition to Jonathan Markovich's Motion to Dismiss.  As relevant to this Motion, J. Markovich, an owner and operator of Compass Detox and WAR, is charged with two counts of bank fraud (Counts 34-35) in connection with his submission of fraudulent PPP loan applications on behalf of Compass Detox and WAR.  As described in the General Allegations section of the Indictment (¶¶ 56-62), the PPP was a financial assistance program created by Congress during the COVID-19 pandemic.  The program authorized hundreds of billions of dollars in forgivable loans to small businesses for job retention and certain other expenses.  Businesses were required to submit an application signed by an authorized representative, who certified that, among other things, the "Applicant is not engaged in an activity that is illegal under federal, state, or local law."

Counts 34-35 of the Indictment allege that the PPP applications submitted by J. Markovich on behalf of Compass Detox and WAR were fraudulent because J. Markovich falsely represented that Compass Detox and WAR were not engaged in violations of law.  In reality, as alleged throughout the Indictment, Compass Detox and WAR were involved in massive fraud, kickback, and money laundering schemes, which are charged in Counts 1-33, and J. Markovich knew this.

2

In addition, Count 1 (conspiracy to commit health care fraud and wire fraud) alleges that one purpose of that conspiracy was to conceal the submission of false and fraudulent claims to health care benefit programs. Count 1, ¶ 3. Counts 2-9 (substantive health care fraud) and Count 10 (kickback conspiracy) include similar allegations. Thus, in addition to the fact that proof of the PPP-related charges in Counts 34-35 depends on proof of the underlying unlawful activity, J. Markovich's misrepresentations in the PPP-related charges helped conceal the underlying conspiracies, which the Indictment alleges was one purpose of those conspiracies.

## **LEGAL STANDARD**

Federal Rule of Criminal Procedure 8(a) permits joinder of multiple offenses that "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Rule 8(a) is construed "'broadly in favor of initial joinder' so that charges that are similar may be tried together 'even if the offenses do not arise at the same time or out of the same series of acts or transactions.'" *United States v. Annamalai*, 939 F.3d 1216, 1222-23 (11th Cir. 2019) (quoting *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002)). For this reason, "[s]eparate charges in complex cases are properly joined as long as they arise out of the same underlying conduct." *Annamalai*, 939 F.3d at 1223.

Under Federal Rule of Criminal Procedure 14(a), a court "may order separate trials, sever the defendants' trials, or provide any other relief that justice requires" if joinder of offenses "appears to prejudice a defendant." "This is a heavy burden, and one which merely conclusory allegations cannot carry." *United States v. Walser*, 3 F.3d 380, 386 (11th Cir. 1993) (quotation and citation omitted). "'The decision whether to grant a severance lies within the district court's sound and substantial discretion.'" *Annamalai*, 939 F.3d at 1224 (quoting *United States v. Mosquera*, 886 F.3d 1032, 1041 (11th Cir. 2018)). "Although complex charges make for complicated trials, the intricacy of a case alone does not require severance. That is why we have

'declined to find that severance was required in some complex, multi-defendant cases.'" *Annamalai*, 939 F.3d at 1224 (quoting *United States v. Lopez*, 649 F.3d 1222, 1235 (11th Cir. 2011)).

## ARGUMENT

### I.      COUNTS 34-35 ARE PROPERLY JOINED WITH COUNTS 1-33.

J. Markovich argues that Counts 34-35 should be severed because (1) the PPP loans are not part of the same underlying conduct alleged as part of the addiction treatment fraud, kickback, or money laundering schemes; (2) the PPP fraud allegations are prejudicial; and (3) considerations of judicial economy warrant severance.  All three arguments fail as a basis for severance.

#### A.      Joinder Of Counts 34-35 With All Other Counts Satisfies Rule 8(a).

The bank fraud charges in Counts 34-35 stem directly from the underlying addiction treatment fraud, kickback, and money laundering conspiracies.  Counts 34-35 allege that the false representation made to Lender 1 was that Compass Detox and WAR were not engaged in violations of any laws.  In fact, as alleged throughout the Indictment, Compass Detox and WAR were used by J. Markovich and his co-defendants to carry out health care and wire fraud, kickback, and money laundering conspiracies.  And by falsifying the PPP loan applications, J. Markovich further concealed these underlying schemes from the Government.

This case is akin to two key Eleventh Circuit decisions in complex fraud cases that approved of the joinder of various charges in a single trial.  In *Annamalai*, the indictment alleged that the defendant used a company called "Hindu Temple—which later filed for bankruptcy—to carry out a fraudulent scheme and then committed a number of offenses related to that scheme." *Annamalai*, 939 F.3d at 1223.  In analyzing the joinder of these various offenses under Rule 8(a), the Court reasoned as follows:

4

The indictment alleged that Mr. Annamalai defrauded followers of the Hindu Temple, misled the financial institutions that charged those followers, moved the fraud proceeds (proceeds which he failed to report on his income tax return) to a foreign bank account, improperly concealed property belonging to the Hindu Temple's bankruptcy estate, committed money laundering with the proceeds of that bankruptcy, and committed a number of illegal acts related to the criminal investigation into his fraudulent activities (submitting a false document to the IRS, obstructing justice, providing false statements under oath, and conspiring to conceal a fugitive). All of these claims arose out of and were connected to the same general fraudulent scheme. Where, as here, there is an "explicit connection between the groups of charges, we need not look outside the four corners of the indictment."

*Id.* at 1223 (quoting *United States v. Dominguez*, 226 F.3d 1235, 1238 (11th Cir. 2000)).

Here, the Indictment could not allege a more "explicit connection" between the bank fraud and the underlying addiction treatment fraud, kickback, and money laundering schemes. The PPP applications were fraudulent precisely because of these underlying schemes. Notably, in *Annamalai*, even the tax charges were not severed from the underlying fraud and money laundering charges. *Id.* at 1222 (district court declined to sever counts and Annamalai was convicted on all 34 counts, including filing a false tax return). As with the PPP-related charges here, the tax charges in *Annamalai* stemmed from the underlying fraud—Annamalai failed to report fraud proceeds as income on his tax return. *Id.* at 1223.

Likewise, in *Dominguez*, the defendant was charged with 28 counts that broke down "into two general sets of crimes—one set involving participation in a cocaine distribution organization (Counts 1-24), and the other involving mortgage fraud (Counts 25-28)." 226 F.3d at 1237. In *Dominguez*, even though the indictment failed to allege any connection between the drug offenses and mortgage fraud at all, the Eleventh Circuit still upheld Judge Middlebrooks' denial of severance because, "[a]ccording to the government's theory of the case, which was later supported by the trial evidence, Dominguez submitted fraudulent income tax returns when applying for mortgage loans in order to conceal the fact that his income had been derived from drug activity."

*Id.* at 1239.  Here, Counts 34-35 allege that the false representations to Lender 1 were that Compass Detox and WAR were not engaged in violations of the law.  The 37 pages and 33 counts that precede this allegation explain that Compass Detox and WAR were, in fact, engaged in numerous violations of law.  Thus, this case presents an even stronger case for joinder than did the charges in *Dominguez*.

And, like *Dominguez*, the Government's theory is that J. Markovich falsified these applications because (1) J. Markovich had to conceal the fact that Compass Detox and WAR were engaged in unlawful conduct in order to obtain the PPP loans; and (2) J. Markovich had to conceal the fact that Compass Detox and WAR's income was derived from health care fraud, wire fraud, and kickbacks in order to sustain those conspiracies.  In this case, as with *Dominguez*, "[r]egardless of whether both sets of charges involve the presentation of the same evidence"—which they unquestionably do here—"the fact that one illegal activity provides the impetus for the other illegal activity is sufficient to constitute a common scheme for joinder purposes."  *Id.*

Tellingly, J. Markovich blindly cites to cases for general principles of joinder and severance, but he ignores the fact that those cases either provide no support for his position or, more often, decidedly undermine his position.  For example, *United States v. Canas*, 595 F.2d 73, 78 (1st Cir. 1979) is entirely out-of-place in this Motion, and not just because it is a First Circuit case from the 1970s.  This case has nothing to do with the severance of unrelated counts.  Instead, it pertains to duplicitous counts that improperly join distinct offenses in a single count.

Making matters worse, four of the other five cases cited by J. Markovich in the Motion contradict his position, including cases that provide binding precedent:

- In *United States v. Charlestain*, 2012 WL 13186044, *4 (S.D. Fla. June 18, 2012) (Rosenbaum, J.), the court denied severance because, much like J. Markovich's single

page of conclusory argument here, the defendant "assert[ed] only that 'Counts 9 and 10 are not of the same or similar character, nor are they based upon the same act or transaction or connected together.  Further, none of the charges together constitute parts of a common scheme or plan."  As in *Charlestain*, while the fraud charges against J. Markovich involve "misrepresentations to different audiences" (health care benefit programs, on the one hand, and Lender 1, on the other), they "all involve charges of deceit, and … the difference in the audience is not relevant to the analysis."  *Id.*

- In *Hersh*, 297 F.3d at 1242, the Eleventh Circuit upheld joinder of child pornography charges and travel and transport charges because they were "similar in that they reflect Hersh's repeated participation in the sexual exploitation of minors."  Under this precedent, Counts 34-35 against J. Markovich, which stem from same business operations and same unlawful conduct, are properly joined.[1]

---

[1]  J. Markovich also fails to distinguish the additional binding precedent relied upon by *Hersh*, which clearly cuts against him:

> In *United States v. Cartwright*, 632 F.2d 1290, 1293 (5th Cir. Unit A 1980), for example, we held that the joinder of two classes of offenses—those involving the fraudulent misapplication of one corporation's funds and those involving false statements made to other lenders—was proper even if they are not "connected together in any way," concluding that "the two classes of offenses are substantially similar in character because all of the offenses were crimes of deceit involving federally insured lending institutions."  *Id.*  Likewise, in *Walser*, 3 F.3d at 385-86, we upheld the district court's refusal to sever a perjury and aiding and abetting count from counts alleging false and fraudulent statements made to a government agency, because even though the offenses charged were "distinct in time," the counts were "nonetheless similar," as each count of the indictment related "to the attempt—or to the coverup of those attempts—to obtain by fraud federal crop relief."

*Hersh*, 297 F.3d at 1242.

- In *United States v. Barsoum*, 763 F.3d 1321, 1337 (11th Cir. 2014), the Eleventh Circuit upheld the denial of severance because it was "obvious that the substantive distribution counts (distributing Oxycodone not for a legitimate medical purpose and outside the course of professional practice) are similar in character to his conspiracy count (conspiracy to distribute Oxycodone not for a legitimate medical purpose and outside the course of professional practice)." As in *Barsoum*, J. Markovich's "conclusory" and "hypothetical" assertions of prejudice do not carry his "heavy burden" under Rule 14(a), *id.*, particularly in light of the similar character of the charges against him.

- In *United States v. Pearson*, 832 F. App'x 679, 685 (11th Cir. 2020), the Eleventh Circuit recently upheld Judge Bloom's denial of severance under both Rule 8 and Rule 14. As to Rule 8, the Court concluded that the various wire fraud and money laundering counts were properly joined because "the monies laundered were proceeds of specified unlawful activity," namely the tax fraud scheme alleged in the wire fraud counts. *Id.* As to Rule 14, the Court did not find "compelling prejudice" from joinder because the counts were "sufficiently related" since "proof on the former [scheme] tended to bear directly upon Defendant's knowledge of and involvement in" the latter scheme. *Id.* The same is true here—proof of the fraud, kickbacks, and money laundering will bear directly on J. Markovich's knowledge of and involvement in the PPP-related charges.

J. Markovich cites only a single case that actually granted severance. But he gets no mileage out of that case, since it is inapposite. In *United States v. Nelson*, 2011 WL 1560587, *3 (M.D. Fla. Apr. 25, 2011), severance was granted because the counts dealt with two different contracts, and evidence of one contract was not necessary to "tell the story of the other charges." Moreover, there was substantial risk of confusion since a co-conspirator in one scheme was a

8

victim in another scheme. *Id.* None of these things are true with respect to the PPP-related charges here. By contrast, in this case, proof of the fraud, kickback and money laundering schemes is necessary to "tell the story" of the PPP-related bank fraud charges.

> **B.      Rule 14(a) Does Not Require Severance.**

Next, J. Markovich complains of prejudice, but any prejudice flows from the presentation of evidence of the underlying scheme, which is squarely relevant and will be presented regardless of when the PPP-related counts are tried. If the jury concludes that Compass Detox and WAR were not involved in any violations of law, then the jury is not going to find that J. Markovich defrauded Lender 1 on the basis of J. Markovich's representation that Compass Detox and WAR were not violating the law. On the other hand, if the jury concludes that J. Markovich knew of violations of law occurring at Compass Detox and WAR, and nonetheless certified that the entities were not engaged in violations of law, then they will evaluate the PPP-related charges accordingly. In this respect, the PPP-related charges are not substantially different from the money laundering charges, which J. Markovich does not seek to sever (correctly so, since the money laundering charges are also properly joined).

To the extent J. Markovich is attempting to argue that the jury might misconstrue a loan application in and of itself as somehow indicative of addiction treatment fraud, such concern is far-fetched at best. In any event, whatever concern remains could be cured by a limiting instruction about the purpose of evidence of the PPP loan applications, if the need arises at trial. *Annamalai*, 969 F.3d at 1223 ("Compelling prejudice occurs when, 'under all the circumstances of a particular case,' it is apparent that the average juror could not follow the 'court's limiting instruction and appraise the independent evidence against a defendant solely on that defendant's own acts, statements, and conduct in relation to the allegations contained in the indictment and render an

impartial verdict.'") (quoting *Walser*, 3 F.3d at 386-87); *see also Annamalai*, 969 F.3d at 1223 ("'The decision whether to grant a severance lies within the district court's sound and substantial discretion.'") (quoting *Mosquera*, 886 F.3d at 1041).  J. Markovich also seems to suggest that prejudice stems from the fact that there are other PPP fraud cases charged in South Florida and across the country—but the same can be said for addiction treatment fraud cases and many types of fraud.  That is no reason for severance of the PPP-related counts.

### C.  Judicial Economy Favors Joinder.

Finally, J. Markovich wrongly argues that it is more efficient to try the PPP-related charges separately.  Mot. at 3.  The Government anticipates that PPP-related evidence will be introduced through one or more witnesses who will testify concerning financial records.  Those witnesses will testify regardless of whether Counts 34-35 remain joined with the other charges, because they will also testify to other financial transactions at issue in the case.  The PPP-related charges will be proved through only a handful of exhibits, which, candidly, will be a drop in the bucket compared to the voluminous financial records about which these witnesses will already testify to prove up the other charges, particularly the money laundering charges.  Conversely, if Counts 34-35 are severed, the Government will have to prove the underlying fraud, kickbacks, and money laundering all over again in order to prove that J. Markovich falsely represented that Compass Detox and WAR were complying with the law.  To do so, the Government would simply present its case-in-chief a second time, including expert testimony, consultant testimony, cooperator testimony and other witness testimony.  This case need not be tried twice when it can be fairly tried as to J. Markovich (and all other defendants) once.

## CONCLUSION

For the foregoing reasons, J. Markovich's Motion should be denied.

Dated: March 23, 2021                    Respectfully submitted,

                                         ARIANA FAJARDO ORSHAN
                                         UNITED STATES ATTORNEY
                                         SOUTHERN DISTRICT OF FLORIDA

                                         DANIEL KAHN, ACTING CHIEF
                                         CRIMINAL DIVISION, FRAUD SECTION
                                         U.S. DEPARTMENT OF JUSTICE

                                 By:     */s/ James V. Hayes*
                                         JAMES V. HAYES (FL Bar #A5501717)
                                         Senior Litigation Counsel
                                         JAMIE DE BOER (FL Bar #A5502601)
                                         Trial Attorney
                                         United States Department of Justice,
                                         Criminal Division, Fraud Section
                                         1400 New York Avenue, N.W.
                                         Washington, D.C. 20005
                                         Telephone: (202) 774-4276
                                         James.Hayes@usdoj.gov
                                         Jamie.deBoer@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 23, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ James V. Hayes*

11