UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

JONATHAN MARKOVICH,

        Defendant.
_____/

**MOTION IN LIMINE TO PRECLUDE THE GOVERNMENT FROM
MENTIONING FORMER PATIENTS' DEATHS**

Defendant Jonathan Markovich, by and through undersigned counsel, hereby files this motion in *limine* to preclude the government from mentioning that certain former patients of Compass/WAR are now deceased.

As explained herein, this case is about healthcare fraud – not murder. Yet the government plans on calling former drug addiction patients to not only discuss their respective stays and first-hand experiences at Compass/WAR, but to also mention that they knew other former patients of Compass/WAR[1] and identify those they knew who have since died, likely from drug overdoses. The former (and now deceased) patients died *after* their treatment at Compass/WAR and under circumstances wholly unrelated to Compass/WAR. This is precisely the type of testimony and evidence that Federal Rules of Evidence 401, 402, and 403 were designed to preclude, as it is irrelevant to the factual allegations in this case and highly prejudicial and misleading to a jury. As

---

[1] To the extent that the government plans on having former patients – or parents – testify about their conversations with former deceased patients, the defense will move to exclude such testimony as hearsay without an exception for admission. Moreover, any text message, Facebook, or other social media conversations sent/received by or otherwise involving deceased former deceased patients should likewise be excluded from admission as hearsay without an exception for admission.

such, Defendant Jonathan Markovich moves to preclude the government from mentioning that these former patients are now deceased.

## BACKGROUND

### I.     The Indictment

On January 20, 2021, a federal grand jury returned a thirty-five (35) count Indictment charging eight (8) defendants, including Jonathan Markovich ("JM"), in a health care fraud scheme.  JM was the owner and a founder of Compass Detox ("Compass") and We Are Recovery ("WAR").  Compass Detox ("Compass") is a substance abuse treatment center located in Pembroke Pines, that provides detoxification ("detox") and residential treatment services for drug and alcohol addicts.  Like other substance abuse treatment centers in FL, it is licensed and monitored by the Department of Children and Families ("DCF").  It is a private facility and accepts insurance coverage for services rendered.  Compass became operational in April 2017, and has served hundreds of patients in its detox and residential treatment centers and programs since that time.

WAR is a sister entity of Compass', located in Hallandale.  WAR provides partial hospitalization, intensive outpatient, and outpatient services to addicts.  Community housing for PHP patients are located at Oasis, an apartment-like complex, located at 116 SE 5th Avenue in Hallandale Beach.  WAR was licensed by DCF in February 2019 and is still in operation.  Like Compass, WAR has served hundreds of clients since its inception.

At its core, the Indictment alleges that JM and his co-defendants conspired to commit health care fraud, by and through Compass, WAR, Laboratory Pros, and other entities affiliated with the defendants, by falsely billing the patients' insurance companies for detox and addiction treatment that were neither necessary nor provided, or neither accurately billed nor provided for.

Further, the government alleges that JM paid marketers and patient recruiters to incentivize patients (through gifts, money payments, and so forth) to come to Compass. After a patient was discharged, the government asserts that JM knew and encouraged marketers to drug patients so that the patients would relapse and return to Compass again for detox, with their insurance covering the treatment ("false admissions"). The government also asserts that patients at Compass and WAR were simply allowed to linger and not receive treatments (or therapy) while the facilities billed their insurance companies for alleged services provided. In addition, the government contends that the medical doctor at Compass, Drew Liebermann, concocted a "comfort drink" to give to patients, which would keep them "docile and compliant" and "high," and overprescribed other opioids.

## II.  Statistics on Addiction, Treatment Centers, and Relapse

There is no doubt it – the United States has a drug addiction problem.[2] The opioid crisis – along with synthetic fentanyl use – has only fueled the addiction dilemma. According to data compiled by the National Institute on Drug Abuse ("NIDA") and a National Survey on Drug Use and Health, almost 21 million Americans have at least one addiction, yet only 10% of them receive treatment. From 1999 to 2017, more than 700,000 Americans died from overdosing on a drug. In 2017 alone, 47,600 fatal overdoses occurred in America, which involved at least one opioid, and over 15,000 Americans died from a heroin overdose. More than 90% of people who have an addiction started to drink alcohol or use drugs before they were 18 years old. Indeed, Americans between the ages of 18 and 25 are most likely to use addictive drugs.

Florida has, by far, the most substance abuse treatment centers in the country. In fact, there is one center per every 1,600 residents in Florida. Contrast this to Texas, with one center per

---

[2] National Institute of Drug Abuse's website, located at: https://www.drugabuse.gov/drug-topics/trends-statistics/overdose-death-rates.

approximately 7,000 residents. Given the number of facilities – and the troubling addiction problem in the United States – it is no surprise that many people, from all walks of life, come to Florida for addiction treatment. As such, Compass and WAR found itself serving a national population.

With respect to treatment, according to the NIDA, there are generally four stages taken: (1) treatment initiation; (2) early abstinence; (3) maintaining abstinence; and (4) advanced recovery. The first two stages come, generally, during the first ninety (90) days (that is, detoxification and residential treatment). Thereafter, the third stage – maintaining abstinence – is when the patient is in outpatient treatment and seeking to stay sober. The last stage, recovery, is never finalized – it is considered a lifelong process. Once a patient is discharged from a substance abuse treatment facility, the goal of staying sober lies solely with them. Therapists sometimes maintain communication with them, but the facilities are not responsible for their daily choices or conduct.

During treatment stages, relapse can occur at any time – and far too often does. Approximately 80% of recovering addicts relapse at least once. NIDA warns that, while relapse is so common that is it is a normal part of addiction recovery, it can be very dangerous — even deadly. A major culprit is losing tolerance while having abstained from drug use. Further, the rise of fentanyl use has contributed to alarming death rates in the United States. For instance, overall, drug overdose deaths rose from 2018 to 2019 with 70,630 drug overdose deaths reported in 2019. Deaths involving other synthetic opioids other than methadone (primarily fentanyl) continued to rise with more than 36,359 overdose deaths reported in 2019. Those involving psychostimulants with abuse potential (primarily methamphetamine) also continued to increase during this time.

126517985.1

### III. Deceased Former Patients

The Indictment references several patients who received treatment at Compass and/or WAR, and are now deceased. It is unknown to the defense how these patients (such as the patients serving as the basis for Counts 7, 9, and 18) died. Given their young ages and potential for relapse, though, there is a likelihood they died of drug overdoses. To be clear, the defense only learned of these patients' deaths through hearsay and not through any government disclosures or official documentation. No publicly available information is available regarding these former patients' deaths. In addition, several patients referenced in the government's discovery and exhibit list, such as Patient T and Patient C.S., are deceased as well. With respect to these patients' deaths, after hearing about them, the defense located online, publicly available obituaries that state that they both died of drug overdoses. Again, the government has yet to make any such disclosure of which former patients of Compass/WAR, who either serve as basis for counts in the Indictment or are referenced in evidence they hope to admit in their case-in-chief, are deceased.

Undoubtedly, it is tragic that these addicts, who happen to be former patients of Compass/WAR, have overdosed and died, particularly at such young ages. However, given the statistics outlined above, which the government is surely aware of, death is not an anomaly in the addiction world. The reality is that, statistically, a certain percentage of patients treated at ANY addiction facility in the country will succumb to their disease. That is simply the harsh truth of the drug crisis in America today.

### IV. Government's Representations

Upon learning of certain former patients' deaths, and reviewing the government's discovery related to such patients – such as text messages, Facebook conversations, and insurance and medical records – counsel for JM reached out to the government to determine if they planned

on mentioning these patients at all at trial and, if so, mention that they are now deceased. Counsel for JM specifically stated that the death of these patients – all of which occurred after their treatment and discharge from Compass/WAR – had no bearing on the counts alleged in the Indictment and, thus, would be irrelevant and highly prejudicial.

On June 14, 2021, counsel for the government stated the following: "Yes, the Government anticipates that witnesses who knew and interacted with patients who are now deceased will mention certain deceased patients, the fact that they are deceased, and possibly how they died. The Government will oppose your motion." The government provided no specific details regarding the scope of the evidence they intend to introduce or how they intend to introduce it, despite the defense's request for such clarity. Rather, it appears that the government seeks to have blanket permission to admit any reference or mentioning of a former patients' death. That is contrary to the legal standards under the Federal Rules of Evidence and is, frankly, a far reach.

## ARGUMENTS

### I. Legal Standard

A party may use a motion in *limine* to exclude inadmissible or prejudicial evidence before it is offered at trial. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). This motion in *limine* is designed to bring to the attention of the Court the existence of certain highly prejudicial and inadmissible information that the mere mention of said evidence before the jury is so prejudicial as to render the trial fundamentally unfair. That is precisely the situation before this Court.

There are two federal rules of evidence that govern the admissibility of the evidence the government proffers it will admit: Rules 401 and 403. Under Rule 401, "[e]vidence may not be admitted at trial unless it is relevant." *See, e.g.*, *United States v. Vellejo*, 237 F.3d 1008, 1015 (9th Cir. 2001). Federal Rule of Evidence 401 provides the test for relevancy. It provides that evidence

is relevant if (1) "it has any tendency to make a fact more or less probable than it would be without the evidence" and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401. If the contested evidence does not meet this test, it is irrelevant and inadmissible. *See* Fed. R. Evid. 402. When evidence is minimally relevant, it is likely to be minimally probative as well. *United States v. Wiggan*, 700 F.3d 1204, 1213 (9th Cir. 2012).

However, even if the evidence is relevant, it may still be excluded under Rule 403, if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Eleventh Circuit has clear that excluding evidence under Rule 403 should not be done haphazardly, but sparingly and with restraint. *See Wilson v. Attaway*, 757 F.2d 1227, 1242 (11th Cir. 1985). Even though harmful evidence is "inherently prejudicial," it is only when the "unfair prejudice substantially outweigh[s its] probative value, which permits exclusion of [a] relevant matter under Rule 403." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979). In conducting the Rule 403 analysis, a court must consider the evidence "in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003). Moreover, the more essential the evidence to proof of the government's case, "the less likely that a trial court should order the evidence excluded." *United States v. Mills*, 704 F.2d 1553, 1560 (11th Cir. 1983). As the Eleventh Circuit has opined, "The major function of Rule 403 is 'limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" *McRae*, 593 F.2d at 707.

## II. The Death of Former Patients is Irrelevant to the Charges.

As stated at the outset, the charges in the Indictment stem from an alleged healthcare fraud scheme – and involve allegations of patient brokering, kickbacks, fraud, and money laundering. None of the accusations indicate that Compass/WAR's treatment of patients led to patient deaths – and, importantly, there are no facts or any basis to believe that is true. None of the former deceased patients the defense has identified – specifically Counts 7, 9, and 18, Patient T, and C.S. – died while in the care of Compass/WAR – or even close to a time when they were treated there. In fact, these patients went to numerous other facilities over the course of their addiction treatment and more recent to their time of death. SH, for example, was a patient, and marketer, at Serenity Ranch.

Like all other treatment facilities, once a patient leaves Compass/WAR, either against medical advice ("AMA") or by completing the program and being discharged, the facility is no longer responsible for their actions. Their choices and the conduct that may have led to their deaths are not due to actions of Compass/WAR. Certainly, the government has not – and cannot – argue differently. Indeed, most patients treated at Compass/WAR are still, as far as the defense is aware, alive. They may have relapsed; still be addicted to drugs/alcohol; or be fully sober. Either way, their experiences at Compass/WAR is only one dimension of their addiction and treatment journey.

Given the foregoing, it is perplexing that the government is seeking to admit evidence of former patients' deaths at trial. Such evidence has no bearing on the factual allegations and charges in this case, and cannot aid the jury in reaching their verdict on the said charges. The evidence is completely irrelevant to whether the Markoviches committed healthcare fraud, facilitated patient brokering, paid kickbacks, or laundered funds. The defense understands that the government plans to call former patients, and current and former employees of Compass and WAR, to testify about

their first-hand experiences at the facilities. Through such testimony, the jury will learn about the nature of addiction, the operation of drug treatment centers, and their observations at Compass/WAR. To mention former deceased patients, that they are now dead and how they "possibly" could have died, is simply attenuated from any of the pending issues at hand. There is simply no causal link whatsoever to any purported purpose for admitting this evidence and the elements of the offenses that the government must establish in its case-in-chief.

### III.   Mentioning the Death of Former Patients is Highly Prejudicial and will Mislead the Jury.

Even if mentioning that former patients of Compass/WAR are deceased was somehow relevant to this case, such testimony and evidence is unfairly prejudicial and misleading to the jury. The only reason that the government can want such information brought forth in this trial is to enrage the jury and to mislead them to believe that, somehow, these patients are dead because of Compass/WAR. The jury in this case will already hear a great deal about addiction and drug treatment – and it is incredibly inappropriate for the government to further incense the jury's emotions to sway their verdict.

Recently, a sister court dealt with a similar evidentiary issue. In *United States v. Lacey*, *et al.*, Case No. 18-00422-001-PHX-SMB, defendants Michael Lacey, James Larkin, and several other former executives of Backpage.com are charged in a 100-count indictment with facilitating prostitution under the Travel Act and with money laundering. *See* 2021 WL 1841693 (D. Az. May 7, 2021). Lacey and Larkin were the two executives who oversaw a chain of alternative weeklies for Backpage.com, including the Village Voice of New York. The government contends that the executives used Backpage.com to facilitate and profit off prostitution, and knew that the main source of revenue for the website was illegal sexual acts.

9

In an order filed a little over two months ago, the court denied the government's motion to introduce evidence that many women, in different cities across the United States, were murdered by "johns," "pimps," or others who had solicited or prostituted women on Backpage.com. The government argued that, in light of the defendants' anticipated defense that they did not know that Backpage.com's adult section was used almost exclusively for prostitution, evidence of the murders by third parties should be admitted to show that defendants had knowledge of the true nature of their website.

The court held that such evidence was highly inflammatory and prejudicial. "If evidence of the details of the murders were introduced, it is likely to inflame the passions of the jurors against the Defendants or create confusion that Defendants are responsible for the murders. Where the probative value of evidence is low and the potential prejudicial effect of evidence is high, courts should typically exclude evidence. Further, as Defendants correctly point out, the Government has failed to explain how or through whom it seeks to introduce the evidence or the intended scope of the evidence it seeks admitted." *Lacey*, 2021 WL 1841693, at *2-3.

The defense submits that the evidence the government proffers it will admit – that former drug addiction treatment patients of Compass/WAR are now deceased due to overdoses – is similar to that of blanket murders in the *Lacey* trial. Such evidence is irrelevant to the elements of the offenses, and even if there were slight probative value, such value is far outweighed by the prejudicial impact. The jury will think that Compass/WAR somehow played a role in these individuals deaths – and they did not. Other courts have also excluded similar, emotionally charged evidence from admission at trial. *See, e.g., Goodwin v. Crawford County, GA*, 454 F.Supp.3d 1301, 1306 (M.D. Georgia, 2020) (in a federal civil rights suit, aspects of videos of a plaintiff being ordered by law enforcement to severe his dog's head were deemed "graphic,

10

126517985.1

emotionally charged, and highly prejudicial" because of their power to mislead the jury into potentially awarding damages to the plaintiff); *Doe v. NCL (Bahamas) LTD.*, 2012 WL 12844743, at *1 (S.D. Fla. 2012) (The probative value of referencing the plaintiff's thoughts of suicide or suicide attempts is "far exceeded by the danger of unfair prejudice, confusion of the issues, and may mislead the jury."); *U.S. v. Curley*, 639 F.3d 5085 (2d Cir. 2011) ("The traffic stop evidence was certain to arouse the jury's emotions against Curley because it was significantly more sensational and disturbing than the charged crimes.").

## CONCLUSION

For the reasons stated herein, Defendant Jonathan Markovich respectfully requests that this Court preclude the government from mentioning that any former patient of Compass and/or WAR is now deceased. Such evidence is irrelevant under Federal Rule of Evidence 401, and inadmissible as highly prejudicial and misleading to the jury under Federal Rule of Evidence 403.

## RULE 88.9 CERTIFICATION

Counsel for Mr. Markovich hereby certifies that we have conferred with counsel for the government in a good faith effort to resolve the issues raised in the motion. Counsel for the government opposes this motion.

                                                                Respectfully submitted,

Dated: July 16, 2021                    *s/ Michael S. Pasano*
                                                      Michael S. Pasano (FBN 475947)
                                                      E-mail: mpasano@carltonfields.com
                                                      Vanessa Singh Johannes (FBN 1028744)
                                                      E-mail: vjohannes@carltonfields.com
                                                      CARLTON FIELDS
                                                      700 N.W. 1st Avenue, Suite 1200
                                                      Miami, Florida 33136-4118
                                                      Telephone: (305) 539-7358
                                                      *Counsel for Defendant Jonathan Markovich*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 16, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*s/ Michael S. Pasano*
Michael S. Pasano

126517985.1