**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-CR-60020-DIMITROULEAS/SNOW**

**UNITED STATES OF AMERICA**

**v.**

**JONATHAN MARKOVICH,** *et. al.,*

 **Defendant.**

_____/

**DEFENDANT JONATHAN MARKOVICH'S**
**AMENDED TRIAL MEMORANDUM**

Defendant Jonathan Markovich ("Mr. Markovich"), by and through undersigned counsel, respectfully submits this Amended Trial Memorandum to bring to the Court's attention issues particular to this case, in advance of the September 7, 2021 trial date.[1] This Amended Trial Memorandum supersedes (and rescinds) Mr. Markovich's filing at D.E. 268.

**I.     INTRODUCTION**

The Indictment in this case charges Mr. Markovich with a variety of conspiracy and substantive offenses, stemming from an alleged healthcare fraud scheme. Because the charges are far ranging in their legal theories and proffered proofs, Mr. Markovich anticipates numerous objections at trial to the Government's evidence. The instant memorandum seeks to identify some of the issues likely to arise during the trial, to streamline the anticipated arguments before the Court.

_____

[1] Rosh Hashanah, the Jewish New Year, is observed from sundown on Monday, September 6, 2021 through sundown on Wednesday, September 8, 2021. Mr. Markovich observes Rosh Hashanah. Thus, the defense will be requesting that the trial in this cause commence on Thursday, September 9, 2021. Similarly, the defense will request that trial pause during the Yom Kippur holiday, on September 15 – 16, 2021.

## I.    CONSPIRACY ISSUES

To prove a conspiracy to commit healthcare fraud, the Government must prove that the defendant knowingly and voluntarily agreed to participate in such a scheme and that his actions at Compass and WAR were reasonably foreseeable to further the alleged fraud.  United States v. Ross, 131 F.3d 970, 984 (11th Cir. 1997).  Based in part on issues raised below, the Government will be unable to meet its burden and prove that Mr. Markovich knowingly and voluntarily agreed to participate in any such scheme.

### 1.    Agreement to commit an unlawful act.

The sine qua non of a conspiracy is the agreement between the conspirators, "and it is therefore essential to determine what kind of agreement or understanding existed as to each defendant."  United States v. Glenn, 828 F.2d 855, 857 (1st Cir. 1987) (quoting United States v. Borelli, 336 F.2d 376, 384 (2d Cir. 1964)).  There must be an agreement by the parties, not merely getting together to consummate the transaction.  United States v. Delutis, 722 F.2d 902, 906 (1st Cir. 1983).  Although a conspiratorial agreement need not be express, its existence must "plausibly be inferred from the defendants' words and actions and the interdependence of activities of persons involved."  United States v. Boylan, 898 F.2d 230, 241-42 (1st Cir. 1990).

While a conspiratorial agreement may be proven by circumstantial as well as express evidence, see e.g.  United States v. James, 528 F.2d 999, 1011 (5th Cir. 1976) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)), the Supreme Court has made it clear that charges of conspiracy cannot be sustained by an exclusive and repeated reliance upon inferences.  The Court said:

> Without the knowledge, the intent cannot exist.  Furthermore, to establish the intent the evidence of knowledge must be clear, not equivocal…because charges of conspiracy are not to be made out by piling inference upon inference, this fashioning… a dragnet to draw in all substantive crimes.

Direct Sales Co. v. United States, 319 U.S. 703, 711 (1943) (citing United States v. Falcone, 311 U.S. 205 (1940)).   It is well-settled that the requisite fact of intentional agreement or participation in a conspiracy cannot be made out by "suspicion and innuendo," United States v. Palacios, 556 F.2d 1359, 1365 (5th Cir. 1977).

### 2. Knowing and voluntary participation in illegal scheme.

To obtain a conviction for conspiracy the Government must establish, beyond a reasonable doubt, that the defendants, inter alia, voluntarily participated in the scheme to commit an illegal act.   United States v. Chandler, 376 F.3d 1303, 1315 (11th Cir. 2004).   In order to prove voluntary participation, the Government must prove that the defendant possessed both an intent to agree and an intent to effectuate the commission of the substantive offense.   Piper, 35 F.3d at 615.

One does not become a criminal just by not interfering with the crimes of others, even if one knows about them; there is no duty to expose or thwart crime.   See United States v. Leonard, 138 F.3d 906 (11th Cir. 1998).   Nor is mere presence at the scene or close association with those involved sufficient to sustain a conviction for conspiracy.   United States v. Hernandez, 141 F.3d 1042, 1053-5 (11th Cir. 1998); United States v. Thomas, 8 F.3d 1552, 1556-9 (11th Cir. 1993); United States v. Vera, 701 F.2d 1349, 1357 (11th Cir. 1983) citing United States v. Davis, 666 F.2d 195, 201 (5th Cir. 1982).

Mr. Markovich submits that in this case there will be no proof of any agreement to violate the law.   Nor will there be proof of any knowing participation in criminal acts.

## II.   WIRE FRAUD ISSUES

In order to prove wire fraud under 18 U.S.C. § 1349, the Government must prove intentional participation in a scheme to defraud and use of wires in furtherance of the scheme.

United States v. Ellington, 348 F.3d 984, 990 (11th Cir. 2003); United States v. Waymen, 55 F.3d 564, 568 (11th Cir. 1995); Seaman v. Arvida Realty Sales, Inc., 910 F.Supp. 581 (M.D. Fla. 1995).  The latter element is satisfied if the scheme's completion was dependent in some way upon information and documents passed through the wires.  United States v. Downs, 870 F.2d 613, 615 (11th Cir. 1989); see also United States v. Haimowitz, 725 F.2d 1561 (11th Cir. 1984); United States v. Hartley, 678 F.2d 961 (11th Cir. 1982).  Further, to establish participation, the evidence must show that the defendant had specific intent to engage in the scheme to defraud. Downs, 870 F.2d at 615.  See also Pelletier v. Zweifel, 921 F.2d 1465, 1496 (11th Cir. 1991). Materiality is an essential element of wire fraud.  Neder v. United States, 527 U.S. 1 (1999).

The elements of wire fraud are (1) knowing participation in the scheme; (2) false or fraudulent pretenses, representations, or promises relating to a material fact; (3) actions that are willful and with intent to defraud; and (4) use of wires.  See Langford v. Rite Aid of Ala. Inc., 231 F.3d 1308, 1312 (11th Cir. 2000). The Eleventh Circuit has criticized an overbroad application of the mail and wire fraud statutes.  See e.g. United States v. Brown, 79 F.3d 1550, 1556 (11th Cir. 1996).  In this case, Mr. Markovich submits the Governments' proofs of conspiracy to commit wire fraud will be insufficient.

### III.     AIDING AND ABETTING

Section 2 of Title 18 of the United States Code provides as follows:

> (a)  Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2 (1999).

In order to find a defendant guilty of aiding and abetting, the Government must prove that "a substantive offense was committed, that the defendant associated [her]self with the criminal venture, and that [s]he committed some act which furthered the crime." United States v. Hamblin, 911 F.2d 551, 557 (11th Cir. 1990) (citing United States v. Pareja, 876 F.2d 1567, 1570 (11th Cir. 1989)); see also United States v. Gonzalez, 183 F.3d 1315, 1325 (11th Cir. 1999); United States v. Broadwell, 870 F.2d 594, 608 (11th Cir. 1989), cert. denied, 493 U.S. 840 (1990); United States v. Bryant, 671 F.2d 450, 454 (11th Cir. 1982). Moreover, while the Government need not prove that the defendant was present at the scene when the underlying crime occurred or that she was an active participant, the Government "must show that the defendant shared the same unlawful intent as the actual perpetrator." Hamblin, 911 F.2d at 558 (citation omitted).

### 1.     Specific Intent Requirement

"[T]he aider and abettor must share the principal's purpose" in order to be liable under 18 U.S.C. § 2. United States v. Fountain, 768 F.2d 790, 798 (7th Cir.), cert. denied, 475 U.S. 1124 (1986). The contours of this element in the definition of aiding and abetting are not without ambiguity, although as a general matter mere knowledge of the criminal activity does not in itself satisfy this element. Many courts state the purpose element in terms of a "specific intent that [the aider and abettor's] act or omission bring about the underlying crime," United States v. Zambrano, 776 F.2d 1091, 1097 (2d Cir. 1985), and the Supreme Court's restatement of the aiding and abetting statute's reach supports -- if it does not specifically endorse -- this view. See Central Bank of Denver v. First Interstate Bank, 114 S. Ct. 1439, 1450 (1994) (Section 2(a) [of Title 18 U.S.C.] "decrees that those who provide

knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime.") (citing <u>Nye & Nissen</u>, 336 U.S. 613, 619 (1949)).

However, "[a] general suspicion [on the part of the defendant] that an unlawful act may occur is not enough" to demonstrate that the defendant shared the criminal intent of the principal. <u>United States v. Labat</u>, 905 F.2d 18, 23 (2d Cir. 1990); <u>see also</u> <u>United States v. Jones</u>, 913 F.2d 1552, 1558 (11th Cir. 1990).  Furthermore, a person must know about unlawful activity in order to be guilty of aiding and abetting it:  "a person cannot very well aid a venture he does not know about."  <u>United States v. Allen</u>, 10 F.3d 405, 415 (7th Cir. 1993); <u>see also</u> <u>United States v. Loder</u>, 23 F.3d 586, 591 (1st Cir. 1994) (reversing conviction for insurance fraud via U.S. mails where Government merely showed that defendant dismantled automobiles for principal and it was unclear to defendant for what surreptitious purpose the automobiles were destroyed); <u>United States v. Francomano</u>, 554 F.2d 483, 487 (1st Cir. 1977) (reversing conviction where there was no evidence of guilty knowledge – mere fact that defendants working on vessel in a small tight-knit group with captain did not permit assumption that crew knew of captain's transportation of small amounts of drugs; even if defendants may have unwittingly assisted in transportation by serving as members of ship's crew, they had no control over operation of the ship or the contents of its cargo).  Nor does one have a general obligation to attempt to determine whether another has an as-yet unrevealed intention to break the law.  <u>See</u> <u>United States v. Giovannetti</u>, 919 F.2d 1223 (7th Cir. 1990). Aider and abettor liability is not negligence liability. <u>Id.</u> at 1228.

### 2.  Acts of Assistance

This element of the crime of aiding and abetting "comprehends all assistance rendered

by words, acts, encouragement, support, or presence." <u>Reyes v. Ernest & Young,</u> 113 S.

Ct. 1163, 1170 (1993) (quoting BLACK'S LAW DICTIONARY 68 (6th ed. 1990)). These actions,

however, must be <u>knowingly</u> related to an intent to further the crime. <u>See</u> <u>e.g.,</u> <u>Loder,</u> 23

F.3d at 591; <u>Bailey v.  United States,</u> 416 F.2d 1110 (D.C. Cir. 1969).

### 3.      Pertinent Cases

In <u>United States v. Franklin</u>, 608 F.2d 1241 (6th Cir. 1979), the Court of Appeals

confronted circumstances similar to the case at hand. Franklin, a businessman, was

convicted of aiding and abetting a misapplication of bank funds and of conspiracy in

connection with a loan he helped arrange at Northern Ohio Bank ("NOB"). Franklin

advised the lenders on how to put together financial statements and introduced the lenders

to NOB's president Palmer, who was his personal friend. Franklin also discussed a present of

tickets to Las Vegas which the lenders proposed to give Palmer out of gratitude for the loan. It

turned out that Palmer granted the loan despite the lenders having exceeded the legal lending

limits at the bank. Also, Palmer misrepresented to the bank the existence of security

agreements, which were later backdated, and kept some of the loan paperwork in a desk to

conceal the loan from bank examiners.

The Sixth Circuit started with the proposition that an 18-656 violation had occurred and

that Franklin's actions furthered the violation. <u>See</u> <u>id.</u> at 245. The Court found nothing in

the record, however, to suggest that Franklin had any actual knowledge of the procedures

Palmer implemented to secure the loan. Despite Franklin's association with the parties and

involvement in and around the events in issue, the Court concluded the facts did not permit

an inference that Franklin was aware of Palmer's intent to defraud the bank. <u>Id.</u> In

reversing Franklin's convictions for both misapplication and conspiracy, the Court stated:

We view appellant's involvement in those aspects of the loan transaction where Palmer's intent to injure or defraud the bank was manifested to be so tangential as not to be sufficient for the jury to infer that appellant, although associated in some way with Palmer, also was aware of Palmer's criminal intent and conduct.

608 F.2d at 246.

In United States v. Gonzalez, the Eleventh Circuit found that the evidence did not support defendant's conviction for using or carrying a firearm in relation to a drug trafficking crime absent any evidence linking defendant to planning or participating in the crime. See 183 F.3d at 1325; see also Hamblin, 911 F.2d at 557 (holding that because the evidence did not support a finding that Hamblin had the same criminal intent as his co-defendant, the evidence presented by the Government was insufficient to sustain his robbery conviction).

In United States v. Leonard, 138 F.3d 906 (11th Cir. 1998), the Court of Appeals reversed defendant's conviction for possession of cocaine and firearms because the record did not support the Government's contention that he had aided or abetted the other two defendants. Id. at 909. While Leonard was a passenger in the back seat of a car and knew that drugs and a firearm were present, the court found that there was no evidence to indicate that Leonard ever had ownership, dominion or control over the cocaine, the gun, or the vehicle in which they were concealed. Because the Government had failed to provide sufficient evidence that the defendant committed any overt act to aid in a criminal venture, the court reversed Leonard's conviction. Id.

In Loder, 23 F.3d 586 (1st Cir. 1994), the court reversed the defendant's conviction for aiding and abetting the use of United States mails in furtherance of a scheme to commit insurance fraud. The First Circuit found convincing the fact that the Government had merely demonstrated that Loder had dismantled automobiles for his employer. While it was

plausible that Loder was aware that some underhanded scheme was afoot given that his employer asked him to dismantle relatively new automobiles, there was no reason for him to believe that his employer was engaged in insurance fraud any more than he could be credited with knowledge that the automobiles were stolen. Accordingly, the court held that the Government failed to prove that Loder consciously shared his employer's knowledge of the underlying criminal act, and thus he could not be convicted of aiding and abetting mail fraud.

Likewise in <u>Francomano</u>, 554 F.2d 483 (1st Cir. 1977), the court reversed a conviction for aiding and abetting the transportation of drugs, where the Government's case against Francomano and his co-defendants was based upon circumstantial evidence consisting of the fact that the crew was working on the sea vessel in a small tight-knit group with the captain who was transporting the drugs. The First Circuit held that the jury's assumption that the crew knew of the captain's transportation of small amounts of drugs was unwarranted. The fact that the defendants may have unwittingly assisted in transportation by serving as members of the ship's crew did not suffice to satisfy the Government's burden particularly because the defendants had no control over operation of the ship or the contents of its cargo.

As the above cases illustrate, in order to convict Mr. Markovich of aiding and abetting any alleged co-conspirator or co-defendant in his or her illegal activities, the Government will be required at trial to provide evidence of specific and significant acts by Mr. Markovich evidencing his knowledge of and intent to participate in the fraudulent scheme. This, we submit, the Government will be unable to do.

IV.     HEARSAY ISSUES

There are numerous potential hearsay issues in this case, some of which have already been identified in prior filings (*see, e.g*., D.E. 240).  However, for efficiency sake, key issues that are likely to arise during trial are highlighted below.

1.      Co-Conspirator Statements

The Government may try to introduce statements as co-conspirator statements.  However, the only way an out-of-court statement by a co-conspirator is admissible under Fed. R. Evid. 801(d)(2)(E) is if the trial judge determines that the Government has proven by a preponderance of the evidence that (1) a conspiracy existed, (2) the defendant and the declarant participated in the conspiracy, and (3) the statement was made during the course of and in furtherance of the conspiracy.  See United States v. Garcia, 13 F.3d 1464 (11th Cir. 1994) (finding that statement made by co-conspirator prior to the formation of a conspiracy was hearsay); see also United States v. Magluta, 418 F.3d 1166, 1177-78 (11th Cir. 2005).

The Government has identified Christopher GARNTO, Mario KUSTURA, Elan BAHKSHI, and others as "co-conspirators" and, clearly, based on their discovery to the defense, will seek to admit social media posts, text message/social media communications, and other conversations between these persons and others (some unidentified) into evidence at trial, under Rule 801(d)(2)(E).  However, much of what the Government has produced does not involve with or deal with Compass.  Indeed, GARNTO, KUSTURA, and BAHKSHI all were working as "marketers" and so-called "patient brokers" for other addiction treatment facilities.  This is based on their own admissions, as well as the evidence reviewed.  Communications between these alleged co-conspirators and other persons (again, some unidentified) that involve other facilities should not be admitted into evidence under Rule 801, as they are not statements made in

furtherance of the conspiracy at hand.  The Government's efforts to do so are simply an effort on their part to expand the rule beyond its parameters.

To be clear, despite the Government's attempts to expand the co-conspirator exception to the rule, the co-conspirator exception is very limited.  See Grunewald v. United States, 353 U.S. 391, 400 (1957).  In fact, the "pendency" and "furtherance" requirements were meant to limit the admissible class of co-conspirator statements.   Id. For example, statements which simply implicate one co-conspirator, in an attempt to shift the blame from another, cannot be characterized as furthering the conspiracy. United States v. Blakely, 960 F.2d 996, 998 (11th Cir. 1992).  "On the contrary, statements that implicate a coconspirator, like statements that 'spill the beans' concerning the conspiracy, are not admissible under Rule 801(d)(2)(E)." Id.

As the Supreme Court resoundingly reaffirmed in Crawford v. Washington, 124 S. Ct. 1354, 1374 (2004):

> Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.

In Crawford, the Supreme Court reversed a conviction where the trial court admitted hearsay evidence substantiated by sufficient indicia of reliability, noting that "[i]t is not enough to point out that most of the usual safeguards of the adversary process attend the statement, when the single safeguard missing is the one the Confrontation Clause demands."  Id. at 1372.  See also United States v. Arbolaez, 450 F.3d 1283 (11th Cir. 2006) (finding admission of agent's testimony about statements from an alleged co-conspirator error).

### 2. Business Records

The Government is also likely going to seek to introduce documents as business records even though they do not qualify as such under Fed. R. Evid. 803(6).  The hearsay exception for regularly kept records is justified on grounds of trustworthiness and necessity.  Specifically, Rule 803(6) provides that a business record falls within the hearsay exception if: (1) the entries are original entries made in the routine of a business, (2) the entries have been made upon the personal knowledge of the recorder or of someone reporting the information, (3) the entries have been made at or near the time of the transaction recorded, and (4) the recorder and the informant are unavailable.

The business records exception does not embrace statements contained within a business record that were made by one who is not a part of the business if the embraced statements are offered for their truth.  Johnson v. Lutz, 253 N.Y. 124 (N.Y. 1930).  Hearsay contained within a business record is excluded unless some other hearsay exception applies to the "outsider's" statements.  Id.

The court in Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453 (11th Cir. 1997) discussed the issue of double hearsay.  In Zaben, an employee sued his former employer for discrimination in violation of the Age Discrimination in Employment Act.  Id. at 1454.  The plaintiff wanted to testify as to statements made to him by two lower level supervisors at the plant.  Id. at 1455-56.  The plaintiff claimed the statements were admissions by a party opponent and admissible pursuant to 801(d)(2)(D).  Id.  The district court found that this testimony presented a classic double hearsay problem.  Id. at 1457.  Under the federal rules, hearsay within hearsay is only admissible if each part of the combined statements conforms with an exception to the hearsay rule.  Id.; see also United States v. Pendas-Martinez, 845 F.2d 938 (11th Cir. 1988).

The Eleventh Circuit agreed with the district court and concluded that such testimony was inadmissible hearsay.

### 3.       Truth of the Matter Asserted

Additionally, the Government may seek to introduce statements that are hearsay on their face by alleging the statements are not being offered for the truth of the matter asserted.  Fed. Rule of Evid. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Testimony not offered for the truth of the matter asserted is not considered hearsay.  However, this type of testimony must be vigilantly monitored by the trial court to prevent abuse.  United States v. Evans, 950 F.2d 187, 191 (5th Cir. 1991).  It is clear that the use of out-of-court statements to show something other than the "truth of the matter asserted" is an area of widespread abuse.  United States v. Sallins, 993 F.2d 344, 346 (3d Cir. 1993). "If the hearsay rule is to have any force, courts cannot accept without scrutiny an offering party's representation that an out-of-court statement is being introduced for a material non-hearsay purpose.  Rather, courts have a responsibility to assess independently whether the ostensible non-hearsay purpose is valid." Id.

### V.       SCOPE OF DEFENSE CASE

The Government may seek to limit defense cross-examination and limit the presentation of the defense case, based on the parties' communications on relevant matters.  In essence, from the defense perspective, the Government may ask that this Court to improperly limit the defense case.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution

guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Holmes v. South Carolina, 547 U.S. 319, 126 S. Ct. 1727 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142 (1986) (citations omitted))  It is well-established that a right to present a defense free from categorical exclusions of competent, reliable, and unprivileged evidence of actual innocence is fundamental.  Washington v. Texas, 388 U.S. 14, 87 S. Ct. 1920 (1967).  Defenses in criminal cases must not be unfairly limited or curtailed because the most important right of a defendant is the opportunity to present a defense.  See id.

The Supreme Court's ruling in Holmes v. South Carolina, is particularly apposite.  In Holmes, the defendant was convicted of murder and related crimes, and sentenced to death.  547 U.S. at 322, 126 S. Ct. 1727.   The defendant appealed his conviction arguing that his constitutional rights were violated by the exclusion of evidence of third-party guilt.  Id.  The Supreme Court noted that "state and federal rule makers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."  Id. at 324 (quoting United States v. Scheffer, 523 U.S. 303, 308, 118 S. Ct. 1261 (1998)).  The Supreme Court also cautioned that "[t]his latitude, however, has limits."  Id.  The Supreme Court found that by only evaluating the strength of the prosecution's evidence, no logical conclusion could be reached regarding the strength of contrary evidence offered by the defense to rebut or cast doubt.  Id. at 331.  As a result, the Supreme Court vacated the judgment and remanded the case.

Johnson v. Moore, 472 F. Supp. 2d 1344 (M.D. Fla. 2007) is also instructive.  In that case, Johnson was convicted for burglary with an assault and for sexual battery with the threat of force.  His sole defense to the sexual battery count was consent.  Id. at 1355.  Specifically, Johnson's defense was that the complainant was a prostitute and that the sexual encounter was procured by the promise of payment in the form of crack cocaine, and was consensual.  Id.

During the prosecution's case, there was testimony of the complainant's abhorrence of drugs and her claimed sole episode of sexual intercourse.  Id.  Despite this testimony, pursuant to the Florida Rape Shield Law, the trial court precluded the defense from introducing testimony that the complainant had engaged in prostitution and procured drugs before the incident with Johnson.  Id.  The court was troubled by the trial court's actions and held that the trial was "deeply flawed, pointedly imbalanced, and fundamentally unfair, owing principally to denial of Johnson's well-established constitutional right to present a defense and establish his innocence." Id. at 1366.  As such, the court granted the writ of habeas corpus.  Id. at 1367;  see also Crane, 476 U.S. 683, 106 S. Ct. 2142 (holding that a defendant's right to present a defense and offer exculpatory evidence yields only to a state's valid interest in excluding unreliable, irrelevant, and privileged evidence).

United States v. Impastato, No. 05-325, 2007 WL 2463310, (E.D. La. 2007), a different kind of kickbacks case, is also instructive.  In Impastato, the Government sought to exclude evidence of specific instances of defendant's law-abidingness or alleged "good deeds." Specifically, the Government opposed the introduction of evidence that "attempted to persuade the jury that [defendant] was a hard working-public servant who bestowed a host of value-added benefits upon St. Tammany Parish." Id. at *7.  The Court denied the Government's motion.  The Court reasoned that it "had not had the opportunity to evaluate evidence of 'good deeds' or prior acts that may putatively fall within the ambit of what the Government seeks to exclude."  Id. The Court further stated that "good deeds" may be relevant in another context. Id.

## VI.    SUMMARIES AND SUMMARY WITNESS ISSUES

Pursuant to Federal Rule of Evidence 1006, "the contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation…."  Fed. R. Evid. 1006.   The purpose of this rule is clearly to allow the introduction of evidence otherwise admissible minus the "item-by-item in court identification" that is normally required.  White Industries, Inc. v. Cessna Aircraft Co., 611 F. Supp. 1049 (W.D. Mo. 1985).

Before the Court admits such charts, schedules, or calculations, however, it must ensure that the summaries are based upon independently established evidence in the record, and that possible prejudice or confusion does not outweigh their usefulness in clarifying the evidence.  United States v. Sawyer, 85 F.3d 713, 740 (1st Cir. 1996).  When a court admits such summaries:

> [c]are must be taken to insure that summaries accurately reflect the contents of the underlying documents and do not function as pedagogical devices that unfairly emphasize part of the proponent's proof or create the impression that disputed facts have been conclusively established or that inferences have been directly proved.

United States v. Drougas, 748 F.2d 8, 25 (1st Cir. 1984) (citations omitted).

Likewise, care must be taken that the witness who introduces those summaries – the "summary witness" – is not used in a manner to improperly bolster or emphasize proof or inferences.  See e.g. United States v. Johnson, 54 F.3d 1150, 1162 (4th Cir. 1995); United States v. Baker, 10 F.3d 1374, 1412 (9th Cir. 1993).

## VII.   THE GOVERNMENT PROSECUTION UNFAIRLY SEEKS TO MAKE CIVIL AND REGULATORY ISSUES CRIMINAL

It is well established that inaccurate business forecasts and poor business conduct do not automatically rise to the level of criminally fraudulent behavior.  United States v. Fernandez-Morris, 99 F. Supp. 2d 1358, 1369-70 (S.D. Fla. 1999).  See generally United States v. Brown,

79 F.3d at 1562; United States v. Shah, 44 F.3d 285, 293 n. 14 (5th Cir. 1995) (no inference of fraudulent intent not to perform from mere fact that a promise made is not subsequently performed); United States v. D'Amato, 39 F.3d 1249, 1261 n.8 (2d Cir. 1994); see also United States v. Handakas, 286 F.3d 92, 107 (2d Cir. 2002) (calling the effort to prosecute violation of a contractual obligation an incorrect and "breathtaking expansion of mail fraud"); United States v. Kreimer, 609 F.2d 126, 128 (5th Cir. 1980) (Fraud statutes do not come into play in every breach of contract action or where business expectations are not fulfilled).

United States v. Hodge, 150 F.3d 1148 (9th Cir. 1998) is instructive. Hodge, an atomic physicist, was convicted for wire fraud and false statements in connection with certifications for payment he submitted to the National Science Foundation ("NSF") as an NSF grantee. Hodge was trying to develop a type of soft x-ray laser. Although Hodge personally received in excess of $250,000, the project was never completed. The Ninth Circuit was troubled by the Government's theory of prosecution and reversed Hodge's convictions, holding:

> That Hodge sadly failed to carry out the research he proposed is evident. That Hodge had a moral obligation not to take the grant money and a moral obligation to return what he took does not need demonstration. That the Government could have sued Hodge civilly for unjust enrichment is undisputable. That Hodge presented a case where the Government could show how tough the Government can be with a nonperforming grantee is clear. What is not evident is Hodge's crime or crimes.

Id. at 1151. See also United States v. Gatewood, 173 F.3d 983, 987-8 (6th Cir. 1999) (ambiguously worded certifications simply not a crime); United States v. Sun-Diamond Growers of California, 138 F.3d 961, 973 (D.C. Cir. 1998) ("'not every breach of fiduciary duty works a criminal fraud'") (internal citations omitted); United States v. Butler, 822 F.2d 1191, 1197 (D.C. Cir. 1987) (cautioning against finding fraud by ex post evaluation of what originally might have been passable business judgment). See also Soper v. Simmons Int'l Ltd., 632 F. Supp. 244, 249

(S.D.N.Y. 1986) (Civil RICO action related to a failed joint venture, where the court noted that "mere failure of promised performance has never permitted a factual finding that defendants never intended to perform.").

Steiger v. United States, 373 F.2d 133 (10th Cir. 1967), is also instructive.  There, the court found that the defendants were entitled to a "good faith" instruction that sincere belief in the enterprise in question was a defense: "[t]he fact that the scheme, viewed in retrospect, would be regarded as impractical and visionary by reasonable persons or ordinary judgment and prudence does not defeat . . . good faith, if the defendant . . . actually believed that the plan was practical and would succeed."  Id. at 136; see also Butler, 822 F.2d at 1197; FDIC v. St. Paul Fire & Marine Ins. Co., 942 F.2d 1032, 1036 (6th Cir. 1991).

It is evident that the Government will make extensive reference to alleged violations of civil regulations and standards in the healthcare fields as part of its efforts to convict Mr. Markovich.  But references to civil regulations are improper if their purpose or effect is to suggest to the jury that it could find a defendant guilty by reason of his violation of the regulation.  See United States v. Wolf, 820 F.2d 1499, 1505 (9th Cir. 1987); United States v. Stefan, 784 F.2d 1093, 1098 (11th Cir. 1986); United States v. Christo, 614 F.2d 486 (5th Cir. 1980).  In Wolf, a defendant's convictions based on misapplication of funds and false statements were vacated, where the Government presented proof that the defendant had violated a banking regulation and the court found that the Government improperly used the regulatory violation as proof of intent, "creat[ing] a serious risk" that the jury would find defendant guilty because he had failed to comply.  Id. at 1505.  In Christo, the court reversed and remanded a case where the defendant's convictions were based at least in part on his violation of a civil banking regulation. The appellate court stated:

> A conviction, resulting from the Government's attempt to bootstrap a series of checking account overdrafts, a civil regulatory violation, into an equal amount of misapplication felonies, cannot be allowed to stand.

Id. (footnote omitted).

The Court should find such civil regulatory violation evidence inadmissible in this case. Holding otherwise invites error, which cannot be remedied by a curative instruction and would in fact compound the error. See Wolf, 820 F.2d at 1505 (Instructions describing violations as "background evidence," could not repair the damage caused by the Government's presentation.); Christo, 615 F.2d at 492 (Instructions "compound[ed] the error by improperly focusing the jury's attention" on regulatory violations.).

## VIII.   DELIBERATE IGNORANCE

### A.   Legal Standard

Under Eleventh Circuit case law, the knowledge element of a criminal statute can be proven by demonstrating either actual knowledge or deliberate ignorance. See United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000). Claims of deliberate ignorance are "premised on the belief that acts conducted under the guise of deliberate ignorance and acts committed with positive knowledge are equally culpable. To act knowingly, therefore, is not necessarily to act only with positive knowledge, but also to act with an awareness of the highest probability of the existence of the fact in question." United States v. Rivera, 944 F.2d 1563, 1570 (11th Cir. 1991) (internal quotation marks and citation omitted).

Despite this principle, the Eleventh Circuit has directed the district courts to avoid overly broad claims of willful blindness and "overly liberal use" of deliberate ignorance instructions because of the danger that, if used inappropriately, juries will convict a defendant "on a basis akin to a standard of negligence: that the defendant should have known that the conduct was

illegal." <u>Rivera</u>, 944 F.2d at 1570 (citation omitted) (emphasis added). Another reason to guard against the overzealous use of such instructions is that deliberate ignorance is easier to prove than actual knowledge, and "prosecutors should not be granted such a windfall advantage when the giving of such an instruction is not appropriate." <u>Id</u>. at 1571 n.30 (citation omitted).

In light of these concerns, the Eleventh Circuit has cautioned that a deliberate ignorance charge should ***not*** be given in every case in which a defendant claims a lack of knowledge, but only in those "comparatively rare cases" where "the facts . . . support the inference that the defendant was aware of a high probability of the existence of a fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." <u>Id</u>. at 1570-1571 (quoting from and adopting the standard articulated in <u>United States v. Alvarado</u>, 838 F.2d 311, 314 (9th Cir. 1987), *cert. denied*, 487 U.S. 1222 (1988)).

Applying this standard, the Court of Appeals in *Rivera* found that the district court had erred in instructing the jury on deliberate ignorance because, inter alia, there was "no evidence at all in the record suggesting that [defendants] purposely contrived to avoid learning that their luggage contained contraband," and no suggestion that the defendants "had come into possession of their suitcases under suspicious circumstances which put them on notice of any potential illegality." 944 F.2d at 1572; <u>cf</u>. <u>United States v. Peddle</u>, 821 F.2d 1521, 1523-1525 (11th Cir. 1987) (upholding district court's use of deliberate ignorance charge because, among other suspicious circumstances, defendant boat owner admitted that "something was going on" with the vessel and that "it might be carrying contraband of some kind"); <u>United States v. Aleman</u>, 728 F.2d 492 (11th Cir. 1984) (upholding district court's use of deliberate ignorance charge because defendant stated that he had been approached by a "mystery man" who asked him to take a briefcase to a person in New York City, that he did not know the name of the person to

whom the briefcase was to be delivered, and that no arrangements had been made for actual delivery of the briefcase); United States v. Batencort, 592 F.2d 916, 917 (5th Cir. 1979) (upholding use of instruction where defendant, who was arrested attempting to smuggle cocaine in the false bottom of his suitcase, testified at trial that he was hired by an unknown individual whom he met on the street in Colombia to bring appliances to the United States for a large sum of money, and who furnished him with false travel documents; court also noted that during interrogation of defendant, he admitted that "he had something in the suitcase that he shouldn't, but he didn't know exactly" what).

As the cases cited above illustrate, arguments about willful blindness and the use of a deliberate ignorance instruction are appropriate only in cases where there is positive proof at trial that the defendant had affirmative notice that his or her conduct was unlawful and intentionally closed his or her eyes to a problem — a mere showing that the defendant should have known that illegal activity was afoot is not sufficient. *See* Rivera, 944 F.2d at 1571 (noting that "the Government's contention that the defendants should have known of the cocaine because of the false bottoms in the suitcases and the weight distribution of the hairspray cans skate[d] dangerously close to [urging] a negligence standard," and holding that the district court erred in charging the jury on deliberate ignorance under these circumstances). This is particularly true in mail and wire fraud cases where knowing participation is an element of the offense.  *See* United States v. Majors, 196 F.3d 1206, 1210 (11th Cir. 1999) ("Without some objective evidence demonstrating a scheme to defraud, all promotional schemes to make money, even if sleazy or shrewd, would be subject to prosecution on the mere whim of the prosecutor. More is required under our criminal law.") (citations and internal quotation marks omitted).

B.     **The Government Should be Limited to a Theory of Actual Knowledge – and Not Be Permitted to Argue Deliberate Ignorance (or Willful Blindness).**

The Indictment in this case charges Mr. Markovich with conspiracy, mail fraud, wire fraud, making false statements, and obstruction of justice.   The defense believes that the Government will seek to prove its charges against Mr. Markovich through a theory of actual knowledge.   This is based on the discovery produced in this matter.   The defense foresees that the Government will argue that Mr. Markovich acted with actual knowledge and intent to commit fraud.

If the Government proceeds under a theory of actual knowledge by Mr. Markovich, the Government should not be permitted to advance an alternative and inconsistent theory of willful blindness.   One reason for this is the doctrine of judicial estoppel.   "Judicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process."   Stephens v. Tolbert, 471 F.3d 1173, 1177 (11th Cir. 2006).   A district court may invoke the doctrine "to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."   Id.

In United States v. Gonzalez-Perez, 283 F. App'x 716, 724 (11th Cir. 2008), the Court explained: "[T]he circumstances under which judicial estoppel should be invoked are not reducible to a general formulation of principle," but courts have traditionally looked at three factors: (1) whether a later position asserted by a party was clearly inconsistent with an earlier position; (2) whether a party succeeded in persuading a court to accept an earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) whether the party with an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.   The doctrine "generally prevents a party from prevailing in one

phase of a case on an argument and then relaying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 277 n.8 (2000).

For the foregoing reasons, in this case, the Government's clear allegations of direct knowledge by Mr. Markovich make any arguments about "willful blindness" or "deliberate ignorance" improper.  In addition, allowing the Government to argue willful blindness in this case would unfairly dilute the Government's burden of proof and deny Mr. Markovich due process.   As such, the defense requests that the Government be precluded from making such arguments at trial.

## IX.    CONCLUSION

Mr. Markovich anticipates that issues related to some or all of the points discussed herein will arise during trial of this case.  Mr. Markovich's counsel will make appropriate objections and/or motions at that time.  The instant memorandum is intended to assist the Court when considering Mr. Markovich's arguments.

Respectfully submitted,

Dated: August 6, 2021

*s/ Michael Pasano*
Michael S. Pasano (FBN 475947)
E-mail: mpasano@carltonfields.com
CARLTON FIELDS
700 N.W. 1st Avenue, Suite 41200
Miami, Florida 33136-4118
Telephone: (305) 530-0050
*Attorney for Defendant Jonathan Markovich*

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY THAT, on August 6, 2021, the foregoing was electronically transmitted via CM/ECF:

*s/ Michael Pasano*

Michael Pasano, Esq.