UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CR-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

JONATHAN MARKOVICH, and
DANIEL MARKOVICH,

         **Defendants.**
_____/

### UNITED STATES' TRIAL BRIEF

The United States, by and through the undersigned counsel, respectfully submits the following Trial Brief in advance of the trial date of September 13, 2021. The Government files this brief to outline issues for the Court that the Government expects will arise at trial and provide additional Notice of these topics to defense counsel. The Government also seeks reconsideration of the Court's prior ruling on lay witness opinion, and moves *in limine* to preclude cross-examination of the Government's medical expert on certain topics, as described below.

**I.  THE DEFENDANTS SHOULD BE PRECLUDED FROM CROSS-EXAMINING THE GOVERNMENT'S MEDICAL EXPERT WITNESS ABOUT TWO CIVIL LAWSUITS BECAUSE THEY ARE IRRELEVANT.**

The Government expects that Defendants will attempt to cross-examine its medical expert, Dr. Clark, about the fact that CleanSlate, a treatment center in Northampton, MA, where she was the Medical Director from 2014 to 2018, was sued (along with numerous other affiliated entities including the parent company), in two separate civil lawsuits.[1] But Dr. Clark was not named in

---

[1] The Government has disclosed numerous documents concerning one of these lawsuits to the defense.

either of these lawsuits as a defendant. She was not deposed in either lawsuit. And because these lawsuits do not make any allegations as to her conduct, they cannot be used to impeach her credibility, or otherwise. Finally, neither of these lawsuits shows bias on her part. Thus, they are not proper subjects for cross-examination of an expert. They are irrelevant.

In November 2016, CleanSlate settled a civil lawsuit brought by the United States Attorney's Office for the District of Massachusetts for $750,000, without admitting any wrongdoing. The lawsuit involved allegations of improper prescribing of buprenorphine, and improper "incident to" billing to Medicare. Dr. Clark was not the Medical Director when most of the conduct alleged in this lawsuit occurred; Dr. Clark's conduct was never at issue. It does not show bias on her part. Accordingly, the fact of this lawsuit, and its settlement, are not proper impeachment material.[2] It is therefore irrelevant and not a proper subject for cross-examination.

Regarding the second lawsuit, a civil relator complaint in the District of Massachusetts which is still pending against Clean Slate (Case No. 17-CV-30038), again, Dr. Clark's conduct is not at issue. Indeed, the only mention of Dr. Clark in this lawsuit concerns a whistleblower stating that she informed Dr. Clark, among many other people, of her view that CleanSlate was overbilling for urine tests of patients who were prescribed buprenorphine.[3] Once more, because Dr. Clark's conduct is not at issue in this lawsuit, it cannot be used to impeach her. And because she does not

---

[2] Judge Cohn sustained a relevance objection to questions about this lawsuit in an addiction treatment fraud trial in this district where Dr. Clark testified in an expert in the same manner in this trial. [United States v. Ahmed et al., Case No. 19-CR-60200-COHN, February 27, 2020, transcript at pp. 130-33]. The Government has provided a transcript of Dr. Clark's testimony in this case to the defense, and noted this objection, and Judge Cohn's ruling on this subject.

[3] Indeed, the relator attached e-mail correspondence between various parties, including Dr. Clark, as an exhibit to her complaint, noting that Dr. Clark wanted some of the issues she raised, if true, to be addressed. [D.E. 57-28].

work for CleanSlate currently, it does not show bias on her part.   Accordingly, it is also not proper for cross examination.

Defendants obviously have the absolute right to confront and vigorously cross-examine the Government's expert under the Sixth Amendment.   But nevertheless, district courts "retain wide latitude ... to impose reasonable limits on cross-examination ... based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."   Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); United States v. Maxwell, 579 F.3d 1282, 1296 (11th Cir.2009) ("[A] defendant can only cross-examine a prosecution witness if the information sought to be elicited [is] relevant." (second alteration in original) (quotation marks omitted)).   Precluding certain subjects from cross-examination by the district court is subject to an abuse of discretion standard.   Maxwell, 579 F.3d at 1295.   "The test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination."   United States v. Garcia, 13 F.3d 1464, 1469 (11th Cir. 1994).

This trial is about Compass Detox and WAR, not CleanSlate.   Dr. Clark is being called describe, among other things, her view on the standard of care and basic rules for addiction treatment, and how medication assisted therapy and urine testing to treat substance abuse should work, among other things.   Such testimony will help the jury understand this case, and assist the tier of fact in forming a baseline of knowledge under which to evaluate the fraud allegations made by the Government.   Dr. Clark will further testify how, in her opinion, Compass Detox and WAR failed to live up to the basic standards and procedures for addiction treatment based on her review of patient files and billing data.   These are the key issues in her testimony in this case.   Inquiry into lawsuits in which she is not accused of anything, and in which he has not even been deposed,

will distract the jury from these issues. Dr. Clark should not have to conduct any kind of mini-trial talking about or defending what happened at CleanSlate, particularly when one lawsuit is pending, and another already settled with no admissions of wrongdoing, making any allegations in these lawsuits no more than unproven assertions. Indeed, the allegations themselves in these civil complaints amount to little more than hearsay. Just as Van Arsdall warns, such cross examine risks "unfair prejudice," and "confusion of the issues," for testimony that is, at best, "marginally relevant." Id. 475 U.S. at 679. The Government therefore moves *in limine* to exclude cross-examination of Dr. Clark on these lawsuits.

## II.  GOVERNMENT'S NOTICE OF LAY OPINIONS OF FORMER EMPLOYYES, AND CLARIFICATION OF WHAT THESE WITNESSES MAY DISCUSS AT TRIAL.

Defendants moved to preclude any lay witness opinion testimony about the medical necessity for services billed by Compass Detox or WAR, and specifically as to whether patients needed detoxification or residential treatment. [D.E. 239]. The Court, in granting this Motion, noted that while lay witnesses can provide expert opinions, they must be noticed as experts. [D.E. 270]. The Government hereby provides clarification of what two former employees of Compass Detox and/or WAR will testify about, provides the equivalent of such notice, and, to the extent necessary, moves for reconsideration of the Defendant's Motion by this Court.

There is no doubt that former employees of Compass Detox and WAR (and former patients), as fact witnesses, can testify about what they experienced, saw, heard, and perceived by working (or being treated) there. But they can also provide their impressions of what they saw, based on both treating these patients at these facilities, and their past employment experience. Two of the former employee witnesses the Government intends to call are a nurse, and a therapist. Thus, they have professional licenses and training requirements. Lindy Pilgrim was an LPN when

4

she worked at Compass, and has been for roughly eight years; she is currently studying to become an RN (Registered Nurse). Jesse Munach was a registered mental health counselor intern when he worked at Compass requiring supervision, has a Master's Degree in Mental Health Counseling from Nova University, and is currently an LMHC (Licensed Mental Health Counselor). Their basic backgrounds have been provided in 302 interview reports.

Neither Ms. Pilgrim nor Mr. Munach are being admitted as experts, and they are not doctors. However, they can still testify about what they saw at Compass Detox and WAR, and provide opinions based on their experience of what happened there. These witnesses will not diagnose patients. They will not comment on medical necessity. In this sense, Defendants' Motion was largely moot and unnecessary.

However, a nurse such as Ms. Pilgrim, for example, telling the jury that patients at Compass and WAR were routinely provided a "Comfort Drink," and a plethora of other controlled substances, which caused them to appear and act heavily sedated (and even hallucinate) is factual testimony. So is her testimony on what she understood these drugs were commonly for based on her experience as a nurse, and their effect on patients generally, in addition to what they she observed these drugs doing to Compass Detox patients. A nurse can also testify that admitting a patient to detoxification at Compass Detox after they spent some time in WAR, even though such patients were not testing positive for drugs and were not in acute medical distress from drug withdrawal was, in her understanding of detoxification as a nurse, wrong. A therapist such as Mr. Munach can surely comment that certain patients in his groups appeared to be heavily sedated and could not participate in therapy, and then provide his opinion that these drugs were therefore counter-therapeutic to these patients he observed, and further that having such patients in groups was counter-productive to all the patients in these groups, in his opinion as a therapist. A nurse

5

or therapist experienced in treating patients with substance abuse problems can also testify that patients they saw appeared to be on drugs or drunk, and/or were consistently testing positive for drugs and/or alcohol while at Compass Detox and WAR, but were allowed to stay at these facilities anyway as long as they had insurance that paid highly. And such witnesses can also provide factual testimony that patients at Compass Detox and WAR were routinely readmitted, with no change in their basic treatment plans, and thus the treatment at Compass and WAR did not appear to help them. Such testimony and impressions are commonly understood in the addiction treatment field; indeed, if the Defendants called an expert witness, their expert would undoubtedly agree with all of the basic testimony outlined above if posed in a hypothetical.

Moreover, all of these subjects of testimony for these former employee witnesses have been provided in 302s to the Defendants, in prior motions by the Government, and are being provided here as well. Thus, Defendants now have sufficient notice of these witnesses as if they were experts, even though neither of them are.

Accordingly, while the Government is not seeking to admit these witnesses as medical experts to explain the background on addiction treatment and the medical standards applicable to such treatment, these former employees, who happen to have specific education and training and were employed at Compass Detox and WAR in positions in which they deployed that training, can provide factual testimony that led them to certain impressions, and then discuss what these impressions were, as detailed above. To the extent Defendants object to such testimony as touching upon "medical necessity," such objections can be dealt with at trial, but the Government respectfully submits that none of what is described above is objectionable. Even if the Court deems otherwise, Defendants now have sufficient notice of such testimony. Indeed, they have for some time. Finally, these witnesses will not be saying anything different than what the

Government's medical expert, Dr. Clark, will say about these exact same facts. The Government therefore proposes a possible solution: these witnesses can testify <u>after</u> Dr. Clark has testified and provided such standards and views, therefore rendering such testimony even less objectionable.

### III. THE CO-CONSPIRATOR STATEMENTS THE GOVERNMENT WILL INTRODUCE ARE SUBJECT TO A HEARSAY EXCEPTION.

Defendants have provided a great deal of law and argument about co-conspirator statements in their prior trial-briefs. But none of their arguments change the fact that the law in this Circuit is clear on the co-conspirator hearsay exception outlined in Federal Rule of Evidence 801(d)(2)(E). For a declaration by one co-conspirator to be admissible against another defendant, the Government must establish by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the statement was made during the course and in furtherance of the conspiracy. <u>See</u> Fed. R. Evid. 801(d)(2)(E); <u>United States v. Magluta</u>, 418 F.3d 1166, 1177-78 (11th Cir. 2005). In determining admissibility, courts may consider both the co-conspirator's hearsay statement and independent outside evidence. <u>United States v. Van Hemelryck</u>, 945 F.2d. 1493, 1498 (11th Cir. 1991) (<u>citing</u> <u>Bourjaily v. United States</u>, 483 U.S. 171, 181 (1987), and <u>United States v. Chestang</u>, 849 F.2d 528, 531 (11th Cir. 1988)). A court need not make the admissibility determination prior to trial, the district court has discretion to admit the statements subject to proof of the three requirements during the course of the trial. <u>Van Hemelryck</u>, 945 F.2d at 1498 (<u>citing</u> <u>United States v. Fernandez</u>, 797 F.2d 943, 945 (11th Cir. 1986), <u>cert. denied</u>, 483 U.S. 1006 (1987)); <u>United States v. Norton</u>, 755 F.2d 1428, 1431 (11th Cir. 1985)).

In this case, the evidence will clearly show that a conspiracy existed to commit health care and wire fraud, and to offer, pay, and receive kickbacks and that both Defendants participated in

it.  The type of co-conspirator statements that will help prove this include, but are not limited to, the categories of statements briefly outlined below.[4]

- Instructions provided by the defendants or co-conspirators, including other staff members, regarding kickback payments, such as which patients to pay, how much to pay patients, how to determine how much to pay patients, what form of payments to use, where the money came from, how to conceal kickbacks, and similar topics regarding patient recruitment.

- Instructions provided by the defendants or co-conspirators regarding patient medications, patient treatment (including admissions/discharge decisions and therapy), and similar conduct that goes to the core of the charged conspiracies.  This would include, for example, the defendants directing staff members to provide additional medication to patients, conversations among co-conspirators explaining the purpose of certain medications (e.g., that the purpose of a medication is to keep patients from leaving Compass Detox), directions from the defendants regarding the medical criteria needed to justify more days of coverage from insurance and how to ensure that patients show up with such criteria, and directions from the defendants or other co-conspirators to alter patient files including therapy notes.

- Discussions about specific patients, including the fact that the defendants referred to certain patients via nicknames derived based on how good the patient's insurance was.

- Instructions that co-conspirators gave to patients, such as directing patients not to talk about the money they were being paid and coaching patients on what to say to justify their admission to Compass Detox, obtain stronger medications, or get more days covered by insurance.

- Information that co-conspirators reported to each other and/or to the defendants regarding kickbacks, patient recruitment efforts, and the treatment of patients at Compass Detox and WAR.

---

[4] Many of these statements are admissible under other hearsay exceptions or are simply not hearsay.  The Government does not address every possible basis for admission in this brief.  In addition, many other statements, which are not offered as co-conspirator statements, but are admissible under a hearsay exception or as non-hearsay, are not addressed in this brief.

### IV. VIOLATIONS OF CIVIL STATUTES AND REGULATIONS MAY BE ADRESSED IN A JURY INSTRUCTION.

Defendants, in their Trial Brief, raise the specter of civil and regulatory violations somehow being improperly introduced in this trial. [D.E. 273 at 16]. But to the extent such evidence is introduced, it can be highly probative of Defendants' criminal intent. And such evidence can be appropriately handled by a jury instruction, as proposed by the Government, making preclusion unnecessary. [D.E. 255 at 62]. Such an instruction has been used in numerous trials in similar contexts, and will fully address any problems raised by Defendants.

### V. THE COURT SHOULD NOT GIVE DANIEL MARKOVICH'S REQUESTED JURY INSTRUCTION REGARDING THE CREDIBILITY OF DRUG ADDICTS.

The jury instruction requested by Daniel Markovich regarding the testimony of drug addicts should be rejected and, to the extent the evidence requires such an instruction at the close of the case, the Eleventh Circuit's pattern instruction on this issue (S1.3) is the appropriate instruction to use. Here, nothing beyond the Eleventh Circuit's pattern instruction is required. The witnesses in this case will likely be cross-examined as to their addiction, the jury will be made aware of their addictions, and the witnesses will be corroborated by other information. While cooperators and patients in this case are, necessarily, individuals who have or do struggle with addiction given the nature of this case, the information that they have provided is corroborated through other witnesses as well as documents. See United States v. Combs, 369 F.3d 925, 939 (6th Cir. 2004) (recognizing the use of "addict-informant" instructions where appropriate, but cautioning that "there is less need for a special jury instruction about the credibility of an addict-informant where the jury is aware that the witness is an addict and where there was substantial corroboration for the witness's testimony").

9

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court grant its motion *in limine* to preclude cross-examination of its medical expert on prior lawsuits, and to reconsider its prior ruling on lay witness opinion testimony to the extent necessary at trial. The Government further submits its co-conspirator statement evidence may be properly admitted as an exception to the hearsay rule. Finally, any evidence concerning civil and regulatory violations by Defendants is probative of their intent, and may be addressed by the Government's proposed jury instruction, and the Court should not give Defendants' proposed addict credibility jury instruction.

Dated: September 7, 2021

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

By:   /s/ *James V. Hayes*
JAMES V. HAYES (FL Bar # A5501717)
Senior Litigation Counsel
JAMIE DE BOER (FL Bar #A5502601)
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 774-4276
James.Hayes@usdoj.gov
Jamie.DeBoer@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 7, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*James V. Hayes*