UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60020-CR-DIMITROULEAS

UNITED STATES OF AMERICA,

v.

JONATHAN MARKOVICH, and
DANIEL MARKOVICH,

       Defendants.
                                  /

## MOTION IN *LIMINE* TO STRIKE THE TESTIMONY OF DR. CLARK

The Defendants, Jonathan Markovich and Daniel Markovich (collectively referred as the "Markoviches"), respectfully move this Court to strike the testimony of Dr. Clark, in whole or in part, or, alternatively, to provide a detailed curative instruction to the jury regarding her testimony. As explained further below, Dr. Clark's testimony should be struck because she (a) improperly conflates her medical opinions with legal conclusions, and (b) improperly criminalizes alleged policy, procedure, regulatory, and/or civil violations by Compass Detox, We Are Recovery ("WAR"), and/or their medical staff against Jonathan and Daniel Markovich.

## THE LEGAL STANDARD

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc*., 400 F.3d 1286, 1291 (11th Cir. 2005) (*citing Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 589 (1993). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp*., 298 F.3d 1253, 1256 (11th Cir. 2002). In addition, an expert is ***not*** allowed to impede on the role of the Court, whose job it is to instruct the jury as

to the requirements of law that apply to the particular facts of the case. *See* Fed. R. Evid. 704 commentary; *see also Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1112 (11th Cir. 2005) (stating that, "testifying experts may not offer legal conclusions").

Rather, expert testimony is admissible if it offers something "more than what lawyers for the parties can argue in closing arguments." *Jordan v. Celebrity Cruise Line*, 2018 WL 3584702, at *7 (S.D. Fla. 2018), *citing United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004). While "[a]n expert may testify as to his opinions on an ultimate issue of fact ... he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014). The Eleventh Circuit has also made clear that "merely telling the jury what result to reach is unhelpful and inappropriate." *Id.* at 1122 (*citing Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

"Determinations of the admissibility of evidence are left to the broad discretion of the district court." *Montgomery v. Aetna Cas.*, 898 F.2d at 1541. *See also United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977) ("Rule 704 abolishes the *per se* rule against testimony regarding ultimate issues of fact. By the same token, however, courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury-regarding the applicable law.").

## DR. CLARK'S TESTIMONY THUS FAR

Dr. Clark testified on October 1, 2021 and October 4, 2021; she is set to resume her cross-examination testimony on October 12, 2021. The Government proffered, in its expert disclosure, that Dr. Clark would testify about "a variety of subjects relating to substance abuse treatment, including various levels of care including detoxification, partial hospitalization programs ('PHP'), intensive outpatient programs ('IOP'), and outpatient programs ('OP'); urine drug testing (*i.e.*,

2

urinalysis, or 'UA'), and other bodily fluid testing; and the use of prescribed drugs including controlled substances in treating addiction." (D.E. 202, p. 3.) They also stated that Dr. Clark would "testify about her review in this case of billing data and patients' medical files" relating to Compass and WAR. (*Id*.) Prior to trial, the defense objected to Dr. Clark's expert testimony, on several grounds, including her methodology employed under *Daubert*, her lack of experience regarding billing data, and her projected legal conclusions. The Court denied the defendants' motion (*see* D.E.s 225, 274).

Prior to commencing her direct testimony, the defense raised the concern that Dr. Clark has, in four (4) prior criminal trials, improperly testified to legal conclusions. (*See* 10/1/21 Transcript, 128:15, attached hereto as "Attachment A".) The Government did not deny that Dr. Clark has previously done so, but rather, stated that it has "instructed Dr. Clark to not say things like 'legal' or 'illegal.'" Instead of using those terms, Mr. Hayes stated he would use "'appropriate,' 'not appropriate,' 'legitimate' in terms of medical treatment, 'illegitimate' or 'proper' and 'improper,' but [would] not say 'legal' or 'illegal.'"

The Court then ruled as follows:

> THE COURT: Well, on August 9 you said she would not testify concerning any ultimate decision in the case.
>
> MR. HAYES: Correct.
>
> THE COURT: So that's my ruling.

*See* Attachment A, 129:1-4.

Nonetheless, Dr. Clark, over the Court's ruling and defense objections, has continued to provide legal conclusions as if they are permissible expert opinions. While she is not explicitly stating that alleged conduct or procedures were "illegal," she characters them as "inappropriate" in the same context of legality. On October 1, Dr. Clark used the term "appropriate" in some form

3

forty (40) times.[1] On October 4, she used some form of the term thirty-one (31) times.[2] Below are a few examples of how Dr. Clark has used the term "appropriate" to attempt to, or succeeded in, rendering improper legal conclusions:

> BY MR. HAYES:
> Q. What, if anything, would you say, as an expert, if a patient was being given drugs or benzodiazepines and alcohol in order to get admitted to a detox in the first place?
>
> A. Well, that's -- that's inappropriate, to give somebody drugs, and to give them drugs so that they could be admitted to a detox. The only reason that you would be doing that is if you were trying not to get –

---

[1] appropriate [24] - 128:22, 144:13, 148:2, 158:12, 158:13, 164:23, 165:12, 168:17, 170:6, 178:16, 179:10, 185:10, 189:1, 189:4, 192:5, 192:8, 192:18, 194:1, 198:1, 199:20, 200:22, 223:11, 227:18

appropriately [5] - 190:3, 195:14, 216:15, 216:16, 238:22

appropriateness [2] - 208:21, 237:23

inappropriate [8] - 136:2, 169:23, 186:9, 188:25, 196:25, 209:20, 209:21, 209:22

inappropriately [1] - 188:17

[2] appropriate [22] - 16:14, 17:2, 19:6, 21:6, 27:5, 27:15, 28:2, 38:21, 39:4, 46:16, 59:11, 75:5, 112:23, 129:4, 135:19, 145:8, 145:20, 147:16, 192:17, 233:10, 233:12

appropriately [4] - 113:1, 126:15, 126:16, 137:17

inappropriate [5] - 24:3, 39:25, 40:14, 111:24, 169:25

> MS. JOHANNES: Objection, Your Honor.
>
> THE COURT: Sustained.
>
> BY MR. HAYES:
> Q. I'm not asking you to speculate. Just why is that not appropriate medically?
>
> MS. JOHANNES: Same objection, Your Honor.
>
> THE COURT: Sustained.

*See* Attachment A, 169:20 – 170:8.

> BY MR. HAYES:
> Q. Did you see anything in the patient files called comfort meds or comfort drink?
>
> A. Yes.
>
> Q. Have you ever seen anything like that before?
>
> A. Never, ever have I seen anything like this comfort drink –
>
> Q. Okay.
>
> A. -- at Compass.
>
> Q. What -- based on your review of the medical filings, what, in your professional opinion, was the comfort drink being used for? Was this appropriate or not?
>
> A. It –
>
> MS. JOHANNES: Objection as to the last portion of that question.
>
> THE COURT: Overruled.
>
> THE WITNESS:
> ….
> So in the first place, I've never seen anyplace give somebody literally a shot when they were anxious. Here, drink this when you're anxious. This is exactly opposite of what anybody would think would make sense for when you're trying to treat people with addiction.

5

> Secondly, you don't mix different medications like this for anxiety.
> It's dangerous, and it's medically inappropriate to do this.

*See* Attachment A, 185:1 – 14; 186:3 – 10.

In addition, Dr. Clark has incorrectly left the jury with the impression that Compass and WAR, by and through their policies and procedures, have violated regulatory and/or civil laws and that such violations somehow have a bearing on the criminal liability that Jonathan and Daniel Markovich face in this case.  Specifically, Dr. Clark has testified to Compass' and WAR's policies and procedures manual and various licenses, issued by DCF.  In and of itself, such testimony is proper.  However, she continues to testify as to alleged violations of those policies and procedures and licenses, which is (a) irrelevant to this criminal case; (b) improper testimony; and (c) confusing to the jury, which is comprised of laypersons who do not understand the difference between a civil/regulatory/negligence standard and criminal liability.  The below are a few examples:

> BY MR. HAYES:
> Q. And what, if anything, should be done, based on your experience in this field, when these things happen?
>
> A. Well, these things need to be addressed. This is supposed to be a safe space for people who are trying to get treatment to get better and get their lives back. There are policies and procedures in the manual that Compass and WAR put together that say what they're supposed to do in some of these situations.

*See* Attachment A, 177:18 – 25.

> BY MR. HAYES:
> Q. And you mentioned insurance plans aren't set to catch this stuff. What about Department of Children & Families in Florida?
>
> A. We have a trust-based system, right? So what the department does --
>
> MS. JOHANNES: Objection. Lacks foundation. She doesn't know what the Department of Children & Families is set up to do.

>THE COURT: Overruled.
>
>BY MR. HAYES:
>Q. Please continue.
>
>A. So the State puts together regulations. This is what you have to do if you are going to be licensed as a Residential 1. Okay? And then a treatment facility that wants to be licensed for that puts together -- they're required to put together a manual of policies and procedures that show the entire system at that treatment center, not just medical -- like, what medications they use and things. That's not part of that document. That's medical stuff.
>
>The operational, the whole construct of how this place is gonna run is a manual that they are supposed -- that they are required to give to the State that says, this is what we do. This is the number – these are the things that we do that are compliant with those regulations.

*See* Attachment A, 224:3 – 225:1.

Dr. Clark has proffered the same with respect to the medical staff at Compass and WAR, opining that their negligence or recklessness is somehow imputable to Jonathan and Daniel Markovich in a criminal case. "References to regulations are improper if their purpose or effect is to suggest to the jury that it could find a defendant guilty by reason of his violation of the regulation." *United States v. Jakeway*, 783 F.Supp. 590, 596 (M.D. Fla. 1992); *see also United States v. Stefan*, 784 F.2d 1093, 1098 (11th Cir. 1986). Notably, Compass and WAR are ***still open***, functioning with full medical teams and under DCF's oversight, and the Markoviches are ***not*** the owners of either facility. Further, neither of the Markoviches *ever* served as the CEO of WAR.

Such testimony is completely out-of-line, and while a curative instruction has been given to the jury on this point, during Shayla Brown's testimony (DCF), a curative instruction will likely have little effect here. Unlike Ms. Brown, Dr. Clark has the weight of expertise to back her testimony, and, thus, her words have greater influence on the jury. Further, Dr. Clark has woven such a theme throughout her testimony, in a convoluted and calculated manner. Her legal

7

conclusions and intermixing of a negligence standard in a criminal context is not limited to a few questions and answers; instead, it is deeply imbedded in her testimony. For example:

> BY MR. HAYES:
> Q. Was Compass Detox doing what its license allowed it to do?
>
> A. No.
>
> Q. What do you mean?
>
> A. Well, so first, it wasn't actually providing appropriate detox services for the detox portion.

*See* Attachment A, 164:20 – 24.

> BY MR. HAYES:
> Q. Dr. Clark, what are we looking at here?
>
> A. Well, this is -- as it says, this is their policy where they're talking about how they're going to meet the requirements of a quality improvement/quality assurance program. So this is the operations of their program here and how they're going to monitor and evaluate the appropriateness and quality of their care and safety, in accordance with federal, state and local laws.
>
> And it lists the -- a number of different monitoring areas of the charts and so on that they were going to do, and that the quality improvement program is the ultimate responsibility of the chief executive officer/owner.

*See* Attachment A, 237:18 – 238:4.

> BY MR. HAYES:
> Q. What, if any, responsibilities do owners have, according to the WAR policy and procedures manual, according to WAR?
>
> A. Well, similarly to Compass, the owners are responsible for hiring the appropriate CEOs, and that sort of flows down.
>
> Q. Does it flow down to the medical directors and clinical staff?
>
> A. Yes. The CEO hires the medical directors and the clinical staff, and the CEO has to meet the requirements and be chosen by the owners, according to their policy and procedure manual.

*See* 10/4/21 Transcript, 16:11-20 (attached hereto as "Attachment B").

Moreover, such testimony by Dr. Clark is all the more damaging and harmful because Dr. Clark primarily reviewed, and drew her alleged expert opinions from, the ZenCharts files in this case. Those files, by Dr. Clark's own admissions are for doctors and other medical staff to input information, primarily for billing purposes. She does not even know whether or not the Markoviches were responsible for, or reviewed such data, and yet she is blaming them, as "owners" and "CEOs" for making supposed poor management choices:

> BY MS. JOHANNES:
> Q. You do not know if Jonathan Markovich even looked at any of the stuff in ZenCharts, do you?
>
> A. Unfortunately, I think that's probably correct.

*See* Attachment B, 236:9 – 11.

For these reasons, the Markoviches move to strike Dr. Clark's improper conclusory opinions, as they (1) substitute an artificially heightened standard of care, (2) instruct the fact-finder on which result to reach, and (3) present confusing testimony. *See, e.g., Leroux v. NCL (Bahamas Ltd.)*, 2017 WL 2645755 (S.D. Fla. June 19, 2017); *Farley v. Oceania Cruises, Inc.*, 2015 WL 1131015 (S.D. Fla. Mar. 12, 2015); *Mendel v. Royal Caribbean Cruises Ltd.*, 2012 WL 2367853 (S.D. Fla. June 21, 2012); *Craggs Const. Co. v. Federal Ins. Co.*, 2007 WL 1452927 (M.D. Fla. 2007); *Pacific Indemnity Company v. Washington Mutual Bank, FA*, 2009 WL 10671484 (N.D. Ga. 2009).

Notably, it appears that the Government is aware that such conclusory testimony by Dr. Clark would be rendered, as the Government attempted to conclude her direct examination by presenting an alleged "summary" chart tying her conclusions regarding the "appropriateness" of the Compass and/or WAR's substance abuse treatment to specific counts in the indictment:

> BY MR. HAYES:
> Q. But in terms of your review of Compass Detox and WAR -- I'm going to ask you to turn to individual counts in a moment.
>
> Was Compass Detox and WAR -- were they falling short of perfection, or what was happening?
>
> MS. JOHANNES: Objection, Your Honor.
>
> THE COURT: Sustained.
>
> BY MR. HAYES:
> Q. Let's turn to the individual counts, Doctor.
>
> MR. HAYES: And one moment, Your Honor. I apologize for not -- one moment, Your Honor.
>
> Your Honor, may we approach briefly?
>
> THE COURT: Okay.
>
> (The following proceedings were held sidebar:)
>
> MR. HAYES: Your Honor, this is a demonstrative, not to go into evidence. This is based on the counts in the indictment. I'm not asking Dr. Clark to give a legal conclusion on whether these counts are illegal or not. I was going to have her testify that I reviewed these claims, and this is what I found appropriate or not appropriate.
>
> THE COURT: I think it's too close to her giving a legal opinion, so I would sustain the objection.
>
> MR. HAYES: Okay. Then can I ask -- may I ask -- and I don't have to, but can I say did you review individual claims in this case for the Government.
>
> THE COURT: Same thing. It's too close to her saying that she thinks they're guilty.

*See* Attachment B, 191:24 – 192:24.

Moreover, Dr. Clark's conclusions lack supporting facts; contradict other evidence in the case; or are cumulative of other testimony. *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("[W]hen indisputable record facts contradict or

10

otherwise render the [expert] opinion unreasonable, it cannot support a jury's verdict."); *Securities and Exchange Commission v. Tourre*, 950 F.Supp.2d 666, 675 (S.D.N.Y.2013) ("Acting simply as a narrator of the facts does not convey opinions.... Mere narration thus fails to fulfill *Daubert's* most basic requirements."); *LaSalle Bank National Association v. CIBC Inc.*, 2012 WL 466785 at *7 (S.D.N.Y.2012) ("[A]n expert witness may not offer testimony which merely rehashes the testimony of percipient witnesses.").

## **CONCLUSION**

The Markoviches move to strike Dr. Clark's testimony, in whole or in part. Dr. Clark's testimony has gone far beyond the scope of how, in her experience and training, various levels of substance abuse treatment facilities effectively operate. Rather, she has provided her own conclusions as to the legality of Compass and/or WAR's operations, terming it "appropriate" or "inappropriate" conduct. More importantly, though, she ties such alleged inappropriate conduct to Jonathan and Daniel Markovich, simply based on their mere roles owners or CEOs of Compass.

Regardless of what word choices Dr. Clark uses, her purpose and mission is clear: to criminalize the actions of Jonathan and Daniel Markovich by repeatedly discussing the negligence of Compass' and/or WAR's physicians, billing personnel, and other staff. Such testimony is improper, as it draws a legal conclusion – moreover, one that has no basis whatsoever. Dr. Clark's entire perspective is from a civil and negligence standard – not a criminal one – and she should not be permitted to discuss what is "appropriate," using such a standard, in this case.

Furthermore, given that the jury has already heard, from other witnesses and exhibits, how addiction treatment centers operate, and that this trial does not involve the medical doctors, Dr. Clark's testimony at this juncture is cumulative and unnecessary.

Alternatively, if the Court is not inclined strike Dr. Clark's testimony in any regard, the Markoviches request a detailed curative instruction be given to the jury, to wit: "I remind you that Compass Detox and We Are Recovery ("WAR") are not defendants in this case. Only Jonathan and Daniel Markovich are on trial before you. I further caution you that the Defendants, Jonathan and Daniel Markovich, are not on trial for negligence, recklessness, or medical malpractice. They are not on trial for any issue related to the licensures or medical practices of Dr. Drew Liebermann or Dr. Joseph Santeiro. Moreover, I caution you that the Defendants are not on trial for any civil, regulatory, or licensing violations. As you know, this is a criminal case. I caution you that I have permitted Dr. Clark to testify to various State of Florida substance abuse treatment regulations, as well as to the policies and procedures manual of Compass Detox and WAR. While you are permitted to consider these regulations, policies, and procedures, you are cautioned that violations of any such regulations, policies, and procedures do not constitute criminal liability here."

Dated: October 9, 2021

Respectfully submitted,

*s/      Marissel Descalzo*
Marissel Descalzo (FBN 669318)
Email: mdescalzo@tachebronis.com
Tache, Bronis, and Descalzo, P.A.
150 S.E. 2 Ave., Suite 600
Miami, FL 33131
Tel: 305-537-9565
*Counsel for Daniel Markovich*

*s/ Vanessa Singh Johannes*
Vanessa Singh Johannes (FBN 1028744)
E-mail: VJohannes@carltonfields.com
Michael S. Pasano (FBN 475947)
Email: MPasano@carltonfields.com
CARLTON FIELDS
700 N.W. 1st Avenue, Suite 1200
Miami, Florida 33136-4118
Telephone: (305) 539-7358
*Counsel for Jonathan Markovich*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that the foregoing was filed this day via CM/ECF and served on all counsel of record appearing on CM/ECF on this 9th day of October, 2021.

                                              By: *s/ Vanessa Singh Johannes*
                                                     Vanessa Johannes, Esq.