UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CR-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

JONATHAN MARKOVICH, and
DANIEL MARKOVICH,

          **Defendants.**
_____/

### GOVERNMENT'S MOTION FOR RECONSIDERATION OF ORDER ON MOTION *IN LIMINE* TO EXCLUDE 404(b) EVIDENCE

The Government, through undersigned counsel, moves for reconsideration of the Court's order largely granting Jonathan and Daniel Markovich's Motion *in Limine* to Exclude 404(b) Evidence [D.E. 326] ("Motion"). [D.E. 327.] The evidence at issue concerns (1) patient statements created at Jonathan Markovich's direction falsely stating that the patients were not paid by Compass Detox; and (2) a real estate transaction that was part of the kickback and money laundering schemes. Crucially, the false patient statements occurred <u>after</u> the Evoke litigation was dismissed. Garnto and Kustura created false patient statements at Jonathan Markovich's direction to dispel rumors supposedly started by Evoke that Compass Detox paid patients, to redirect those rumors toward Evoke, and to exculpate Compass Detox in the criminal investigation. Signed patient affidavits were sent to Jonathan Markovich in the same email as a copy of FBI Special Agent Bhoge's business card. The very creation of these false statements proves Jonathan Markovich's knowledge that patient brokering is wrong and his intent to conceal it.

The real estate transaction was discussed at length in the Government's notice filed July 2, 2021 [D.E. 217]. Tellingly, the defense did not discuss this filing in its Motion. As set forth in

1

that filing, this sale was a kickback from Jonathan Markovich and Waserstein to Garnto and was a way to launder fraud proceeds from WAR and to one of Waserstein's real estate companies. This transaction has been part and parcel of the case since inception; these allegations were discussed in the criminal complaint [D.E. 1, p. 23 n. 5 & ¶ 121] and at the preliminary hearing in which Judge Valle sustained money laundering charges and kickback charges against Jonathan Markovich, Garnto, and Waserstein.

The defendants have made clear since opening statements that their key defense is intent. Taking steps to conceal the underlying wrongdoing (such as by directing the creation of false evidence) or perpetuate it (by laundering money or paying kickbacks under the guise of a standard real estate transaction) is direct evidence of intent and the existence of a conspiracy. It is even more probative than evidence that has already been admitted in this trial, such as evidence of the use of fake names and burner phones, false patient brokering formers already in evidence (GX 126) signed by the very same patients at issue in the recordings, or directions from the Markoviches to be "smart" about patient brokering. Here, the evidence involves the creation of new lies to cover up existing crimes, which is the <u>epitome</u> of consciousness of guilt. The Government submits that this evidence is essential proof of the charged offenses.

I. **FALSE PATIENT STATEMENTS ARE INEXTRICABLY INTERTWINED WITH THE ALLEGED CONSPIRACY.**

    **A. Mr. Garnto Will Lay Sufficient Foundation Regarding The Markoviches' Knowledge Of The Patient Recordings.**

Multiple patients, including S.S. and A.N., were asked by some of the conspirators in this case to make statements (through recordings and signed affidavits) implicating another treatment center, Evoke, in patient brokering and exculpating Compass Detox from the same. On September 17, 2021 the Court stated the following about this evidence: "it seems to me that 404(b) isn't

applicable, that the evidence may be inextricably intertwined but I don't know that necessarily its probative value is outweighed by the prejudice in the Government's case in chief." Tr. 9/17/21 at 248:15-19.  On September 23, 2021, the Court stated that "Mr. Garnto's testimony as to what Mr. Markovich may have said to him – Jonathan Markovich may have said to him – is the crucial part in whether I later allow in the corroboration through what Mr. Kustura would say, we'll cross that bridge after Mr. Garnto has testified." Tr. 9/23/21 at 11:2-8.

Mr. Garnto will lay the appropriate foundation regarding Jonathan Markovich's knowledge.  Specifically, Mr. Garnto will testify that these recordings were created at the direction of Jonathan Markovich.  Mr. Garnto and the Markoviches became aware of rumors that Evoke had improperly incentivized patients to make videos stating that Compass Detox paid them to attend treatment.  Jonathan Markovich instructed Mr. Garnto to create recordings in response that both implicated Evoke and exculpated Compass Detox.  Mr. Garnto carried out Jonathan Markovich's instructions by directing Mr. Kustura to create a recording of patient S.S., who was one of the patients allegedly incentivized by Evoke to spread rumors about Compass Detox.  Mr. Kustura would have testified (and will testify if recalled by the Government) that he coached S.S. on what to say while S.S. was a patient at Compass Detox.  Indeed, in the first version of the recording (there are two), Mr. Kustura can be heard whispering the name of Evoke's CEO to S.S.[1] because Mr. Garnto, at Jonathan Markovich's direction, had insisted that the CEO be identified by name in this recording and tied to misconduct at Evoke.

---

[1] Both of these recordings were provided by Mr. Garnto to Jonathan Markovich via text messages noticed on the Government's exhibit list.  After receiving these recordings, even though it is apparent that Mr. Kustura coached S.S., Jonathan Markovich directed that S.S. sign a written affidavit confirming what he said in the recordings.  This affidavit was reviewed by Daniel Markovich and Mr. Garnto, and a version purportedly signed by S.S. was obtained a few days later.

3

Both Mr. Kustura and Mr. Garnto will testify that S.S. was paid to attend Compass Detox. Mr. Garnto will testify that he had conversations with Jonathan Markovich about paying S.S. Indeed, at the time of these recordings, S.S. was a patient at Compass Detox and had been offered money to attend. Thus, when Jonathan Markovich received the two recordings of patient S.S. stating that he had not been paid by Compass Detox, Jonathan Markovich knew this was false and nonetheless directed Mr. Garnto, with the help of Daniel Markovich, to create an affidavit of S.S. saying the same. Several other patients gave similar recorded statements, all of whom Mr. Garnto will testify were paid by Compass Detox. Patient A.N. also signed an affidavit stating that he had never been paid by Compass Detox, when in reality both Mr. Kustura and Mr. Garnto will testify that he was paid and Mr. Garnto will testify that he discussed this with Jonathan Markovich.

B. **The Recordings—And Related Affidavits And Other Concealment Conduct—Are Squarely Relevant To Proving Jonathan Markovich's Intent.**

Mr. Garnto will testify (in the same vein as Mr. Kustura already did) that rumors about Compass Detox's patient brokering practices circulated both inside and outside Compass Detox and that those rumors often got reported back to both Jonathan and Daniel Markovich. At every turn, the evidence will establish that the Markoviches took steps to quash those rumors. When the Markoviches learned of patients bragging about being paid, the Markoviches directed recruiters to tell those patients to keep their mouths shut or they would not be paid. When staff reported rumors to the Markoviches, the Markoviches denied the rumors and told staff that they could not believe the word of drug addicts.[2] In exactly the same vein, when another treatment center (Evoke) began spreading rumors about Compass Detox's patient brokering, Mr. Garnto's testimony and/or

---

[2] This is on top of other steps to conceal the patient brokering, such as Jonathan Markovich directing the use of burner phones and fake names.

4

documentary evidence will establish that Jonathan Markovich directed the creation of recordings of patients and subsequent affidavits, which falsely exculpated himself and his conspirators.

Evidence of concealment goes squarely to intent, as well as to an explicitly alleged purpose of the conspiracy: "concealing the submission of false and fraudulent claims to health care benefit programs." Indictment, Count 1, Purpose of the Conspiracy.[3] As the defense has (correctly) made clear to the jury since opening statements, it is not enough for the Government to prove that patients were paid to attend Compass Detox; the Government must prove that the Markoviches knew this was happening and knew it was wrong. For example, Mr. Pasano argued in openings that,

> Criminal law is about what you intended. What you knew and what you did. Not what other people knew or did. What you knew. It's about intent. It's about what Jonathan Markovich thought and the evidence in this case will establish that Jonathan Markovich at all times thought he was doing the right thing. That he acted in what we call good faith. And, ladies and gentlemen, in criminal law, good faith is a complete defense to any accusation of fraud.

Tr. 9/14/21, 42:2-9.

Mr. Pasano went on to argue that Jonathan Markovich was "naïve," and "[e]asily taken advantage of." *Id.* at 43:18-21; 44:14-15. Mr. Pasano further argued that Jonathan Markovich thought Garnto did "things legitimately." *Id.* at 45:5-8. Mr. Pasano also denied Jonathan Markovich's knowledge of patient brokering: "Jonathan Markovich's motto was if you want to get paid, go somewhere else. If you want to get clean, come to Compass." *Id.* at 50:23-25.

Furthermore, Mr. Garnto will testify that these recordings, and the affidavits that followed them, were created to lock patients into exculpatory stories to both use against Evoke and to use to exculpate Compass Detox in the criminal investigation. This anticipated testimony is further supported by the fact that these recordings were created around the time that Markoviches learned

---

[3] The same purpose is alleged in Count 10 (kickback conspiracy) with respect to concealing kickbacks.

of the criminal investigation. Indeed, the same week that some of these statements were made, Daniel Markovich sent himself a photo of FBI Special Agent Bhoge's business card and Jonathan Markovich received the finalized affidavits of S.S. and A.N. in the same email as a photo of the agent's card. In keeping with this, Compass Detox, through its attorney, provided a letter to the FBI in July 2020 (before anyone was charged in this case), advising of the existence of "interviews and sworn statements" of employees and patients, and notifying the Government that "one of [Compass Detox's] competitors had a former patient of Compass' provide a false statement, based on a written script, on video in exchange for providing illegal narcotics." *See* Ex. A.

### C. The Defense's Argument That This Evidence Pertains Exclusively To A Civil Lawsuit Is Irrelevant And Wrong.

The defense argues that all of this evidence should be excluded because it pertains to a civil lawsuit. The question is whether the false statements are relevant to the crimes charged here, and they are. In any event, the false evidence at issue was not created until <u>after</u> the Evoke litigation had been dismissed with prejudice.

- On August 28, 2018, Compass Detox filed a civil action against Justin Crooks, a former employee, and Evoke. The lawsuit alleged that Crooks violated his employment agreement with Compass Detox by, essentially, stealing Compass Detox patients and convincing them to go to Evoke instead. *See* Exhibit B, Evoke Litigation Docket.

- On September 28, 2018, Evoke asserted as an affirmative defense the doctrine of unclean hands, on the grounds that Compass Detox's employment agreement with Crooks was unenforceable because Compass Detox required Crooks to engage in illegal actions, including "the over medicating of patients, allowing physical abuse between patients, improper billing to insurance companies, patient brokering and the unnecessary retention of patients for financial gain." *See* Exhibit C, Evoke's Answer to Complaint.

- On November 19, 2019, Jonathan Markovich was deposed by Evoke and Crooks' attorneys. The Government has obtained the certified version of this transcript, and timely noticed it as GX 841. The defense has never objected to this exhibit, nor does it appear to in this Motion. Nonetheless, because it is related to the issues raised by the defense, the Government brings this exhibit to the Court's attention as well. The

      Government only intends to admit select portions.[4]

- On March 23, 2020, the civil lawsuit was dismissed with prejudice. *See* Ex. B.

- On April 1, 2020, Mr. Garnto and Mr. Kustura discussed creating a recording of patient S.S., and Mr. Kustura conducted two such recordings and texted them to Mr. Garnto. Also on April 1, 2020, Mr. Garnto sent the recordings to Jonathan Markovich and Jonathan Markovich directed the creation of an affidavit for patient S.S. to sign. *See* Government Trial Exhibits 591DD, EE, FF, and GG.

- On April 2, 2020, Jonathan Markovich emailed a draft affidavit for patient S.S. to Daniel Markovich and Mr. Garnto, and later sent a finalized draft to Mr. Garnto. *See* Government Trial Exhibits 1047 and 1048. The draft affidavit contains a paragraph saying S.S. was not paid by Compass Detox.

- On April 8, 2020, Jonathan Markovich received an email consisting of a single attachment, which included a photo of Special Agent Bhoge's business card, a signed affidavit of patient S.S. stating that Compass Detox never paid him, and a signed affidavit of patient A.N. stating that Compass Detox never paid him. *See* Government Trial Exhibit 1046. Both of these patients were in fact paid to go to Compass Detox.

II.    <u>**THE GARLAND AVENUE REAL ESTATE TRANSACTION IS PART AND PARCEL OF THE ALLEGED CONSPIRACIES.**</u>

    **A. Mr. Garnto Will Lay The Foundation For The Markoviches' Knowledge.**

Mr. Garnto will testify that he became dissatisfied with his work at Compass Detox, in part because he wanted to stop the patient brokering. He complained about this to Jonathan Markovich

---

[4] Jonathan Markovich testified that Compass Detox did not pay for flights for patients. That is a lie, which will be uncovered when financial evidence is presented showing payments for flights on Compass Detox's corporate accounts. That lie is relevant to Mr. Markovich's intent for all the same reasons discussed above. These portions of the transcript are admissible as statements of a party opponent and statements in furtherance of the conspiracy. Because these statements are in furtherance of the conspiracy since they conceal the existence of kickbacks, they are admissible against both defendants. These grounds for admission are only available to the Government, not to the defense. Thus, the defense may not argue that the entire transcript is admissible in order to get favorable testimony into evidence without giving the Government an opportunity to cross-examine Jonathan Markovich. While the rule of completeness can fairly be used to admit select other portions of the transcript to prove that the Government is taking something out of context, it does not justify the admission of hours' worth of testimony on other subjects that will not be subject to cross-examination.

multiple times and was consistently told by Jonathan Markovich to just do it a little longer and they will eventually do things the right way. In addition, Jonathan Markovich and Mr. Waserstein routinely provided Mr. Garnto with unusual gifts or favors, outside of his normal payroll and which the Government will argue in closing were kickbacks in exchange for recruiting patients. These gifts and favors frequently occurred whenever Mr. Garnto would threaten to leave his employment at Compass Detox because of the patient brokering. For example, Jonathan Markovich gave Mr. Garnto cars and a Rolex watch, and took Mr. Garnto on a luxury trip to Israel (along with Mr. Waserstein and his family). This was done, in Mr. Garnto's view, to keep Mr. Garnto in the fold and as payment for his participation in the kickbacks. Mr. Garnto will testify to all of this.

Mr. Waserstein and Jonathan Markovich pitched the Garland Avenue property as another favor after Mr. Garnto expressed a desire to leave. Mr. Garnto did not want to buy a house because he did not think he could afford it. Nonetheless, Mr. Waserstein and Jonathan Markovich told Mr. Garnto that it would be a good investment for Mr. Garnto and his family. They insisted that they wanted to help him out. They also told him that he would be able to afford the mortgage payments on what Compass Detox paid him. Furthermore, Mr. Garnto will testify that Jonathan and Daniel Markovich knew that Mr. Garnto could not afford the loan for the Garland Avenue house. Mr. Garnto witnessed Daniel Markovich, in the presence of Jonathan Markovich, modify Mr. Garnto's bank statements on the computer at Compass Detox. Jonathan Markovich then used his Compass Detox email address to email these falsified bank statements to Mr. Garnto, who provided them to the mortgage broker. Ultimately, after the first mortgage broker would not accept partial bank statements, they went to a new mortgage broker and Mr. Garnto received money from WAR which, as he discussed with Jonathan Markovich, was for the sole purpose of helping him afford to close

8

on the house. He then repaid that money to Mr. Waserstein at closing.[5]

The effect of buying this house, as Mr. Garnto will testify, was that Mr. Garnto was saddled with a mortgage payment that was much higher than what he had thought based on conversations with Mr. Waserstein and Jonathan Markovich and which he could not afford if he stopped working for Compass Detox. This was, in Mr. Garnto's view, a way for Mr. Waserstein and Jonathan Markovich to keep Mr. Garnto in the fold by framing this transaction as a massive favor to Mr. Garnto or a perk for his participation in patient recruitment.

### B. The Garland Avenue Transaction Furthered The Conspiracies.

The transaction is independent evidence of the kickback and money laundering conspiracies. This transaction would not have happened without either: (1) falsifying Mr. Garnto's assets to make it look like he could afford a loan; or (2) giving Mr. Garnto the money to buy the house. Jonathan Markovich and Mr. Waserstein paid Mr. Garnto over $90,000 from WAR, which the Government will argue was a kickback in exchange for Mr. Garnto's patient recruiting efforts. Beyond that, that money ended up right back in one of Mr. Waserstein's bank accounts when Mr. Garnto transferred him money for the closing. Thus, by selling this property, Mr. Waserstein, with the help of Mr. Garnto and Jonathan Markovich, laundered over $90,000 of fraud proceeds into one of his many business accounts.

### CONCLUSION

The Government respectfully requests that the Court reconsider its October 11, 2021 ruling excluding evidence of the false patient statements and Garland Avenue real estate transaction.

Dated: October 11, 2021                          Respectfully submitted,

                                                 JUAN ANTONIO GONZALEZ
                                                 ACTING UNITED STATES ATTORNEY
                                                 SOUTHERN DISTRICT OF FLORIDA

---

[5]  *See* Government Exhibits 495A-B; 496; 502A-B; 503A-C; 505; 508A-C; 513A-C.

                                                JOSEPH S. BEEMSTERBOER
                                                ACTING CHIEF, FRAUD SECTION
                                                CRIMINAL DIVISION
                                                DEPARTMENT OF JUSTICE

By:    */s/ Jamie de Boer*
        JAMES V. HAYES (FL Bar # A5501717)
        Senior Litigation Counsel
        JAMIE DE BOER (FL Bar #A5502601)
        Trial Attorney
        United States Department of Justice
        Criminal Division, Fraud Section
        1400 New York Avenue, N.W.
        Washington, D.C. 20005
        Telephone: (202) 774-4276
        James.Hayes@usdoj.gov
        Jamie.DeBoer@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 11, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*Jamie de Boer*