UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60020-CR-DIMITROULEAS

UNITED STATES OF AMERICA

v.

JONATHAN MARKOVICH, and
DANIEL MARKOVICH,

       Defendants.
_____/

## MOTION IN *LIMINE* TO STRIKE C. GARNTO'S TESTIMONY, IN PART

The Defendants, Jonathan Markovich and Daniel Markovich (collectively referred as the "Markoviches"), respectfully move the Court to strike a portion of Christopher Garnto's ("GARNTO") testimony, dealing with his brother, K.G. Specifically, this Court has ordered that the overdose and death of K.G., GARNTO's younger brother, amongst other former Compass patients, not be mentioned in this trial. (*See* D.E. 275.) Evidence of K.G.'s death is irrelevant to the issues in this case, and highly prejudicial under Rule 403, and all mention of K.G. should be struck from the record. The jury should be explicitly instructed as such.

With respect to former patients' deaths, particularly K.G., the Court held as follows in its Order: "At this point evidence of [] K.G's death [is] inadmissible, absent the Government's proffering outside the presence of the jury an argument that the door has been opened by the defense to that evidence. Evidence of a victim's vulnerability may be offered at sentencing should there have been a conviction in this case." (*Id*.)

Nonetheless, the government has now repeatedly mentioned overdoses and deaths in the context of treatment of patients at Compass Detox ("Compass") and/or We Are Recovery

("WAR"), or has disingenuously skirted the line in doing so, to give the jury the false impression that the Markoviches, through their ownership and/or operation of these facilities, have killed addicts. For example, during Mario Kustura's ("KUSTURA") testimony, the following dialogue occurred with respect to patient A.N.:

> BY MS. DE BOER:
> Q. What did [A.N.] say in response?
>
> A. She said: When do you go in? Tonight? All I need to hear is you'll keep me safe, and I'll come.
>
> Q. All right. What did you tell [A.N.] then?
>
> A. I said: You know I'll keep you safe and take care of you, and that's a promise.
>
> Q. This is going to be a little bit difficult for you, Mr. Kustura, but did you keep that promise?
>
> A. No, I didn't.
>
> Q. Now, you said a second ago, Mr. Kustura, that you didn't keep your promise to [A.N.] to keep her safe. What happened?
>
> MS. DESCALZO: Objection, Your Honor. We have a motion about this.
>
> …
>
> MS. DESCALZO: Thank you, Judge. This testimony -- what I believe this testimony is going to be is that his girlfriend left WAR AMA, and he took her to a RaceTrac gas station a couple of days later, after leaving WAR, and she overdosed there because Mr. Kustura bought her drugs. The overdose did not happen at WAR. It cannot be connected to the Markoviches at all. It was purely what Mr. Kustura did.
>
> THE COURT: Ms. De Boer?
>
> MS. DE BOER: The fact that Mr. Kustura took her to buy drugs and she overdosed, which she did fortunately survive from, is accurate. It actually can be connected to Jonathan Markovich and Christopher Garnto because they were both aware that this was happening, that

2

>the patients -- there was a third patient involved as well -- were leaving WAR to go use drugs. And Jonathan Markovich's instruction to Mr. Kustura was to make sure they come back to Compass, and that's, in fact, what happened.
>
>THE COURT: I think the probative value is outweighed by the prejudice, so I'll sustain the objection.

*See* 9/23/21 Transcript, 189:20 – 190:4; 191:16 – 192:21.

As well, during Meredith Feinberg's testimony, the following was elicited:

>BY MR. HAYES:
>Q. Finally, why are you testifying here today?
>
>A. Because I know that Compass Health killed people, ultimately, and that's what happens with these bad rehabs.
>
>MS. JOHANNES: Objection, Your Honor. Move to strike.
>
>THE COURT: Sustained.
>
>BY MR. HAYES:
>Q. Were there things that made you uncomfortable?
>
>A. There were things that made me very, very uncomfortable.

*See* 9/27/21 Transcript, 52:10 – 18.

Most recently, on 10/14/21, the government chose to discuss K.G. with GARNTO, in the following exchange:

>BY MS. DE BOER:
>Q. Okay. Now, Mr. Garnto, I want to ask you about something that's somewhat personal. You mentioned your brother, Kyle. Did he ever become a patient at Compass?
>
>MS. DESCALZO: Objection, Your Honor. Motion.
>
>THE COURT: Approach the sidebar.
>
>(The following proceedings were held sidebar:)
>
>MS. DESCALZO: Your Honor, I'm not sure what Ms. de Boer is trying to ask the witness, but that patient, his brother, died of an

3

overdose. So I don't know what areas she's getting into and what she's trying to do.

MS. DE BOER: I'm not asking about the overdose, and the witness has been instructed not to speak about any overdoses or deaths.

THE COURT: Okay.

(Proceedings returned to open court.)

BY MS. DE BOER:
Q. Okay. So Mr. Garnto, mindful of the Court's rulings on this topic, was your brother ever a patient at Compass?

A. Yes.

Q. Did your brother have a drug addiction?

A. Yes.

Q. What was his substance of choice?

A. Alcohol and heroin.

MR. PASANO: Your Honor, at this point, relevance. Objection.

THE COURT: Approach the bench sidebar.

(The following proceedings were held sidebar:)

THE COURT: Tell me what's the relevance.

MS. DE BOER: I'm concerned that on cross, he's going to be asked why he would allow his brother to be a patient at Compass when he just spent two days testifying about –

THE COURT: Well, if he does that, you can bring it up on redirect. Okay. Let's stay away from it.

*See* 10/14/21 Transcript, 201:15 – 202:24.

By way of background for the Court, K.G. was GARNTO's younger brother, an addict, former patient at Compass, and former employee of the call center. K.G. was an employee at the call center – and ***not*** a patient at Compass or WAR – when he died of a heroin overdose. In fact,

4

KUSTURA, GARNTO's friend and a government cooperator, provided K.G. with the money (and contact information for a drug dealer) to purchase the heroin that caused K.G.'s overdose. KUSTURA wrote an apology letter to K.G. during a therapy session at Compass, admitting to such conduct and seeking forgiveness, which is located in his Zen Charts patient records. The defense specifically steered away from asking KUSTURA about this letter during his testimony, given the Court's order in D.E. 275.

Importantly, neither Jonathan nor Daniel Markovich had anything to do with K.G. obtaining heroin or relapsing. To be clear, **_NONE_** of the former patients who have since overdosed and died did so in the care, custody, and/or control of Compass and/or WAR. The government knows that. For example, patient A.N., mentioned by KUSTURA, is now sober, married, and the mother of a daughter. Despite knowing this, the government seems intent on prejudicing the jury against the Markoviches by alluding to, or flat-out mentioning, patient deaths and overdoses.

The defense submits that is exactly what the government was trying to do by mentioning K.G. during GARNTO's testimony. Indeed, what the transcript does not reflect, which was incredibly prejudicial to the Markoviches, was that GARNTO was crying uncontrollably for a few minutes after the government mentioned his brother's name. His answer regarding his brother's drugs of choice, that is, alcohol and heroin, were barely audible due to his bawling, tears and sniffles. Further, the jury knows that this topic is a sensitive one, as two sidebar discussions were held in the course of five minutes. The defense fears that such testimony is like a bell ringing – once it is rung, it cannot be un-rung. This is specifically why the defense filed a motion in *limine* on the issue of deceased patients – any such reference or mention thereto is so prejudicial that granting a motion to strike the testimony is merely a futile attempt to "unring" a bell. *See, e.g.,*

*United States v. Morena*, 547 F.3d 191 (3rd Cir. 2008); *Luce v. United States*, 469 U.S. 38, 40 n. 2, (1984); *Berger v. United States*, 295 U.S. 78, 84 (1935).

Though the Court ultimately instructed the government to change topics, due to the lack of relevancy and prejudicial nature of the topic, GARNTO's testimony regarding K.G. was never struck from the record. Moreover, due to this spectacle, the defense is concerned that the jury is now left with the false impression that Compass harmed K.G., and thus, feel sympathy for GARNTO, and detest for the Markoviches, which is unwarranted. Such tactics by the government are completely improper and need to stop. The Court has issued an order on this matter, has sustained the defense's objections regarding such testimony, and, yet still, the government continues to try to elicit such irrelevant and highly prejudicial testimony from witnesses. The defense not only requests that the Court instruct the government not to do so moving forward, but instruct the jury that they must disregard such testimony by GARNTO, as it is completely misleading and inappropriate.

Last, the defense notes that we have been in trial for approximately twelve (12) days total, over a month long period. The defense does not wish for there to be a mistrial in this case. However, if the government continues to engage in such deliberative and prejudicial tactics, the defense will have no choice but to seek a mistrial (dismissing the case with prejudice), based on such repeated solicitation of clearly inadmissible testimony by the government. The government should be seeking to win this trial based only on admissible evidence of healthcare fraud – not sob stories and sympathy related to overdoses and death, an unfortunate by-product of the opioid and addiction crisis in America. By doing so, the government is forcing the defense to unnecessarily refute this point – which is not the defense's burden to bear, nor what this trial is about.

Based on the foregoing, the defense seek an instruction to the government to cease any hinting, or mention, of patients' overdoses and/or deaths, as well as a cautionary instruction to the jury to disregard any mention by GARNTO of his younger brother, K.G., for such testimony is irrelevant to the case; has nothing to do with the Markoviches; and is improper for consideration in this case.

Dated: October 18, 2021

Respectfully submitted,

| | |
|---|---|
| s/ *Marissel Descalzo* | s/ *Vanessa Singh Johannes* |
| Marissel Descalzo (FBN 669318) | Vanessa Singh Johannes (FBN 1028744) |
| Email: mdescalzo@tachebronis.com | Email: VJohannes@carltonfields.com |
| Tache, Bronis, and Descalzo, P.A. | Michael S. Pasano (FBN 475947) |
| 150 S.E. 2 Ave., Suite 600 | E-mail: mpasano@carltonfields.com |
| Miami, FL 33131 | CARLTON FIELDS |
| Tel: 305-537-9565 | 700 N.W. 1st Avenue, Suite 1200 |
| *Counsel for Daniel Markovich* | Miami, Florida 33136-4118 |
| | Telephone: (305) 530-0050 |
| | *Counsel for Jonathan Markovich* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was filed via CM/ECF, and served on all counsel of record appearing on CM/ECF, including counsel for the United States, on this 18th day of October, 2021.

By: */s/ Vanessa Singh Johannes*
Vanessa Johannes, Esq.