UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CR-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

JONATHAN MARKOVICH, and
DANIEL MARKOVICH,

         **Defendants.**
_____/

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' JONATHAN MARKOVICH AND DANIEL MARKOVICH JOINT MOTION FOR BOND PENDING SENTENCING

The United States, through undersigned counsel, hereby opposes Defendants Jonathan Markovich and Daniel Markovich's Joint Motion for Bond Pending Sentencing [D.E. 401] ("Motion"). Both Defendants were convicted of every count alleged against them that reached the jury, and both now face the possibility of decades in prison. That is starkly different from their reality a mere week ago, where they faced the possibility of a full acquittal, and had every reason to show up to Court to fight for that result. The same is true for the time period after their arrest just over a year ago. Now, they have every reason to flee to avoid years of incarceration. As the Government's evidence showed during trial, they also have the means and sophistication to do so. These two basic facts show that they are a flight risk pending sentencing. The Markoviches' Motion fails to meet their burden to show otherwise by clear and convincing evidence. They should therefore remain in custody until their sentencing in January 2022.

1

**LEGAL STANDARD**

The detention and release of a defendant following their conviction is governed by Title 18, United States Code, Section 3143(a). Under the subsection applicable to the Markovich Defendants the Court

> shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence … to be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released ….

18 U.S.C. § 3142(a)(1). Thus, under Section 3143(a)(1), Defendants must show by clear and convincing evidence that they are not a flight risk and do not pose a danger to the community to overcome the mandatory presumption of detention after conviction. See United States v. Grobman, 460 F. Supp. 3d 1341, 1347, 2021 WL 1723395 (S.D. Fla. Apr. 30, 2021) (Altman, J.). The Markoviches' Motion fails to satisfy this standard, and they do not meet their burden to overcome the presumption of detention.

**ARGUMENT**

I. **Defendants Now Face Substantial Prison Sentences for Serious Crimes, And Thus Have An Incentive to Flee.**

The jury convicted both Defendants of every count presented to them, including, as to both Defendants, conspiracy to commit health care and wire fraud (which carries a twenty-year maximum sentence), conspiracy to violate the Eliminating Kickbacks in Recovery Act ("EKRA") (which carries a five-year maximum sentence), and substantive counts of each (which carry ten-year maximum sentences). J. Markovich was also convicted of multiple money laundering charges (which carry twenty-year or ten-year maximum sentences depending on the count) and bank fraud charges (which carry thirty-year maximum sentences).

The Defendants were convicted of a serious, extremely profitable, years-long fraud that they directed and controlled. The likely range of possible sentences for each Defendant under the United States Sentencing Guidelines will therefore be lengthy. In addition to the base level Guidelines calculations, enhancements that increase the Guidelines calculations will likely be imposed. For example: the $112 million loss alleged by the Government is enormous; the Defendants were both leaders of the scheme; the Defendants used sophisticated means to carry out the scheme; the victims were numerous, and included multiple insurance companies and patients; and, finally, and crucially, the patients were vulnerable victims whom the evidence showed were harmed by the Defendants' conduct.[1] Accordingly, there is little question that the Defendants will serve a substantial amount of prison time, and their current period of incarceration will count toward any term of incarceration imposed by this Court.

Simply put, until their conviction, Jonathan and Daniel Markovich did not have an incentive to flee. But now they absolutely do because they face years in prison, and this fact alone argues in favor of detention.

## II.     Defendants Were Convicted of Crimes Based On Deceit And Fraud, And Have Lied In Other Contexts, Which Warrants Their Detention.

Defendants were convicted of a fraud scheme "premised on deception." Grobman, 460 F. Supp. at 1338. They repeatedly lied to insurance companies by causing the submission of approximately one hundred and twelve million dollars in fraudulent claims. As the Government's witnesses testified at trial, health insurance is a "trust-based" system that depends on authentic

---

[1] The Government's conservative estimate at this time based on Defendants' top counts of conviction (without knowing how additional conviction counts may be grouped), and likely enhancements, is that: Jonathan Markovich's total offense level will be a 39, which could result in a possible sentence of 262-327 months; and Daniel Markovich's total offense level will be a 36, which could result in a possible sentence of 188-235 months, or, based on his role, a 37, which is could result in a possible sentence of 210-262 months. Such possible sentences in and of themselves provide a strong incentive to flee.

3

information from providers; Defendants exploited this system for their own gain and lied not once, not hundreds, but thousands of times over the course of years.  Further, they were shown at trial to have forged and altered medical files and other documents.  Daniel Markovich personally altered scores of documents in patients' medical files to foil insurance audits, as the Government proved at trial.

Moreover, while such evidence was not admitted at trial, as shown in its motion to admit various kinds of evidence, Defendants (Jonathan Markovich in particular) lied in other contexts.  [D.E. 339].  For example:  Jonathan Markovich lied under oath in his deposition when he stated Compass Detox did not pay for any flights for its patients, and that neither any employees nor patients had reported to him that patients were paid kickbacks to attend Compass.  [Id. at 9-10].  Defendants sought to create false attestations from patients, as the Government detailed in the same motion.  [Id. at 2-6].  Finally, both Defendants helped falsify Christopher Garnto's bank records to qualify him for a mortgage.  [Id. at 11-12].

Accordingly, given their demonstrated tendency to engage in deception whenever it suited them for financial gain and to avoid detection of their crimes, Defendants cannot be trusted now when they promise to abide by any bond conditions.  See, e.g., Grobman, 460 F. Supp. 3d at 1338 (Defendant's "fundamental lack of respect for the rule of law undermines his claimed willingness to abide by any bond conditions the Court might impose.") (quoting United States v. Norman, 2009 WL 464078, at *3 (S.D. Fla. Feb. 24, 2009)).

### III. Defendants' Prior Compliance With Bond Conditions And Their Proposed Bond Package Do Not Remove The Risk of Flight Posed By The Substantial Prison Sentences They Now Face.

While the Defendants have shown up for every Court proceeding until their convictions, they enjoyed a presumption of innocence and the possibility of acquittal every time they walked into the courtroom. They had every reason to show up. And, if they had fled, as lawyers themselves they knew they would have had little chance of meaningfully contesting the charges alleged in the Indictment if they were ever apprehended. Now, the tables have turned, and the Defendants have a clear incentive to abscond in order to avoid incarceration, and little to lose by doing so. Things have changed now that they are convicted. It is that simple.

In addition, Defendants have now served several days in prison for the first time in their lives. They know exactly what it will be like when they are sentenced, and are thus even more likely to attempt to avoid more time in prison.

While the Government appreciates the additional efforts the Defendants have taken to attempt to arrange a bond that they assert will assure their appearance, that does not negate the severity of the crimes for which the Defendants were convicted. Both of these Defendants, who are attorneys, knew that they were committing incredibly serious crimes that harmed vulnerable people. They took steps to cover it up and get away with their crimes. They knew that they could face consequences for their conduct. They knew that they were hurting people, including the very people that on multiple occasions they represented to the State of Florida and to the public that they were seeking to help.

The Defendants' representation that they will not flee because it would put their family and rabbi in a difficult financial situation in attempting to satisfy a bond rings hollow. Such a promise is no better than their representations to the State of Florida throughout this conspiracy to adhere

to the law. It simply is not sufficient evidence that the Defendants will continue to appear. Electronic monitoring and other conditions do not suffice for the same reasons. The Defendants could easily evade electronic monitoring if they chose to do so.

### IV. Defendants Other Arguments For Bond Fail.

Likewise, the Defendants' desire to be with their families is not a valid basis for release. The Defendants chose to commit their crimes despite the fact that they had loving families who supported them. The Defendants chose to commit their crimes despite the fact that they might be criminally charged, convicted, and incarcerated. Their family ties did not deter the Defendants from committing numerous crimes in the past, nor would it deter them from attempting to escape the consequences of those crimes.

The Defendants' argument that they must be out of prison to participate in post-trial litigation is similarly unavailing. Many defendants in this district participate in every aspect of the criminal process while incarcerated. Defense counsel can communicate with their clients while they are incarcerated, and the Defendants can participate in further litigation and be brought to Court by the U.S. Marshall to participate in any further proceedings.

Furthermore, the Defendants' claim that they lack the financial means to flee is just not accurate. As proven at trial, the Defendants profited greatly from their crimes. They also have additional assets, including homes and vehicles, that the Government has not seized. Their remaining assets could easily suffice to fund their flight.

## V. Defendants Will Not Be Granted a New Trial.

Finally, the Defendants' argument that they should be released because they are likely to be granted a new trial utterly fails. This Court gave the Defendants a fair trial. The Defendants were allowed to re-cross the Government's witnesses, and in fact got the last word on almost every witness called in the Government's case. The Court admitted certain testimony and exhibits subject to a motion to strike if the co-conspirator exception was not satisfied, but the evidence was so overwhelming that the Defendants never even moved to strike that evidence. The Court even excluded in an abundance of caution substantial portions of the Government's evidence, such as the fraudulent real estate transactions that facilitated the kickback and money laundering schemes, the efforts that both Defendants took to create false statements from patients in response to learning of the Government's investigation, and J. Markovich's false testimony under oath in a deposition that Compass never paid for flights for patients, and that he never heard any patients nor employees complain that patients were getting paid kickbacks. The evidence at trial was nonetheless overwhelming in support of the charges, as shown by the jury's unanimous verdict on all counts.

The Defendants' contention that the Government failed to prove that every single patient was mistreated or somehow part of the fraud is simply irrelevant. The Government made clear from opening statements, and said it over and over in closing argument, that this case was not about the patients that may have gotten better at Compass, it was about the core group of patients who got no real treatment and, instead, were provided with incentives or substances that fueled their addictions.

In light of the severity and deceitful nature of their crimes, the sophistication of the Defendants, their financial resources, and the likelihood that the Defendants will spend substantial time in prison, both Defendants should be detained and remain in custody pending their sentencing, which is scheduled to occur in a mere two months.

## CONCLUSION

For the foregoing reasons, the Defendants' Joint Motion for Bond Pending Sentencing should be denied.

Dated: November 12, 2021

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

By:  /s/ James V. Hayes
JAMES V. HAYES (FL Bar # A5501717)
Senior Litigation Counsel
JAMIE DE BOER (FL Bar #A5502601)
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 774-4276
James.Hayes@usdoj.gov
Jamie.DeBoer@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 12, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*James V. Hayes*