UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cr-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

JONATHAN MARKOVICH, and
DANIEL MARKOVICH,

      **Defendants.**

_____/

**UNITED STATES' OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORTS FOR JONATHAN AND DANIEL MARKOVICH**

The United States, through undersigned counsel, hereby files its limited objections to the Presentence Investigation Reports ("PSIs") for Defendants Jonathan Markovich and Daniel Markovich [D.E. 468 and 473, respectively]. The Government generally agrees with the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") as calculated by U.S. Probation in the PSIs, but recommends several changes to the offense level calculations for both Defendants. Notably, these changes do not result in any net change of the total offense level for J. Markovich, and result in an increase of only two offense levels for D. Markovich.

As to both Defendants, the Government recommends a vulnerable victim enhancement under U.S.S.G. § 3A1.1(b)(1) of four levels, rather than the two levels recommended by the PSIs, as the crimes involved a large number of vulnerable patient victims. In addition, as to J. Markovich, the Government submits that Count 1 (conspiracy to commit health care fraud and wire fraud) results in a higher total offense level than does Count 24 (conspiracy to commit money laundering); therefore, Count 1 should drive the Sentencing Guidelines' calculation. However,

under either calculation, the total offense level for J. Markovich is treated as a 43, which translates to a guidelines range of life in prison.

As to D. Markovich, the Government recommends the following changes to the Sentencing Guidelines calculations, which (along with the four-level vulnerable victims enhancement), yield a total offense level of 40, which results in a sentencing range of 292 to 365 months' imprisonment: (1) reduce the loss amount to under $65 million (which reduces the offense level calculation by two points under § 2B1.1(b)(1)(L)); but (2) add an enhancement for sophisticated means under §2B1.1(b)(10) for D. Markovich's role in the widespread falsification of patient files (which adds two points to the offense level calculation).[1]

## LEGAL STANDARD

"[T]he government generally has the burden of proving a guideline enhancement by a preponderance of the evidence." *United States v. Carillo-Ayala*, 713 F.3d 82, 90 (11th Cir. 2013). In determining the appropriate advisory Guidelines range, a sentencing court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). A sentencing court is afforded wide latitude to make credibility determinations when determining the facts supporting specific Guidelines enhancements or adjustments. *See United States v. Gregg*, 179 F.3d 1312, 1316 (11th Cir. 1999) ("We accord great deference to the [sentencing] court's credibility determinations.").

---

[1] The Government simply addresses its objections to the guidelines calculations in this filing. The Government does not address the section 3553(a) factors or make a recommendation as to the ultimate sentence to be imposed by the Court. The Government intends to submit a further sentencing memorandum that will respond to any objections filed by the defendants and provide additional information regarding the defendants and offenses for consideration by the Court at sentencing.

## ARGUMENT

**I.    A Four-Level Vulnerable Victims Enhancement Applies To Both Defendants.**

For both defendants, Probation recommends a **two-level** enhancement for vulnerable victims under U.S.S.G. § 3A1.1(b)(1).  The Sentencing Guidelines provide for a **four-level** enhancement when a large number of vulnerable victims were involved. U.S.S.G. § 3A1.1(b)(2). Here, the United States recommends the application of the **four-level** enhancement, given the sheer number of vulnerable patients who were victimized by the Markoviches (almost a thousand patients).

Patients who were supposed to be under the care of Compass Detox were routinely over-medicated and sedated, sometimes to the point that they hallucinated.  This was done with the Markoviches' approval and, sometimes, over the objection of nursing staff.  Patients were essentially kept high at Compass Detox, and given medications such as the comfort drink that they craved.  This was not done to merely a handful of patients; rather, overmedication was the treatment plan at Compass Detox.  As the Government's consultant showed, roughly 98% of patients in a sample analyzed by the consultant were prescribed the comfort drink once it was implemented at Compass Detox.  In addition, J. Markovich directed and funded the payment of patients, and, through other patient brokers under his control, assisted patients in getting high on alcohol, controlled substances, or illegal drugs so that they would appear qualified for admission to detox.  D. Markovich was aware of these practices and, while he voiced his distaste for this, he continued to allow it to happen while serving as CEO of Compass Detox.  These practices put patients at great risk of overdose and, at minimum, undermined the patients' abilities to get sober.

This falls squarely within the types of harm, including "bodily injury," contemplated under U.S.S.G. § 1B1.3, Appl. N. 6(A).  Thus, the patients who were given illegal drugs or who were

over-medicated at Compass Detox are "victims." See U.S.S.G. § 2B1.1, Appl. N. 1 (defining victim to include "(A) any person who sustained any part of the actual loss determined under subsection (b)(1); or (B) any individual who sustained bodily injury as a result of the offense."). These victims are also "vulnerable" for purposes of U.S.S.G. § 3A1.1(b)(1), as their addictions made them "particularly susceptible to the criminal conduct." *United States v. Lilliston*, 734 F. App'x 749, 750 (11th Cir. 2018) (quoting U.S.S.G. § 3A1.1 Appl. N. 2). Given the dozens of patients paid to attend Compass Detox or get high before attending, and the hundreds of patients who were overmedicated at Compass Detox, the **four-level** enhancement is appropriate. These patients were addicted to opiates, and thus in danger of overdosing and/or relapsing, at any time. Defendants exploited them for money despite this obviously vulnerable condition. Defendants victimized vulnerable young addicts for money, and not simply a small discrete amount of them, but hundreds of them; it is that simple.

II.     **Objections To J. Markovich's Presentence Investigation Report [D.E. 468]**

The United States agrees with Probation's determination that J. Markovich's total offense level is treated as a 43 (the maximum offense level recognized under the Sentencing Guidelines), which translates to a Sentencing Guidelines range of life in prison (before accounting for any variances under section 3553(a)). However, in this case, J. Markovich's total offense level should be calculated under Count 1 (conspiracy to commit health care fraud and wire fraud), rather than Count 24 (conspiracy to commit money laundering). The calculation under Count 1 accounts for different and additional enhancements than permitted under Count 24, which results in a total offense level of 45 (which is treated as an offense level of 43 under the Sentencing Guidelines).

As the PSI correctly recognizes, counts involving substantially the same harm are grouped together. See U.S.S.G. §§ 3D1.1(a), 3D1.2. In this case, consistent with the PSI's determination,

4

the money laundering counts should be grouped with the health care fraud, wire fraud, and kickback counts because the money laundering counts "embod[y] conduct that is treated as a specific offense characteristic in, or other adjustment to, the guidelines applicable" to the fraud and kickback counts. U.S.S.G. § 3D1.2(c).[2] The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level, and increasing the offense level based on the table in U.S.S.G. § 3D1.4.

As set forth below, Count 1 results in a higher total offense level and should therefore dictate J. Markovich's Sentencing Guidelines' calculation. *See* § 3D1.3(a) ("In the case of counts grouped together pursuant to §3D1.2(a)–(c), the offense level applicable to a Group is the offense level . . . for the most serious of the counts comprising the Group, *i.e.*, the highest offense level of the counts in the Group."). Under the United States' calculations, set forth below, the total offense level under Count 24 is 41, whereas the total offense level under Count 1 is 45 (treated as 43).

### A. Guidelines Calculation for Count 1 (Conspiracy to Commit Health Care Fraud and Wire Fraud)

Base Level Offense:  The initial base offense level is **seven** because the maximum term of imprisonment for wire fraud is twenty years. *See* § 2B1.1(a)(1). The base offense level is then increased by **24 levels** because J. Markovich is responsible for an intended loss of at least $65,000,000 but less than $150,000,000. *See* § 2B1.1(b)(1)(M).[3] Because the offense involved

---

[2]  The bank fraud counts (Counts 34 and 35) should be grouped separately because they have a distinct victim, but the Government agrees with the PSI that the bank fraud counts do not drive the guidelines calculation in this case.

[3]  Because the Government does not object to the PSI's calculation of loss for J. Markovich, the Government does not go into further detail in these objections. Instead, the Government will further explain its basis for a reasonable estimate of loss in a sentencing memorandum or at sentencing. However, the Government notes that it did not contend at the Markoviches' trial that every patient was part of the fraud and even conceded that some patients may have obtained legitimate treatment while at Compass Detox. However, given J. Markoviches' involvement in

5

10 or more victims, the base offense level is further increased by **two levels**. *See* § 2B1.1(b)(2)(A)(i). The base offense level is then increased by an additional **two levels** for sophisticated means. *See* § 2B1.1(b)(10)(C). This calculation results in a base offense level of **35**.

<u>Adjustments</u>: As properly calculated by Probation, a **four-level** enhancement for role under § 3B1.1(a), and a **two-level** enhancement for obstruction of justice would also apply.

The Government notes that, in addition to the grounds for application of the obstruction of justice enhancement noted by Probation, the obstruction of justice enhancement applies for an independent reason as well. As the Government has explained in prior filings [D.E. 339], J. Markovich lied under oath in a deposition about flights provided to Compass Detox patients. When asked under oath: "Has Compass Detox ever paid for a flight for a patient?", J. Markovich answered: "No." GX 841, 11/19/2019 Deposition Testimony of J. Markovich, at 117:12-14. As the Government proved at J. Markovich's trial, this is flatly false. Indeed, the Government presented witness testimony, emails, flight records, and Compass Detox financial statements showing the exact opposite.

Furthermore, J. Markovich testified in this deposition that he was unaware of any patients who "said they received money to come to Compass Detox[,]" and even that he was unaware of any employee reporting to him that "patients were receiving money to come to Compass Detox." *Id.* at 107:24-108:6. Again, the Government proved that this was false. The Government presented witness testimony, along with text messages and emails showing that J. Markovich was informed

---

Compass Detox, WAR and the laboratory testing at issue in this case—for which a total of approximately $112 million was billed—even applying a reasonable discount to that total figure would still yield a loss figure well above $65 million. Thus, the offense level calculation in the PSI for loss as to J. Markovich is correct.

of patients stating they received money on multiple occasions. Indeed, the Government proved that the money came from J. Markovich and that J. Markovich directed the kickback scheme.

In addition, Mario Kustura testified that J. Markovich informed him of the Government's investigation and directed that, if Kustura was ever approached by law enforcement, to tell law enforcement that Kustura was simply a patient and nothing more. As the evidence proved at trial, and Kustura's own guilty plea demonstrate, that was a lie intended to thwart the investigation. Tr. Sept. 23, 2021 at 212:22-213:23 (M. Kustura: "Jonathan told me, listen, if anybody comes asking you anything about Compass or WAR or anything, he said deny everything and always just say that you were a patient here and that's it; that you don't know anything else.").

Furthermore, while Probation recommended a two-level enhancement for vulnerable victims, the United States believes that a **four-level** vulnerable-victim enhancement under § 3A1.1(b)(2) is appropriate under the facts of this case given the number of patient victims involved, as discussed above.

Total Offense Level: Based on this calculation, the Total Offense Level for Count 1 is **45**.

**B.  Guidelines Calculation for Count 24 (Conspiracy to Commit Money Laundering).**

Base Offense Level: Under U.S.S.G. § 2S1.1, the base offense level is the "offense level for the underlying offense from which the laundered funds were derived, if the defendant committed the underlying offense . . . ." Using Count 1 as the underlying offense, the base offense level is **35**, as calculated above.

Specific Offense Level: Because the defendant was convicted under 18 U.S.C. § 1956, the offense level is increased by **two levels**. See § 2S1.1(b)(2)(B).

Adjustments: Section 2S1.1 Application Note 2(C) provides that the "application of any Chapter Three adjustment shall be determined based on the offense covered by this guideline (*i.e.*,

7

the laundering of criminally derived funds) <u>and not on the underlying offense from which the laundered funds were derived</u>." Accordingly, when using the money laundering counts to calculate the total offense level, a **two-level** enhancement for obstruction of justice would apply.

However, an enhancement for role as to money laundering would be limited to a two-level enhancement under U.S.S.G. § 3B1.1(c), since only two individuals (J. Markovich and Waserstein) were involved in laundering the funds at issue in this case. In addition, under the calculation for Count 24, the United States does not apply the vulnerable victim adjustment (§ 3A1.1(b)) because the patients are vulnerable victims of the underlying fraud offenses, not of the laundering of the criminally derived funds. *See* 2S1.1 App. N. 2(c).

Total Offense Level:  Based on this calculation, using the money laundering counts to determine the Total Offense Level for the Group would result in a Total Offense Level of **41**.

\*   \*   \*   \*

When properly calculated, the total offense level for Count 1 (an offense level of 45) is the most serious of the counts comprising the Group, and the Sentencing Guidelines range should be determined based on this calculation. However, as correctly noted in the PSI, an offense level greater than 43 is treated as an offense level of 43. Therefore, even applying the United States' calculation, J. Markovich's total offense level is a 43, as Probation concluded.

### III.     Objections to D. Markovich's Presentence Investigation Report [D.E. 473]

The United States objects to Probation's Guidelines' calculation for D. Markovich because: (i) D. Markovich's loss amount likely falls under the $65 million threshold, thus lower than what Probation calculated; (ii) a sophisticated means enhancement applies for D. Markovich's role in the widespread falsification of patient files; and (iii) a four-level vulnerable-victim adjustment under § 3A1.1(b)(2) is appropriate under the facts of this case.

First, the United States calculates the loss for D. Markovich's offenses as falling within the range of $25 million to $65 million. D. Markovich was CEO of Compass Detox, but he was not employed at WAR and did not organize the relationships with outside labs in the same way that J. Markovich did. Nor did D. Markovich receive kickbacks from the labs. Thus, D. Markovich was not charged with substantive health care fraud counts associated with WAR, and the Court dismissed Counts 2, 3, and 4 (which were bills by laboratories) as to D. Markovich under Rule 29. Therefore, in the Government's view, the PSI overstates the loss amount attributable to D. Markovich; the maximum loss would therefore be the $80 million that Compass Detox billed to insurance companies. Because the United States does not take the position that every penny Compass Detox billed was fraudulent, it is possible, and even likely, that D. Markovich's loss falls under the $65 million threshold. The United States therefore objects to Probation's determination that the loss amount for D. Markovich is over $65 million.[4]

Second, the United States disagrees with Probation's omission of the sophisticated means enhancement in § 2B1.1(b)(10)(C) as to D. Markovich. As the evidence at trial showed, D. Markovich repeatedly directed and participated in the widespread fabrication of therapy and medical notes in order to pass insurance audits and, ultimately, be paid for services for which Compass Detox and WAR had billed but had not in fact provided.[5] D. Markovich directed medical and clinical staff to create therapy and medical notes months after patients had left to reflect clinical or medical services that were never rendered. D. Markovich also directed the revision of notes

---

[4] Again, the United States will be prepared to present more detailed calculations of loss. For the purposes of these objections, the United States simply explains what loss band each Defendant will fall within.

[5] J. Markovich also participated in the falsification of patient files and knew that it was happening.

well after the fact—for example, therapy notes that once said that the patient was absent from a therapy session were revised to state that the patient was present and even reflect quotations that the patient supposedly stated at the time. On the medical side, nursing notes and even doctors' evaluations were revised or created well after patients discharged. D. Markovich would receive these fabricated notes from other staff and personally back-date them so that it would appear to insurance companies that the notes were created at the time the patient was in treatment.

This is the epitome of sophisticated means. The Eleventh Circuit has affirmed the application of the sophisticated means enhancement in cases involving the falsification of medical records to create the appearance of legitimate treatment. *See, e.g.*, *United States v. Bane*, 720 F.3d 818, 826–27 (11th Cir. 2013) (upholding application of the sophisticated means enhancement in a Medicare fraud case where the defendant engaged in "repetitive coordinated conduct" that involved falsifying medical documents). That enhancement is similarly applicable here.

Third, for the same reasons discussed above, the vulnerable victim enhancement in this case should be **four levels** instead of two levels that Probation calculated.

The United States therefore submits that the appropriate Guidelines calculation for D. Markovich is as follows:

| | |
|---|---|
| Base Offense Level (§ 2B1.1(a)(1)) | 7 |
| Loss Greater than $25,000,000 but less than $65,000,000 (§ 2B1.1(b)(1)(L)) | +22 |
| Ten or more victims (§ 2B1.1(b)(2)(A)(i)) | +2 |
| Sophisticated means (§ 2B1.1(b)(10)(C)) | +2 |
| Vulnerable Victim Adjustment (§ 3A1.1(b)(2)) | +4 |
| Role enhancement (§3B1.1(b)) | +3 |
| **TOTAL OFFENSE LEVEL** | **40** |

## CONCLUSION

The United States respectfully objects to the PSIs and asks the Court to include, for both defendants, a four-level enhancement because the crimes victimized a large number of vulnerable victims. As to J. Markovich, the United States as the Court to calculate the total offense level based on Count 1, rather than Count 24, which yields a total offense level of 45 (treated as a 43). As to D. Markovich, the United States asks the Court to apply loss calculation of $25 million to $65 million (rather than a loss of over $65 million) and a sophisticated means enhancement, putting D. Markovich's total offense level at 40. Aside from these objections, the United States otherwise agrees with the PSIs' calculations.

Dated: March 4, 2022

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

By: /s/ Jamie de Boer
JAMES V. HAYES (FL Bar # A5501717)
Senior Litigation Counsel
JAMIE DE BOER (FL Bar # A5502601)
Trial Attorney
ANDREA SAVDIE (FL Bar # A5502799)
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 774-4276 (Hayes)
Telephone: (202) 304-6801 (de Boer)
Telephone: (202) 262-6453 (Savdie)
James.Hayes@usdoj.gov
Jamie.DeBoer@usdoj.gov
Andrea.Savdie@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 4, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Jamie de Boer*