UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CR-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

JONATHAN MARKOVICH and
DANIEL MARKOVICH,

           **Defendants.**
_____/

## UNITED STATES' SENTENCING MEMORANDUM REGARDING DEFENDANTS JONATHAN AND DANIEL MARKOVICH

The United States of America, through undersigned counsel, respectfully submits this Sentencing Memorandum in advance of the sentencings for Jonathan and Daniel Markovich. The Government previously filed objections clarifying aspects of the PSI's Sentencing Guidelines calculations for the Markoviches. [D.E. 540.] The Markoviches also filed objections to the draft PSI. [D.E. 543, 548.] This Sentencing Memorandum does not attempt to address all of the Markoviches' disputes with the Sentencing Guidelines calculations as set forth by U.S. Probation and the Government, nor does it discuss any factors under 18 U.S.C. § 3553(a), which the Government will address at the sentencing hearings. Rather, this Sentencing Memorandum focuses on how loss and restitution should be calculated for each of these Defendants. As set forth below, the Government recommends the following loss and restitution calculations:

    Jonathan Markovich: $83,469,528.70 loss; $21,225,731.15 joint and several restitution.

    Daniel Markovich: $60,576,082.40 loss; $18,515,385.10 joint and several restitution.

    The Government also recommends that the Court apply an enhancement for 10 or more victims under U.S.S.G. § 2B1.1(b)(2)(A)(i)).

1

As the Government explained in its objections to the PSIs, once these enhancements and loss amounts are figured into each Defendants' Guidelines calculations, J. Markovich's total offense level is 43, while D. Markovich's' total offense level is 40.

## **LEGAL STANDARD**

Loss "is the greater of the actual loss or intended loss." U.S.S.G. at § 2B1.1, cmt. n.3(A). Because the amount of loss is often difficult to precisely determine, the Court's loss determination need only be a "reasonable estimate." *Id.* at § 2B1.1, cmt. n.3(C); *United States v. Medina*, 485 F. 3d 1291, 1304 (11th Cir. 2007). A reasonable estimate of the loss amount is appropriate because "often the amount of loss caused by fraud is difficult to determine accurately." *United States v. Miller*, 188 F. 3d 1312, 1317 (11th Cir. 1999). The Government has the burden of proving the loss amount by a preponderance of the evidence, which must be reliable and specific. *Medina*, 485 F. 3d at 1304. And the Court "is in a unique position to assess the evidence and estimate loss based upon that evidence," so its "loss determination is entitled to appropriate deference." *United States v. Campbell*, 765 F. 3d 1291, 1301 (11th Cir. 2014) (quoting § 2B1.1 cmt. n. 3(C)).[1]

In several instructive health care fraud cases, the Eleventh Circuit has approved the use of the amount billed to insurers to calculate intended loss. *See United States v. Duran*, 620 F. App'x 687, 690–91 (11th Cir. 2013) (finding that "using the amount billed to Medicare as an estimate for the amount of loss was reasonable" and rejecting defendants' argument that they could not have received the full amount billed, noting that "intended loss includes pecuniary harm that would have been impossible or unlikely to occur."); *United States v. Cruz-Natal*, 150 F. App'x 961, 964 (11th

---

[1] The Court can "base its loss determination on factual findings derived from, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing." *United States v. Bradley*, 644 F. 3d 1213, 1290 (11th Cir.) (quotation omitted).

Cir. 2005) (approving use of billed amount to calculate intended loss in Medicare fraud case "because the intended loss is easily calculated and greater than the actual loss").

This conclusion that the billed amount is the proper loss measurement is supported by the commentary to the Sentencing Guidelines, which specifies that when a defendant is convicted of a federal healthcare offense involving a government healthcare program, the aggregate dollar amount of fraudulent bills constitutes prima facie evidence of the amount of the intended loss, if not rebutted. *See* § 2B1.1 cmt. n.3(F)(viii); *see also United States v. Melgen*, 967 F.3d 1250, 1258 (11th Cir. 2020) (finding that the starting point for calculating the loss amount was the amount defendant sought in the fraudulent bills submitted to Medicare, and the district court did not err in concluding that defendant had failed to rebut the prima facie evidence of loss because defendant's arguments were based on "pure speculation" that some patients could have benefitted from the defendant's treatment). Although private insurers were the fraud victims in this case, the same reasoning supporting the use of the amount billed to determine intended loss applies here.

**ARGUMENT**

I.   **LOSS AND RESTITUTION CALCULATIONS.**

As the Government proved at trial, the total amount billed for Compass Detox, WAR, and associated providers to six of the insurance plans is as follows[2]:

| ENTITY[3] | TOTAL BILLED | TOTAL PAID |
|---|---|---|
| Compass Detox | $80,768,109.86 | $24,687,180.18 |
| WAR | $11,168,209.16 | $2,291,426.93 |
| Lab Billings for Compass/WAR patients | $19,356,385.87 | $1,322,367.76 |
| TOTAL | $111,292,704.89 | $28,300,974.87 |

Here, the intended loss (*i.e.*, the amount billed to insurance companies) exceeds the actual loss (*i.e.*, the amount paid by insurance companies). The Government did not argue at the Markoviches' trial that every dollar billed by Compass Detox and WAR was fraudulent. However, the Government proved that many patients were: frequently recycled between the two treatment centers; admitted to treatment (particularly detox) regardless of medical necessity; offered little to no therapy and treatment; placed in a treatment environment that undermined their ability to recover; were overmedicated to the point of sedation including by a "comfort drink" that defies both common sense and basic medical ethics; were billed for excessive urinalyses that were not used in treatment, and, were in many cases, incentivized to attend through illegal bribes. As Government Exhibit 702 at the Markoviches' trial showed,[4] the top 20 most utilized patients by billed amount alone account for a total of $20.6 million in billing by Compass Detox, WAR, and the laboratories. Government Exhibit 111A at trial shows billing of approximately $30.9 million

---

[2]   *See* GX 701 which was filed electronically on the docket in redacted from and can be made available to the Court at the sentencing hearing if necessary..
[3]   The Government excluded the chiropractic billing from this calculation.
[4]   This exhibit was filed electronically on the docket in redacted form, and can be made available to the Court at the sentencing hearing if necessary. The same is true of GX 111A, GX 701, and GX 704, which are also cited herein.

4

for the patients that the Government proved (either through testimony or documentary evidence) were bribed to attend Compass Detox. And Government Exhibit 704 at trial showed that the recycled patients account for a vastly disproportionate share of billing, approximately $73.2 million in billing (or 80% of total billing by Compass Detox and WAR).

In light of this evidence, the Government submits that loss is reasonably (indeed, conservatively) estimated at 75% of the amount billed to insurers. Restitution is therefore 75% of the amount that the insurers paid to these providers. Notably, this is the same methodology of loss calculation applied to co-defendant Drew Lieberman, who pled guilty to Count 1 of the indictment with a loss amount of approximately $60.6 million, which is the adjusted billing by Compass Detox (the facility for which Dr. Lieberman served as chief medical officer). Thus, the Markoviches are being treated equitably when compared to other like defendants.

The adjusted billed and paid amounts that the Government submits as reasonable estimates of loss and restitution are reflected below.

| ENTITY[5] | LOSS (ADJUSTED BILLED AMOUNT) | RESTITUTION (ADJUSTED PAID AMOUNT) |
|---|---|---|
| Compass Detox | $60,576,082.40 | $18,515,385.10 |
| WAR | $8,376,156.87 | $17,18,570.1975 |
| Lab Billings for Compass/WAR patients | $14,517,289.40 | $991,775.82 |
| TOTAL | $83,469,528.70 | $21,225,731.15 |

As the Government proved at trial, Jonathan Markovich owned and controlled Compass Detox and WAR, and had kickback relationships with outside laboratories. The loss amount for Jonathan

---

[5]   The Government excludes the chiropractic billing.

Markovich should include billing by both facilities, as well as the laboratories. Therefore, the Government recommends that Jonathan Markovich's loss be calculated as $83,469,528.70, and his restitution amount be set at $21,225,731.15, joint and several with his co-conspirators.

By contrast, Daniel Markovich was the CEO and Compliance Officer of Compass Detox. He was not employed by WAR and did not participate in the kickback relationships with laboratories. Daniel Markovich's loss and restitution calculations should therefore be limited to billing by Compass Detox, just as they were for Dr. Lieberman. The Government recommends that Daniel Markovich's loss be calculated at $60,576,082.40, and his restitution amount be set at $18,515,385.10, joint and several with his co-conspirators.

## II.  THE 10 OR MORE VICTIMS ENHANCEMENT APPLIES TO BOTH DEFENDANTS.

Finally, as to the enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i)) for 10 or more victims, the Government attaches as Exhibit E a list of insurance companies that paid Compass Detox or WAR based on banking records put in evidence in the Markoviches' trial. While the Government did not present billing data for every one of these insurers at trial, the banking records show payments from these insurers to Compass Detox and WAR and the Government presented evidence of widespread health care fraud committed by the Markoviches. For this reason, this enhancement was included in both Dr. Lieberman and Christopher Garnto's plea agreements.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully recommends that Jonathan Markovich's loss be calculated as $83,469,528.70, and restitution be calculated as $21,225,731.15, joint and several with his co-conspirators. The Government recommends that Daniel Markovich's loss be calculated as $60,576,082.40, and restitution be calculated as $18,515,385.10, joint and several with his co-conspirators. And the Government recommends that the Court apply an enhancement for 10 or more victims under U.S.S.G. § 2B1.1(b)(2)(A)(i).

Dated: March 15, 2022                                                                 Respectfully submitted,

                                                                                                     JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

By:   */s/ Jamie de Boer*
JAMES V. HAYES (FL Bar # A5501717)
Senior Litigation Counsel
JAMIE DE BOER (FL Bar # A5502601)
ANDREA SAVDIE (FL Bar # A5502799)
Trial Attorneys
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 774-4276 (Hayes)
Telephone: (202) 304-6801 (de Boer)
Telephone: (202) 262-6453 (Savdie)
James.Hayes@usdoj.gov
Jamie.DeBoer@usdoj.gov
Andrea.Savdie@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 15, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ James V. Hayes*