UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-60020- DIMITROULEAS/SNOW

UNITED STATES OF AMERICA,

vs.

DANIEL MARKOVICH,

    Defendant.
_____/

**JONATHAN MARKOVICH AND DANIEL MARKOVICH'S
MOTION TO CONTINUE RESITUTION AND
MEMORANDUM OF LAW REGARDING RESTITUTION**

    JONATHAN MARKOVICH AND DANIEL MARKOVICH (the "Markoviches"), file this Motion to Continue Restitution hearing and Memorandum of Law regarding Restitution.

    The Markoviches sentencing, forfeiture, and restitution hearings are all scheduled for March 18, 2022 starting at 1:15P.M. For the first time, on March 15, 2022 at 11:05p.m. the government identified the amount it will seek in restitution. *See* [D.E. 579]. The government's identification of the amount of restitution is not supported by any evidence from trial or otherwise. Instead, it is a cherry picked number obtained from certain exhibits at trial that specifically relate to billings to insurance companies. The number is not connected to the so called patient witnesses that intend to be present at sentencing.

Restitution is a complex concept that must be based on actual facts and calculations. The information provided by the government does not meet this requirement. And any information received between now and Friday will not give counsel sufficient time to review, analyze, and respond to.

An additional issue is that the Markoviches were moved to the Broward Main Jail last Friday. They were moved again to the Joseph Conti building. Counsel cannot visit the Markoviches at the Conti building because visitation is not permitted. Counsel has not spoken to the Markoviches about this restitution amount at all.

Moreover, in a conspiracy restitution is joint and several. All the defendants have a right to be heard at a restitution hearing. As such, the restitution hearing should be held with all co-defendants present.

Given these limitations and circumstances, the Markoviches are requesting a continuance of the restitution hearing in order to properly prepare for the hearing, discuss with clients, and be prepared to respond to the government's demand.

In the event the Court does not grant this request, we submit the following memorandum of law regarding restitution and the applicable law.

## **APPLICABLE LEGAL FRAMEWORK FOR RESTITUTION**

Under either the MVRA[1] or the VWPA,[2] The government carries the burden to prove a defendant caused an actual loss resulting from her conduct to an actual identifiable victim. *See* 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government."). Further, the MVRA and the VWPA share the same causation standard: "i.e., the victim's harm

---

[1] 18 U.S.C. Section 3663A(c) identifies three types of offenses that trigger mandatory restitution under the Mandatory Victims Recovery Act ("MVRA"): (1) crimes of violence, as defined in 18 U.S.C. § 16; (2) offenses against property under Title 18 or 21 U.S.C. § 856(a), "including any offense committed by fraud or deceit"; and (3) offenses described in 18 U.S.C. § 1365. In each category of offense, an identifiable victim or victims must suffer either a physical injury or must suffer a pecuniary loss. *Id.* § 3663A(c)(1)(A)-(B). The MVRA also specifically states that the section [the MVRA] "shall apply in all sentencing proceedings ***for convictions of,*** or ***plea agreements relating to charges for***, those specific offenses. *Id.* § 3663A(c)(1). (emphasis added).

[2] Similarly, the Victims Witness Protection Act (VWPA) states that restitution *may* be ordered, consistent with 18 U.S.C. §3664(e) for offenses under Title 18, including conspiracy. 18 U.S.C. § 3663(a)(1)(A). The statute mandates that the court specifically consider "the amount of the loss sustained by each victim as a result of the offense." 18 U.S.C. § 3663(a)(1)(B)(1)(i). For purposes of the VWPA, a ""victim" means a person directly and proximately harmed as a result of the commission of an offense or which restitution may be ordered.." *See* 18 U.S.C. § 3663 (a)(2).

must be 'directly and proximately' caused by the defendant's criminal activity." " 18 U.S.C. § 3663A(a)(2); *id.* § 3663(a)(2).

"An award of restitution must be based on the amount of loss actually caused by the defendant's conduct." United States v. Huff, 609 F.3d 1240, 1247 (11 Cir. 2010) (quoting *United States v. Liss*, 265 F.3d 1220, 1231 (11th Cir. 2001)). The Government, not the defense, bears the burden of proving restitution. *See* 18 U.S.C. § 3664(f)(1)(A ("The government bears the burden of proving loss amount by a preponderance of the evidence, and the court must "order restitution to each victim in the full amount of each victim's losses.".  United States v. Sheffield, 939 F.3d 1274, 1276 (11 Cir. 2019)(citing 18 U.S.C. section 3664(c)).

In summary, "the government must put forth 'reliable and specific evidence' to support a restitution award."  Sheffield, 939 F.3d at 1278 (quoting United States v. Stein, 846 F.3d 1135, 1156 (11 Cir. 2017).  To prove actual loss, "the government must establish both factual and legal causation in essentially the same manner as it must show causation under the guidelines – by proving but for and proximate causation."  United States v. Stein, 846 F.3d 1135, 1153 (11 Cir. 2017) (reversing restitution award for lack of government showing of investor reliance on defendant's false information).  The government's demand of restitution in the amount of $21,225,731.15 as to Jonathan Markovich and $18.515,385.10 as to Daniel Markovich totally fails to meet these burdens.

For restitution, the government is restricted to proven loss. Huff, 609 F.3d at 1247.[3] Huff was a military fraudulent procurement case in which the Eleventh Circuit reversed restitution order as excessive because it is imposed in the amount of the trial court's previously-determined sentencing loss calculation. Of particular relevance here, the Huff opinion noted that: (1) "any value of the services or items received by the victim ([military]) must be offset against the restitution order;" and (2) the award must be limited to the government's "actual losses." *Id*. at 1248 (emphasis original).[4]

The Eleventh circuit extended *Huff's* offset requirement to alleged fraudulent medical payments in *United States v. Bane*, 720 F.3d 818 (11th Cir. 2013). Bane held that a trial court erred by failing "to exclude the value of medically necessary goods victims actually received from its restitution calculation." Id. At 828. As

---

[3] The parties were specifically prohibited from making arguments about or introducing evidence related to medical necessity at trial. ECF 96 at 2-3 (Order on Motions in Limine). And, the defense attempts to enter such evidence into this hearing were thwarted by the Government's insistence on opposing a protective order that would have protected personal health information (PHI) as required by HIPAA and related state privacy laws and would have potentially permitted this Court to consider such evidence in evaluating and determining the proper amount of restitution.

[4] The Huff opinion cited and relied upon the earlier Eleventh Circuit opinion of United States v. Vaghela, 169 F.3d 729 (11 Cir. 1999), a healthcare kickback case, in which the Eleventh Circuit reversed a restitution award in the amount of the kickback-generated medical services for lack of proof that the services were themselves necessary, limiting the restitution award to the amounts of kickbacks actually received by the defendant. Vaghela, 169 F.3d at 731.

Bane noted, failing to offset such amounts "would be inconsistent with the purpose of restitution because it would give a windfall to victims who received the goods they actually needed in the form of both the goods and what they paid for them." Id. While Bane placed upon the defendant the burden of identifying a basis for offset, *id.*, any such burden of going forward has been met here by the Government's own admissions that not "every dollar billed by Compass Detox and WAR was fraudulent." [D.E. 579]. Moreover, the government has repeatedly stated that the alleged fraud only related to the "core" patients. To date, the government has not identified the "core" patients.

The overwhelming evidence at trial was that the insurance companies certified pre-admission the medical necessity of the care provided by Compass Detox and WAR. And the government's expert, Dr. Clark, confirmed that the insurance companies were aware that the so-called "core" patients were re-admitting to Compass and WAR.

**The Government Has Not Proven a Factual or Legal Basis for the Restitution Award the government seeks.**

The restitution amount sought by the Government is appears to be predicated on an estimated 75% of the amount insurers paid. [D.E. 579]. This percentage seemed to be predicated on Government Exhibit 704, which purports to show that the recycled patients account for most of the billings. However, this is inconsistent with the chart created by the government's own witness, Jennifer Mila, which

6

provided that 700 of 1000 patients had only been to the facility one or two times. *See* Defense Exhibit 583.

The factual and legal premise for the government's estimate of restitution and methodology for calculating restitution is that every payment was allegedly illegitimate, but the government is relying on a "conservative" estimate. The government has failed to link the requested restitution to the specific patients.

The Eleventh Circuit has recently held that the clinical judgments of medical necessity by physicians are entitled to judicial deference and are not contradicted by a post hoc medical judgment (which the Government has never even undertaken here). *United States v. AseraCare, Inc.*, 938 F.3d 1278, 1295 (11th Cir. 2019) ("a reasonable difference of opinion among physicians reviewing medical documentation *ex post* is not sufficient on its own to suggest that those judgments- or any claims based on them—are false under the FCA").[4] Moreover, the record contains evidence that health professionals at the insurance companies certified that every single patient admitted at Compass and/or WAR required the services provided by Compass and/or WAR.

The government's reliance upon a defective restitution methodology is fatal to a restitution award. In the recent *Sheffield* case, the Eleventh Circuit vacated a restitution award calculated from a Government spreadsheet summarizing defendant's fraudulent tax returns because the Government had acknowledged that

7

its spreadsheets contained duplicative entries. *United States v. Sheffield*, 939 F.3d 1274 (11th Cir. October 1, 2019).

Further, the government confirms that not all the monies billed by Compass and WAR were fraudulent. Having received the value of *all* of these treatment services, the government nonetheless asks this Court to compel the Markoviches to return money for treatment services that were in fact provided. This is a classic claim for a restitution windfall that the Eleventh Circuit has consistently rejected. *Sheffield*, 939 F.3d at 1298 (quoting *Martin*, 803 F.3d at 594); *United States v. Cavallo*, 790 F.3d 1202, 1238 (11th Cir. 2015) (quoting *Huff*, 609 F.3d at 1249); *Bane*, 720 F.3d at 828.

While it isn't clear from the government's filing whether it is relying on patients that were allegedly referred to the facility as a result of a kickback, this is not a basis giving rise to restitution. The Eleventh Circuit's holding in *United States v. Medina*, 485 F.3d 1291(11th Cir. 2007), is clear that a defendant engaged in health care kickbacks "is not sufficient to show actual or intended loss to Medicare." *Id*. at 1304. In other words, proof of a kickback does not establish actual loss.

There is an absence of proof of loss. In *United States v. Singletary*, 649 F.3d 1212 (11th Cir. 2011), the Government obtained a restitution award based upon the conclusory testimony of loan officers about their 56 mortgage application files without identifying specific individual applications that contained false information from which an actual loss was sustained by the Federal Housing Authority.

*Singletary*, 649 F.3d at 1222. The Eleventh Circuit reversed, holding that the district court erred in imposing restitution without requiring the Government to meet its burden to prove "by a preponderance of the evidence which of the 56 mortgages the loan officers handled was obtained through a false [document] and, second where fraud is found, to determine the extent of the actual loss HUD may have incurred due to the mortgage's foreclosure." *Id*. Because the Government here has failed to provide the particulars of any specific patient, claim, or medical service, it has failed in its burden of proof required to secure a restitution award.

Dated:   March 17, 2022            Respectfully submitted,

                                   Tache, Bronis and Descalzo, PA
                                   150 S.E. 2nd Avenue, Suite 600
                                   Miami, Florida 33131
                                   Telephone:  (305) 537-9565
                                   Facsimile:   (305) 537-9567

                                   By: */s/ Marissel Descalzo*
                                       Marissel Descalzo, Esq.
                                       Florida Bar No. 669318
                                       mdescalzo@tachebronis.com
                                       service@tachebronis.com
                                       *Counsel for Daniel Markovich*

9

## **CERTIFICATE OF SERVICE**

I CERTIFY THAT on this 17th day of March, 2022 a true copy was transmitted via CM/ECF.

By: */s/ Marissel Descalzo*
Marissel Descalzo, Esq.