UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CR-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

JONATHAN MARKOVICH and
DANIEL MARKOVICH,

        **Defendants.**
_____/

## UNITED STATES' SUPPLEMENTAL RESPONSE TO DEFENDANTS' SENTENCING MEMORANDA

The United States of America, through undersigned counsel, respectfully submits this Supplemental Response to Defendants' Sentencing Memoranda. This Supplemental Response does not attempt to address all of the Markoviches' disputes with the Sentencing Guidelines calculations as set forth by U.S. Probation and the Government, nor does it discuss all of the factors under 18 U.S.C. § 3553(a), which the Government will address at the sentencing hearings. Rather, this Sentencing Memorandum focuses on certain aspects of Jonathan Markovich's Amended Sentencing Memorandum [D.E. 585], and Daniel Markovich's Sentencing Memorandum [D.E. 582], both of which were filed on March 16, 2022.

    **I.**    **Defendants' Sentences Must Provide Specific and General Deterrence.**

As this Court is aware, it must consider deterrence—both specific deterrence of the Defendants and general deterrence—to keep others from committing similar offenses. In determining how much weight to give this factor, the Court can consider the Defendants' "complete lack of remorse and unwillingness to accept responsibility." United States v. Joseph, 700 F. App'x 918, 923 (11th Cir. 2017). While the Markoviches' counsel argue that they are first-

time offenders and unlikely to re-offend, their unwillingness to express remorse or to accept responsibility supports the notion that substantial jail sentences are warranted for each of them. Indeed, Defendants' often cast blame on others (against Garnto, Waserstein), and dispute the facts of this case beyond what is reasonable in their Sentencing Memoranda and PSI objections. Further, each of them had all the education, support, and opportunity one could ask for in their lives to this point, yet they still committed serious crimes. Thus, specific deterrence is necessary.

The Court should also sentence the Defendants, particularly Jonathan Markovich, in a manner that deters other addiction treatment fraud schemes. As the Court is aware from observing the evidence in this trial, South Florida is replete with treatment centers that bribe patients to attend and, ultimately, trap them in a cycle of addiction in order to bill as much as possible to their insurance plans. The term "Florida Shuffle" was discussed throughout the trial. And through the Defendants' cross-examinations, the Defendants themselves presented evidence of a similar shuffle in California.

Defendants make lengthy § 3553(a) arguments comparing their Guidelines' ranges to sentences for other crimes, arguing more serious crimes are given lesser punishments. But as the Eleventh Circuit has noted, post-Booker: "[E]conomic and fraud-based crimes" are "more rational, cool, and calculated than sudden crimes of passion or opportunity," and thus these crimes are "prime candidate[s] for general deterrence." United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (citing Stephanos Bibas, White–Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L.Rev. 721, 724 (2005)). Indeed, the Martin court noted that the legislative history of Section 3553 showed that Congress viewed deterrence as "particularly important in the area of white-collar crime. … even where [the defendant] might themselves be unlikely to commit another offense." Id. (emphasis added) (citing S. Rep. No. 98-225, at 76, 91-92 (1983)). The Court in

2

Martin held that "[d]efendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." Martin, 455 F.3d at 1240. General deterrence is "particularly important in the area of white-collar crime," because would-be perpetrators are watching. See Id.

Further, the Eleventh Circuit has made clear that general deterrence is especially important in white collar offenses where defendants, like Jonathan and Daniel Markovich, made significant profits from their offenses. In United States v. Hayes, 762 F.3d 1300 (11th Cir. 2014), the Court of Appeals rejected a probationary sentence for a white-collar defendant – even though the government had filed a 5K1.1 substantial assistance motion because: "general deterrence is an important factor in white collar cases, where the motivation is greed . . . we have set aside sentences of little or no imprisonment because they do not constitute just punishment for the offense, do not promote respect for the law, and will not do much to deter similar criminal activity by others." Id. at 1308. The Court went on to say that the low sentence imposed conveys "the message "that would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty," and accordingly do not constitute just punishment for [the] offenses or promote respect for the law. Second, the sentences do not provide for general deterrence because "[t]he threat of spending time on probation simply does not, and cannot, provide the same level of deterrence as can the threat of incarceration in a federal penitentiary for a meaningful period of time." Id. at 1310-11.

More specifically, in a health care fraud case, the Eleventh Circuit delved deeper into the background of the § 3553(a) factors, in particular the general deterrence factor, and wrote:

> the Congress that adopted the § 3553 sentencing factors emphasized the critical deterrent value of imprisoning serious white-collar criminals, even where those criminals might themselves be unlikely to commit another offense. We stated that because economic and

3

> fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence. Our basis for this determination was that defendants in white collar crimes often calculate the financial gain and risk of loss, and white-collar crime therefore can be affected and reduced with serious punishment.

United States v. Kuhlman, 711 F.3d 1321, 1329 (11th Cir. 2013) (internal quotations and brackets omitted). The guidance from Hayes and Kuhlman squarely applies to Jonathan and Daniel Markovich; this was, at bottom, a crime of greed. These cases also highlight the need to deter others in the community from committing similar crimes.

## II. Defendants' Arguments Regarding Sentencing Disparities Do Not Apply.

Defendants argue that the sentencing factor in § 3553(a)(6) – the need to avoid sentencing disparities between similarly situated defendants – weighs in favor of a downward variance. In particular, they focus on the advisory guideline ranges of other members of the conspiracy in this case, and on individuals whom they deem as similarly situated.

However, Defendants' arguments have a fatal flaw. Many if not most of these other defendants they compare themselves to were sentenced based on loss amounts which were calculated using actual losses, rather than intended losses. Why? Because those defendants pled guilty, accepted full responsibility, promptly notified the Government and the Court that they would be pleading guilty, agreed to cooperate with the Government, and signed appeal waivers to further avoid wasting court and prosecutorial resources. As the Eleventh Circuit has explained, "there can be no 'unwarranted' sentencing disparities among codefendants who are not similarly situated." United States v. Azmat, 805 F.3d 1018, 1048 (11th Cir. 2015). The Defendants and Mr. Garnto and Dr. Lieberman (in this case), or Mr. Snyder (in another case, 18-CR-80111-ROSENBERG) are not similarly situated. Those defendants pled guilty, while the Markoviches went to trial. Both Defendants refused to accept responsibility. This naturally resulted in a higher

advisory Guidelines' range, and any difference between their Guidelines' ranges and those of coconspirators or other defendants who pled guilty is warranted. See Azmat, 805 F.3d at 1048 (no unwarranted sentence disparity where "codefendants accepted responsibility for their crimes, pled guilty to offenses that carried lower penalties, and cooperated with the prosecution"). See also United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir.2009); United States v. Williams, 526 F.3d 1312, 1323-24 (11th Cir.2008); United States v. Langston, 590 F.3d 1226, 1237 (11th Cir. 2009) ("[T]here is no unwarranted disparity when a cooperating defendant pleads guilty and receives a lesser sentence than a defendant who proceeds to trial."). This is not a "trial tax", as Daniel Markovich argues; these are varying Guidelines' ranges for differently situated defendants.

In addition, Defendants' comparisons to certain other defendants who were convicted at trial is unavailing for a simple reason; the loss amount these defendants were held responsible for was far less than for the Markoviches, and this is true even after the Government adjusted the loss amounts for both Jonathan and Daniel Markovich downward for the reasons explained in its prior Sentencing Memorandum. [D.E. 579]. For example, the loss amount the Government sough to hold Sebastian Ahmed responsible for was approximately $37 million. [See United States v. Ahmed et al., Case No. 19-CR-60200-COHN, D.E. 360 (Government's Sentencing Memo), at 1]. Similarly, in United States v. Abovyan, Case No. 18-CR-80122-MIDDLEBROOKS, the Government sought to hold Dr. Abovyan responsible for a loss amount of approximately $11.3 million. [See D.E. 259 (Response to Defendant's Sentencing Memorandum), at 9]. The loss amounts the Government is seeking to hold each Defendant responsible for here are more than $83 million in Jonathan Markovich's case, and more than $60 million for Daniel Markovich. Such loss amounts far exceed Ahmed's and Abovyan's. Thus, the Government rejects the argument

5

that these defendants are similarly situated to the Markovich's in this respect. The Government notes that Ahmed received a 210 month sentence; Dr. Abovyan was sentenced to 135 months.

### III. Former Patient Statements do not Warrant a Lower Sentence.

The Government appreciates that former patients from Compass Detox and WAR have made statements asking for leniency. The Government also notes that the fact that such patients are still alive and able to make such statements, while many others succumb to overdose and death, is an inarguably good thing. But the fact remains that the patients Defendants now rely on formed the "core" group of repeated admissions at Compass Detox and WAR, as the Government proved at trial in this case. Many of them were paid to attend, or at least medicated as much as they wanted and allowed to essentially live at Compass Detox and WAR. This was not addition treatment; it was a lifestyle, and a self-defeating one at that.

The Government respectfully submits that it is not surprising that many such patients now speak up on behalf of the Markovich brothers. Defendants gave such patients what they wanted, a place to stay, medications they craved, and an environment that put socialization above recovery. These patients had insurance, and thus could be billed over and over again for costly detox treatment that they plainly did not qualify for; if Defendants wanted to help them, they could have easily done so at lower levels of care that were far less lucrative in terms of insurance reimbursement. Instead, these patients were taken advantage of and manipulated by the Defendants and their co-conspirators.

Moreover, constantly re-admitting such patients left them and their recovery from addiction in a state of arrested development, and trapped them in a cycle of addiction and treatment in South Florida known as the "Florida Shuffle." The Defendants made millions from this scheme

as a result.  And now Jonathan Markovich and Daniel Markovich must face the consequences of exploiting such patients.

## CONCLUSION

For the foregoing reasons, the Government respectfully recommends that the Court reject Defendants' sentencing arguments as detailed above.

Dated: March 18, 2022                                   Respectfully submitted,

                                              JUAN ANTONIO GONZALEZ
                                              UNITED STATES ATTORNEY
                                              SOUTHERN DISTRICT OF FLORIDA

                                              JOSEPH S. BEEMSTERBOER
                                              ACTING CHIEF, FRAUD SECTION
                                              CRIMINAL DIVISION
                                              DEPARTMENT OF JUSTICE

                           By:    */s/ James V. Hayes*
                                              JAMES V. HAYES (FL Bar # A5501717)
                                              Senior Litigation Counsel
                                              JAMIE DE BOER (FL Bar # A5502601)
                                              ANDREA SAVDIE (FL Bar # A5502799)
                                              Trial Attorneys
                                              United States Department of Justice
                                              Criminal Division, Fraud Section
                                              1400 New York Avenue, N.W.
                                              Washington, D.C. 20005
                                              Telephone: (202) 774-4276 (Hayes)
                                              Telephone:  (202) 304-6801 (de Boer)
                                              Telephone: (202) 262-6453 (Savdie)
                                              James.Hayes@usdoj.gov
                                              Jamie.DeBoer@usdoj.gov
                                              Andrea.Savdie@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 18, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                                                                                       */s/ James V. Hayes*